# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **CRIMINAL NO.** |
| | ) | |
| **v.** | ) | **Count 1:**    18 U.S.C. § 371 (Conspiracy) |
| | ) | |
| **JESSE R. BENTON,** and | ) | |
| **ROY DOUGLAS ("DOUG") WEAD** | ) | **Count 2:**    52 U.S.C. §§ 30121 and 30109(d)(1)(A)(i) and 18 U.S.C. § 2 (Contributions by Foreign Nationals) |
| | ) | |
| | ) | |
| | ) | |
| | ) | **Count 3:**    52 U.S.C. §§ 30122 and 30109(d)(1)(A)(i) and 18 U.S.C. § 2 (Contributions in the Name of Another) |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | **Counts 4, 5, and 6:**    18 U.S.C. § 1519 and § 2 (False Entry in Record) |
| | ) | |
| | ) | |
| | ) | |

## INDICTMENT

THE GRAND JURY CHARGES:

At all times relevant to this Indictment:

### INTRODUCTION

1.    The defendants, JESSE R. BENTON ("BENTON") and ROY DOUGLAS "DOUG" WEAD ("WEAD") conspired to illegally funnel thousands of dollars of foreign money from a Russian foreign national into an election for the Office of President of the United States of America. The defendants solicited contributions from the Russian foreign national and concealed the scheme from the candidate, federal regulators, and the public by secretly funneling foreign money from the Russian foreign national through BENTON, who acted as a straw donor (also known as a "conduit" or "straw contributor") by purporting to make a campaign contribution in his own name, rather than in the name of the Russian foreign national, who was the true source of the funds.

1

The defendants concealed the conspiracy by causing false entries to be made in reports submitted to the Federal Election Commission ("FEC").

## THE ELECTION ACT

2.      In the Federal Election Campaign Act of 1971, as amended, Title 52, United States Code, Sections 30101, et seq. ("Election Act") (formerly Title 2, United States Code, Sections 431, et seq.), Congress prohibited certain financial influences on the election of candidates for federal office, including the Office of President of the United States of America.

3.      To prevent the influence of foreign nationals on federal elections, the Election Act prohibits foreign nationals, directly or indirectly, from making any contributions in connection with federal elections.  The Election Act also prohibits any person from soliciting a contribution or donation from a foreign national.

4.      To prevent individuals from circumventing the Election Act, and to enable the detection of attempts to circumvent it, the Election Act prohibits a person from making a contribution in the name of another person, including giving funds to a straw donor for the purpose of having the straw donor pass the funds on to a federal candidate or to a candidate's federal campaign committee or joint fundraising committee, or to a national political party committee, and using the straw donor's name as if he/she were making the contribution, thereby concealing the true source of the money. The Election Act also prohibits any person from knowingly permitting his or her name to be used to effect the contribution of another.

5.      The FEC is an agency and department of the United States with jurisdiction to enforce the limits and prohibitions of the Election Act, in part by requiring candidates, joint fundraising committees, and national party committees to file regular reports listing the sources and amounts of contributions they receive, as well as certain expenditures. To deter abuses of the

Election Act and thus instill public confidence in the election process against corruption and the appearance of corruption, the Election Act requires the FEC to publish the reports that it receives so that all of the candidates, the public, and law enforcement may see the specific information about the amounts and sources of political contributions and expenditures involving federal candidates and registered political committees.

6.    Pursuant to the Election Act, Congress requires registered political committees, including Political Committee A, Political Committee B, and Political Committee C, to file periodic reports to the FEC of receipts and disbursements, identifying, among other things, the name and address of each person who made a contribution to such a committee during the relevant reporting period whose contribution or contributions had an aggregate amount of value in excess of $200 within an election cycle, together with the date and the amount of any such contribution.

7.    In 2016 and at all relevant times, the Election Act prohibited the solicitation, acceptance, or receipt of a contribution by a foreign national. This prohibition encompassed any foreign national contribution to any political committee, including joint fundraising committees, party committees, and candidate committees.

8.    In 2016 and at all relevant times, the Election Act prohibited the making of a contribution in the name of another person, knowingly permitting one's name to be used to effect the contribution of another, and knowingly accepting a contribution made in the name of another. This prohibition applied to all contributions, including those made to joint fundraising committees, national political party committees, and candidate committees.

## RELEVANT INDIVIDUALS AND ENTITIES

9.    Defendant JESSE R. BENTON was an experienced political operative who resided in the United States. BENTON owned and served as the manager of Company A. BENTON previously worked as campaign manager for two campaigns for United States Senate and one campaign for

President. BENTON also worked for several independent- expenditure-only political committees, or Super PACs.

10.     Defendant ROY DOUGLAS "DOUG" WEAD resided in the United States and served as the president of Company B. WEAD worked as a senior advisor on multiple presidential campaigns. According to FEC records, WEAD was a candidate for Congress in 1992 and was the authorizing candidate for the "Doug Wead for Congress Committee," which was an active political committee from 1992 until approximately January 2000. In late 2016, WEAD was writing a book that discussed the strategies of two presidential campaigns. The book was published on or about February 28, 2017.

11.     Foreign National 1 was a Russian foreign national and business associate of WEAD living outside the United States. Foreign National 1 had never applied for, nor obtained, United States citizenship or lawful permanent residence status in the United States. As a result, Foreign National 1 was a "foreign national," who was prohibited from making donations and contributions – directly or indirectly – in support of any candidate for elective office in the United States.

12.     Foreign National 2 was a Ukrainian foreign national living outside the United States. Foreign National 2 worked as a Russian/English translator for WEAD, and facilitated communications between WEAD and Foreign National 1.

13.     Political Candidate 1 was a candidate for the Office of President of the United States in the 2016 election cycle.

14.     Political Committee A was registered with the FEC as the principal campaign committee for Political Candidate 1. Political Committee A received campaign contributions for the election of Political Candidate 1.

15.    Political Committee B was the governing body for Political Candidate 1's political party. It was registered with the FEC as a national party committee. Political Committee B received campaign contributions in support of the election of Political Candidate 1. Political Committee B is headquartered in Washington, D.C.

16.    Political Committee C was registered with the FEC as a joint fundraising committee. As a joint fundraising committee, Political Committee C, at all relevant times, was comprised of Political Committee A, Political Committee B, and other organizations supporting Political Candidate 1's political party in various states. Additionally, as a joint fundraising committee, Political Committee C's sole purpose was to raise money and then distribute that money to constituent candidates and organizations, including Political Committee A and Political Committee B. Political Committee C received campaign contributions for the election of Political Candidate 1. According to fundraising materials, Political Committee C accepted and received contributions at an address in Washington, D.C.

17.    Company A was a political consulting firm owned by BENTON.

18.    Company B was a non-profit organization co-founded by WEAD.

### COUNT ONE
### 18 U.S.C. §371
### (Conspiracy)

19.    Paragraphs 1 through 18 are realleged and incorporated herein by reference.

20.    From in or about September 2016 to at least July 2017, in the District of Columbia and elsewhere, the defendants **JESSE R. BENTON** and **ROY DOUGLAS "DOUG" WEAD**, knowingly conspired with each other and with others known and unknown to the Grand Jury to:

    a.     Knowingly and willfully solicit and cause foreign national contributions, aggregating to $25,000 in a calendar year in violation of Title 52, United States Code, Sections 30121 and 30109(d)(1)(A)(i).

    b.     Knowingly and willfully permit BENTON's name to be used to effect a contribution by another person, aggregating to $25,000 in a calendar year in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(A)(i).

    c.     Knowingly cause the concealment, covering up, falsifying, and making of false entries in records, documents, and tangible objects with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the investigation and proper administration of matters within the jurisdiction of departments and agencies of the United States in violation of Title 18, United States Code, Section 1519 and Section 2.

### Purposes of the Conspiracy

21.    It was a purpose of the conspiracy for WEAD and BENTON to personally profit by facilitating an unlawful campaign contribution from Foreign National 1, through BENTON, to Political Committee A, Political Committee B, and Political Committee C, in order to arrange a meeting and a photo opportunity for Foreign National 1 with Political Candidate 1, all while concealing from Political Committee A, Political Committee B, Political Committee C, the FEC, the public, and law enforcement the true source of the money.

22.    It was a further purpose of the conspiracy for WEAD and BENTON to cause Political Committee A, Political Committee B, and Political Committee C to unwittingly file false campaign finance reports concealing the unlawful campaign contributions from the FEC and the public by falsely stating that the contributions were made by BENTON, when in reality the contributions were made by Foreign National 1.

23.     It was a further purpose of the conspiracy to conceal the co-conspirators' unlawful activity.

## Manner and Means of the Conspiracy

24.     The manner and means by which BENTON and WEAD carried out the conspiracy included, but were not limited to, the following:

25.     To obtain money from Foreign National 1, WEAD facilitated Foreign National 1's international travel to the United States and told Foreign National 1 he could meet a celebrity. To facilitate Foreign National 1's attendance at a political fundraising event, where Foreign National 1 could meet and have a picture taken with Political Candidate 1, WEAD and BENTON solicited an illegal contribution from Foreign National 1 and caused the contribution to be made to Political Committees A, B, and C. To conceal the true source of Foreign National 1's contribution, and to facilitate the illegal contribution, WEAD and BENTON agreed to cause Foreign National 1's contribution to be made in the name of another.

26.     By concealing the true source of Foreign National 1's contribution, WEAD and BENTON caused Political Committees A, B, and C to make false entries in reports to the FEC, thereby hiding from the FEC, the political committees, and the public the fact of Foreign National 1's illegal contribution.

## Overt Acts

27.     In furtherance of the conspiracy and to effect its illegal objects, BENTON and WEAD committed the following overt acts, among others, in the District of Columbia and elsewhere in connection with their efforts to secretly cause Foreign National 1 to contribute to Political Committee A, Political Committee B, and Political Committee C.

I.   WEAD and BENTON solicit and obtain $100,000 from Foreign National 1 to meet with Political Candidate 1 and Create a Fake Invoice to Disguise the True Purpose of the Money

28.   On or about September 11, 2016, WEAD emailed Foreign National 2 suggesting that Foreign National 1 could meet Political Candidate 1 during Foreign National 1's trip to the United States.

29.   On or about September 12, 2016, WEAD and BENTON spoke twice on their cell phones for a total of approximately eight minutes.

30.   On or about September 13, 2016, Foreign National 2 emailed WEAD: "Doug, is there any news about [Political Candidate 1]?" WEAD then responded to Foreign National 2: "My Source says yes it will happen but no details yet."

31.   On or about September 13, 2016, BENTON emailed Political Committee B:

I have a friend who spends most of his time in the Caribbean (must be nice right?), who has caught the [Political Candidate 1] bug in a big way. [H]e wants to fly in for an event, hopefully near NY or DC, where he can attend a funder and get a photo. The[] photo is important to him. Is there anyway you might share a list of events where a photo might be possible? Ideally, he'd like to come between 9/21 and 9/27 if at all possible.

32.   On or about September 13, 2016, BENTON emailed Political Committee B and asked: "What would be the minimum giving level to be able to participate in a photoline at e[i]ther Greenwich (9/21), Philly (9/22) or NYC (9/29)? (not that that is all he'll give, but he'll ask me)" and "How do I RSVP when he has selected his event?"

33.   On or about September 13, 2016, BENTON emailed Political Committee B and asked, "Is there a photo op in Philly or no?"

34.   On or about September 13, 2016, BENTON and WEAD spoke via cell phone for approximately seven minutes.

35.     On or about September 14, 2016, Foreign National 2 emailed WEAD: "I've talked to [Foreign National 1]. He is happy to wire his donation... He asks for info where to send his donation." WEAD replied, "thank you so much. [W]e want to do this correctly."

36.     On or about September 14, 2016, BENTON emailed Political Committee B: "We'd like to do the Philly event on 9/22 if possible[.]"

37.     On or about September 14, 2016, BENTON had a call with an individual at Political Committee B, who was one of the organizers of the Philadelphia, Pennsylvania fundraising event.

38.     On or about September 14, 2016, BENTON received an email from Political Committee B with an invitation to a Political Committee C "roundtable" event with Political Candidate 1 in Philadelphia, Pennsylvania. The invitation had three levels of giving: $100,000 to be a "Roundtable Host Committee," $50,000 to be a "Roundtable Sponsor," and a minimum contribution of $25,000 to be a "Roundtable Attendee." The invitation contained the language: "Contributions to [Political Committee C] are not tax deductible and will be used in connection with federal elections. Federal law requires us to use best efforts to collect and report contributors' names, mailing addresses, occupations, and employers." The invitation also provided the following information: "Contributions from individuals (multicandidate PACs in parentheses) shall be allocated sequentially to the following formula: $2,700 ($5,000) to [Political Committee A]; $33,400 ($15,000) to [Political Committee B][.]" On or about September 14, 2016, shortly after receiving the invitation to the Political Committee C fundraiser, BENTON called WEAD's cell phone and they spoke for approximately ten minutes.

39.     On or about September 15, 2016, BENTON emailed Political Committee B, cc'ing a consultant working for Political Committee B and Political Committee C, writing: "If I may ask one more question, my friend is a little high maintenance and wanted to have his body gal in the

room for the private briefing. Is that ok, or would she need to have a full 25K ticket? I was hoping maybe just to pay 10k for her?"

40.     On or about September 15, 2016, through on or about September 19, 2016, WEAD and BENTON made efforts to hide the true purpose of the $100,000 from Foreign National 1 by creating a fake invoice:

a.     On or about September 15, 2016, BENTON emailed WEAD his banking information with the subject "Wire info for consulting services[]" and wrote: "I'll get an invoice whenever appropriate." WEAD then forwarded the information to Foreign National 2, writing: "This is the banking info for sending the wire. My understanding is that it is for consulting services. Your team will be able to meet with these folks when you get here...Do you need an invoice?" Later that day, Foreign National 2 replied, asking for an invoice, indicating that it would be easier to wire the money. WEAD then forwarded Foreign National 2's email to BENTON, asking him for an invoice. On or about the same day, BENTON responded to WEAD: "Of course! But who should be invoiced?" WEAD then forwarded BENTON's email to Foreign National 2, asking for the "[n]ame, address, etc." of who should be invoiced.

b.     On or about September 16, 2016, WEAD emailed Foreign National 2, "Perhaps I am misunderstanding you. I thought you said that [Foreign National 1], would not be wiring any money. But whomever wires the money needs to have an invoice. So to whom do they send the invoice?  What is the name of the person or company or bank that needs an invoice?"

c.     On or about September 16, 2016, WEAD called BENTON's cell phone and the call lasted approximately three and a half minutes. Shortly after, WEAD sent an email to BENTON and Foreign National 2 documenting their cover story, explaining that "the plan" was to have Company B's "mission picked up and spread across the [Commonwealth of Independent States]

…. [Foreign National 1] has the vision to make this work…He is willing to hire consultants here who can help him. And he is willing to donate to charities and NGO's [sic] in the USA who would participate with such a program over there." WEAD then instructed BENTON to send Foreign National 1 an invoice for "consulting work."

          d.     On or about September 19, 2016, before BENTON sent Foreign National 1 an invoice, Company A received a $49,000 wire from a bank account belonging to Foreign National 1 based in Vienna, Austria. On or about September 19, 2016, WEAD emailed BENTON, "Jesse, it wouldn't hurt to send the invoice anyway so they have it on his end."

          e.     On or about September 19, 2016, after Foreign National 1 wired the first set of funds, BENTON sent an invoice to Foreign National 1 for "Consulting Services [Company B] Dinner." The amount on the invoice was $100,000 and it included wiring instructions.

II.     <u>Foreign National 1 travels to the United States, attends Political Committee C's fundraising event with WEAD, and takes a photo with Political Candidate 1</u>

41.     On or about September 20, 2016, WEAD texted BENTON at 3:03 p.m., approximately 18 minutes after Foreign National 1 arrived in the United States.

42.     On or about September 21, 2016, after Company A received a total of $100,000 in two wire transfers from a bank account belonging to Foreign National 1 based in Vienna, Austria, BENTON emailed Political Committee B and confirmed they wanted to purchase two tickets for the Political Committee C fundraising event in Philadelphia, Pennsylvania. In that same email BENTON wrote Political Committee B: "I totally overlooked your email asking for names." BENTON then told Political Committee B: "[WEAD] and a guest will attend for us."

43.     On or about September 21, 2016, BENTON made hotel reservations for WEAD, Foreign National 1 and Foreign National 2 in Philadelphia, Pennsylvania for September 22, 2016.

44.     On or about September 21, 2016, BENTON booked a car service to transport WEAD and two other individuals to Philadelphia, Pennsylvania on September 22, 2016.

45.     On or about September 22, 2016, WEAD emailed BENTON a copy of Foreign National 1's Russian passport.

46.     On or about September 22, 2016, BENTON emailed the consultant working for Political Committee B and Political Committee C and provided Foreign National 1's name.

47.     On or about September 22, 2016, WEAD, Foreign National 1, and Foreign National 2 attended the Political Committee C fundraising event in Philadelphia, Pennsylvania. WEAD took a photograph of Foreign National 1 and Political Candidate 1 with a personal camera at the event. In addition, WEAD, Foreign National 1, and Foreign National 2 had official photographs taken with Political Candidate 1.

48.     Over the next few weeks, BENTON repeatedly claimed to have sent the promised funds to Political Committee C for the two tickets to the fundraising event in Philadelphia, Pennsylvania, but failed to do so.

    a.   On or about September 22, 2016, BENTON emailed the consultant working for Political Committee B and Political Committee C: "the check is in the mail – literally. I dropped it in the box yesterday :)."

    b.   On or about October 3, 2016, BENTON emailed the consultant working for Political Committee B and Political Committee C: "I really apologize. How about if I put it on a credit card and stop payment on the check? If that works, email me a link! Or, I can run and wire, but it will be tomorrow am."

    c.   On or about October 10, 2016, BENTON emailed the consultant working for

Political Committee B and Political Committee C: "Hey – just making sure everything was received? Also, I know you have much bigger fish to fry, but any word when guests might receive their photos?"

        d.   On or about October 24, 2016, the consultant working for Political Committee B and Political Committee C emailed BENTON about the contribution for the September 22, 2016, fundraising event in Philadelphia, Pennsylvania, asking where it was and who it was from. On or about October 24, 2016, BENTON responded to the consultant working for Political Committee B and Political Committee C, claiming that he "bought the tickets and gifted them to [WEAD] and [Foreign National 1], so the money comes from me. And, I think I brain farted and forgot to send the authorization. I will resend as soon as I am at my desk."

III.     Conduit Contribution to Political Committee C

49.     On or about October 26, 2016, BENTON emailed the consultant working for Political Committee B and Political Committee C and attached the second page of the invitation to the Philadelphia, Pennsylvania fundraising event with the credit card authorization filled out. On it, BENTON checked that he could not attend the event, but wanted to contribute $25,000. In the section labeled "CONTRIBUTOR INFORMATION," BENTON provided his personal information, including his name, home address, cell phone, and e-mail address. In the section labeled "PAYMENT INFORMATION," BENTON provided his personal credit card information.

50.     On or about October 26, 2016, after receiving the credit card authorization from BENTON, the consultant working for Political Committee B and Political Committee C emailed BENTON and asked, "Is this one to be credited towards [Foreign National 1] or Doug?" BENTON then responded, "[Foreign National 1], please."

51.     On or about October 27, 2016, Political Committee C charged BENTON's personal credit card $25,000. On or about October 31, 2016, BENTON paid his personal credit card with funds from the bank account for Company A that received the $100,000 wired from Foreign National 1. BENTON retained $75,000 of Foreign National 1's money.

IV.     False Reports to the FEC

52.     On or about December 8, 2016, BENTON and WEAD caused Political Committee B to submit an FEC Form 3X "Report of Receipts and Disbursements for Other than an Authorized Committee" to the FEC in Washington, D.C., falsely claiming that BENTON was the true source of a contribution to Political Committee B when in fact Foreign National 1 was the true source of the contribution.

53.     On or about March 15, 2017, BENTON and WEAD caused Political Committee C to submit an FEC Form 3X "Report of Receipts and Disbursements for Other than an Authorized Committee" to the FEC in Washington, D.C., falsely claiming that "Jesse Bentor" (an apparent misspelling of BENTON's name) was the true source of a contribution to Political Committee C when in fact Foreign National 1 was the true source of the contribution.

54.     On or about July 20, 2017, BENTON and WEAD caused Political Committee A to submit an FEC Form 3P "Report of Receipts and Disbursements by an Authorized Committee of a Candidate for the Office of President or Vice-President" to the FEC in Washington, D.C., falsely claiming that "Jesse Bentor" (an apparent misspelling of BENTON's name) was the true source of a contribution to Political Committee A when in fact Foreign National 1 was the true source of the contribution.

## COUNT TWO
### 52 U.S.C. § 30121 and § 30109(d)(1)(A)(i); 18 U.S.C. § 2
### (Contributions by Foreign Nationals and Aiding and Abetting)

55.     Paragraphs 1 through 18 and 21 through 54 are realleged and incorporated herein by reference.

56.     From in or about September 2016 to at least July 2017, in the District of Columbia and elsewhere, defendants **JESSE R. BENTON** and **ROY DOUGLAS "DOUG" WEAD**, knowingly and willfully solicited and caused the contribution of a foreign national, namely Foreign National 1, to Political Committee A, Political Committee B, and Political Committee C, and willfully caused the same entities to unwittingly accept and receive a contribution made by a foreign national, which aggregated $25,000 in calendar year 2016.

All in violation of Title 52, United States Code, Sections 30121 and 30109(d)(1)(A)(i) and Title 18 United States Code, Section 2.

## COUNT THREE
### 52 U.S.C § 30122 and § 30109(d)(1)(A)(i); 18 U.S.C § 2
### (Contributions in the Name of Another and Aiding and Abetting)

57.     Paragraphs 1 through 18 and 21 through 54 are realleged and incorporated herein by reference.

58.     From in or about September 2016 to at least July 2017, in the District of Columbia and elsewhere, defendant **JESSE R. BENTON**, aided and abetted by **ROY DOUGLAS "DOUG" WEAD**, knowingly and willfully permitted his name to be used to effect the contribution of another to Political Committee A, Political Committee B, and Political Committee C, and defendants **JESSE R. BENTON** and **ROY DOUGLAS "DOUG" WEAD** knowingly and willfully caused Political Committee A, Political Committee B, and Political Committee C to

unwittingly accept the contribution made by one person in the name of another person, which aggregated $25,000 in calendar year 2016.

All in violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(A)(i) and Title 18, United States Code, Section 2.

## COUNT FOUR
### 18 U.S.C. § 1519 and § 2
### (Causing False Records and Aiding and Abetting)

59.    Paragraphs 1 through 18 and 21 through 54 are realleged and incorporated herein by reference.

60.    On or about October 27, 2016, in the District of Columbia and elsewhere, defendants **JESSE R. BENTON** and **ROY DOUGLAS "DOUG" WEAD**, with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the investigation and proper administration of matters within the jurisdiction of departments and agencies of the United States, knowingly concealed, covered up, falsified, and made a false entry in a record, document, and tangible object, to wit, causing Political Committee B to unwittingly, falsely record in a report to the Federal Election Commission dated December 8, 2016, that BENTON contributed $22,300 when the contribution actually came from someone other than the reported contributor, which falsification the defendants well knew and contemplated was related to the proper administration of Political Committee B's required disclosures under the Election Act by the Federal Election Commission.

All in violation of Title 18, United States Code, Sections 1519 and 2.

**COUNT FIVE**
**18 U.S.C. § 1519 and § 2**
**(Causing False Records and Aiding and Abetting)**

61.     Paragraphs 1 through 18 and 21 through 54 are realleged and incorporated herein by reference.

62.     On or about October 27, 2016, in the District of Columbia and elsewhere, defendants **JESSE R. BENTON** and **ROY DOUGLAS "DOUG" WEAD**, with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the investigation and proper administration of matters within the jurisdiction of departments and agencies of the United States, knowingly concealed, covered up, falsified, and made a false entry in a record, document, and tangible object, to wit, causing Political Committee C to unwittingly, falsely record in a report to the Federal Election Commission dated March 15, 2017, that "Jesse Bentor" (an apparent misspelling of BENTON's name) contributed $25,000 when the contributions actually came from someone other than the reported contributor, which falsification the defendants well knew and contemplated was related to the proper administration of Political Committee C's required disclosures under the Election Act by the Federal Election Commission.

All in violation of Title 18, United States Code, Sections 1519 and 2.

**COUNT SIX**
**18 U.S.C. § 1519 and § 2**
**(Causing False Records and Aiding and Abetting)**

63.     Paragraphs 1 through 18 and 21 through 54 are realleged and incorporated herein by reference.

64.     On or about October 27, 2016, in the District of Columbia and elsewhere, defendants **JESSE R. BENTON** and **ROY DOUGLAS "DOUG" WEAD**, with the intent to impede, obstruct, and influence, and in relation to and contemplation of, the investigation and proper administration of matters within the jurisdiction of departments and agencies of the United

17

States, knowingly concealed, covered up, falsified, and made a false entry in a record, document, and tangible object, to wit, causing Political Committee A to unwittingly, falsely record in a report to the Federal Election Commission dated July 20, 2017, that "Jesse Bentor" (an apparent misspelling of BENTON's name) contributed $2,700 when the contributions actually came from someone other than the reported contributor, which falsification the defendants well knew and contemplated was related to the proper administration of Political Committee A's required disclosures under the Election Act by the Federal Election Commission.

All in violation of Title 18, United States Code, Sections 1519 and 2.

A TRUE BILL


_____
FOREPERSON


COREY R. AMUNDSON
Chief, Public Integrity Section
United States Department of Justice

By:  *[signature: Rebecca G. Ross]*

Rebecca G. Ross
Michelle K. Parikh
Trial Attorneys
Public Integrity Section

Michelle L. Wasserman
Special Assistant United States Attorney
United States Attorney's Office for the
District of Columbia