UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**JESSE R. BENTON**<br><br>**Defendant.** | Case No. 1:21-cr-00569-TNM |

## UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT

Defendant Jesse R. Benton has filed a motion to dismiss the Indictment. *See* ECF No. 34. Defendant's motion should be denied because, contrary to his claims, 1) Counts Two and Three of the Indictment are legally sufficient; 2) Counts Four through Six adequately allege an offense; and 3) because there is no infirmity with Counts Two through Six of the Indictment, there is likewise no infirmity with Count One, the conspiracy count. *See* ECF No. 34, at 4-17. For the reasons discussed below, the United States of America, by and through its undersigned attorneys, respectfully submits Defendant's motion should be denied.

## BACKGROUND

On September 9, 2021, a federal grand jury sitting in the District of Columbia returned an indictment charging Defendant and Roy Douglas "Doug" Wead ("Wead")[1] with one count each of 18 U.S.C. § 371 (conspiracy); 18 U.S.C. § 1519 (causing false records); 52 U.S.C. § 30121 (campaign contributions by foreign nationals); and 52 U.S.C. § 30122 (campaign contributions in the name of another). As alleged in the Indictment, these charges arise out of a conspiracy

---

[1]   Following the Indictment, Mr. Wead passed away. On December 23, 2021, the government filed a Motion to Abate Prosecution as to Mr. Wead only. The Court granted that motion the same day. As such, this case is proceeding as to Defendant only.

1

involving Defendant, Wead and others to solicit $100,000 from a Russian foreign national, Foreign National 1,[2] and to use those funds to make an unreported foreign national contribution to Political Committee C, a joint fundraising committee.[3]

As laid out in the Indictment, Foreign National 1 planned a trip to the United States in September 2016. In the course of planning that trip, Wead told Foreign National 1 that he could meet a celebrity. Indictment ¶ 25. Wead reached out to Foreign National 2, a Russian/English translator, on September 11, 2016, and suggested that Foreign National 1 could meet Political Candidate 1 during his trip to the United States. *Id.* ¶ 28. Wead reached out to Defendant telephonically the next day. *Id.* ¶ 29. From the very beginning of the conspiracy, Defendant sought to conceal its illegal object. Indeed, when Defendant reached out to individuals from Political Committee B to arrange for Foreign National 1 to make a political contribution and meet Political Candidate 1, he lied and claimed he had a friend who "spends most of his time in the Caribbean" who wanted to "fly in for an event" to attend a fundraiser and get a photograph. *Id.* ¶ 31. To hide the true purpose of the transfer of funds from Foreign National 1, Defendant created a fake invoice for "consulting services" for a non-profit organization, Company B, co-founded by Wead. *Id.* ¶ 40(e).

On September 19 and 20, 2016, Foreign National 1 wired Defendant's company, Company A, $100,000, in two separate transfers from an Austrian bank account. *Id.* ¶ 42. On September

---

[2] The government uses the same anonymizations for certain individuals and entities as in the Indictment. The identities of those individuals and entities have been provided to Defendant in discovery. The government will provide the Court with that information if requested.

[3] Political Committee C was a joint fundraising committee comprised of Political Committee A (Political Candidate 1's principal campaign committee), Political Committee B (a national party committee), and other organizations supporting Political Candidate 1's political party in various states. Indictment ¶¶ 14-16.

21, 2016, after all of Foreign National 1's money was transferred, Defendant emailed Political Committee B and confirmed the purchase of two tickets to a Political Committee C fundraiser in Philadelphia, Pennsylvania.  *Id.*  Defendant continued to try to hide Foreign National 1's identity by, among other things, initially only providing Wead's name to Political Committee B.  *Id.* ¶ 42. After the event, Defendant repeatedly lied to a consultant working for Political Committee C and Political Committee B, claiming that the required contribution had already been sent.  *Id.* ¶ 48. On October 24, 2016, Defendant asserted for the first time that he had "bought the tickets and gifted them" to Wead and Foreign National 1 and that the money came from him.  *Id.* ¶ 48(d). Two days later, on October 26, 2016, Defendant emailed the contribution form for the event, providing his own personal information and charging $25,000, half of the promised amount for the two tickets, to his personal credit card.  *Id.* ¶ 49.  Defendant paid the credit card with funds from Company A's bank account.  *Id.* ¶ 51.  Defendant kept $75,000 of Foreign National 1's money for himself.  *Id.*

As a result of Defendant's false statements on the contribution form, Defendant caused Political Committee A, Political Committee B, and Political Committee C to file false reports with the Federal Election Commission (FEC).  *Id.* ¶¶ 52-54.

## ARGUMENT

Instead of arguing about the sufficiency of the charges as a matter of law, Defendant largely focuses on questions of fact and, more specifically, argues what he perceives to be deficiencies in the government's evidence.  These factual disputes are questions for the jury, not for this Court in addressing a motion to dismiss the indictment (and are not meritorious in any event).  Although Defendant's assessment of the government's trial proof is incorrect, it is premature and his arguments do not lend support to a motion to dismiss under Rule 12.

I.      **Standard of Review**

Rule 12 allows a defendant to move to dismiss an indictment for insufficiency and failure to state an offense. Fed. R. Crim. P. 12(b); *see also United States v. Cotton*, 535 U.S. 625, 631 (2002). "When considering a motion to dismiss for failure to state an offense, the court is limited to reviewing the face of the indictment and, more specifically, the language used to charge the crimes." *United States v. Concord Mgmt. & Consulting LLC*, 347 F. Supp. 3d 38, 44 (D.D.C. 2018) (internal quotation marks and citation omitted). A court "must presume the allegations of the indictment to be true, and may not dismiss an indictment on a determination of facts that should have been developed at trial." *Id.* (internal marks and citations omitted).

An indictment is sufficient when it (1) contains the elements of the offense intended to be charged; (2) sufficiently apprises the defendant of what he must be prepared to meet; and (3) allows him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974). Sufficiency "is not a question of whether [the indictment] could have been more definite and certain," *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)), but of "whether it is fair to require the accused to defend himself on the basis of the charge as stated." *United States v. Conlon*, 628 F.2d 150, 155 (D.C. Cir. 1980); *see also Verrusio*, 762 F.3d at 13 ("[T]o be sufficient, an indictment need only inform the defendant of the precise offense of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense."); *United States v. Hitt*, 249 F.3d 1010, 1016 (D.C. Cir. 2001) ("[A]n indictment's main purpose is 'to inform the defendant of the nature of the accusation against him.'" (quoting *Russell v. United States*, 369 U.S. 749, 767 (1962)).

## II.  Counts Two and Three Are Sufficiently Pled.

Defendant argues that the Indictment's detailed allegations of fact, recitation of the relevant statutory language charging willful violations of the foreign and conduit contribution bans, and numerous descriptions of the payment at issue are insufficient.  First, according to Defendant, "the Indictment does not sufficiently allege that [Defendant] solicited Foreign National 1.  The Indictment clearly states that Wead, not [Defendant], was the person who emailed Foreign National 2 suggesting that 'Foreign National 1 could meet Political Candidate 1 during Foreign National 1's trip to the United States.'" ECF No. 34, at 4 (citing Indictment at ¶ 28).  Second, Defendant argues that the Indictment does not properly allege a contribution because "notwithstanding the clear definition of contribution and FECA's intent, nowhere in the Indictment does the Government allege that [Foreign National 1]'s payment was made for the purpose of influencing an election." *Id.* at 4-5.  These arguments are meritless.  It is well established that to be sufficient, an indictment need not expressly allege or define every component of every statutory term.  Instead, an indictment is sufficient when it "'set[s] forth the offense in the words of the statute itself, as long as those words fully, directly, and expressly, without any ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'" *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018) (citing *Hamling*, 418 U.S. at 117).

The Indictment does so here.  Count Two of the Indictment could not be clearer in charging Defendant with soliciting and causing an unlawful contribution of a foreign national in violation of 52 U.S.C. §§ 30121 and 30109(d)(1)(A)(i), and 18 U.S.C. § 2.  Contrary to Defendant's assertion, Count Two specifically identifies Defendant and says that he "knowingly and willfully *solicited* and *caused* the contribution of a foreign national[.]" Indictment at ¶ 56 (emphasis added).  This mirrors the exact language of the criminal statute.  *See* 52 U.S.C. § 30121 and

30109(d)(1)(A)(i).  But Count Two does not stop there.  It contains basic factual allegations, including the name of the foreign national, the name of the political committees, the date, and the amount of the illegal foreign contribution.  Moreover, the Indictment explicitly alleges a conspiracy between Wead and Defendant to commit all three charged substantive offenses.  Thus, even if Wead, and not Defendant, was in direct communication with the foreign national, Defendant can still be substantively liable for the solicitation of the foreign national pursuant to *Pinkerton* liability.  *See Pinkerton v. United States*, 320 U.S. 640, 646-47 (1946); *United States v. Khatallah*, 41 F.4th 608 (D.C. Cir. 2022) ("[A] conspirator can be found guilty of a substantive offense based upon acts of his coconspirator so long as the act was done in furtherance of the conspiracy, was within the scope of the unlawful project, and could be reasonably foreseen as a necessary or natural consequence of the unlawful agreement.").  Likewise, the Indictment clearly alleges that Defendant violated the ban on conduit contributions in violation of 52 U.S.C. §§ 30122 and 30109(d)(1)(A)(i) and 18 U.S.C. § 2.  Following the precise statutory language, Count Three alleges that Defendant, "aided and abetted by [Wead], knowingly and willfully permitted his name to be used to effect the contribution of another."  Indictment at ¶ 58.  Count Three goes on to identify key facts, including the political committees, the amount of money, and the year.  As such, both Count Two and Count Three more than adequately provide Defendant with notice of the charge against him.

       Furthermore, the Supreme Court has repeatedly recognized the principle that an indictment need not define every component of every statutory term, so long as it contains the elements of the offenses charged, fairly informs the defendant of the charges against him, and enables the defendant to plead a double jeopardy bar to a future prosecution.  In *Hamling*, the Court rejected the argument that an indictment charging mailing of obscene materials was insufficient because it

failed to define the term "obscene." The Court concluded that "[t]he definition of obscenity . . . is not a question of fact, but one of law," and reasoned that the "legal definition of obscenity does not change with each indictment; it is a term sufficiently definite in legal meaning to give a defendant notice of the charge against him." *Hamling*, 418 U.S. at 118. Thus, "the various component parts of the constitutional definition of obscenity need not be alleged in the indictment in order to establish its sufficiency." *Id.* at 119.

Similarly, the definition of "contribution" is a question of law, not fact, and the indictment need not allege every component part of the legal definition of "contribution" to be sufficient. *See e.g.*, *United States v. Resendiz-Ponce*, 549 U.S. 102, 107-10 (2007) (holding that indictment sufficiently alleged an attempted offense by using the term "attempt," which necessarily included the requirement that the government prove that the defendant committed an overt act qualifying as a substantial step toward completion of his goal); *Williamson*, 903 F.3d at 131 ("Here, it was likewise enough for the indictment to allege—in concert with the statutory language—that a threat was made 'on account of the performance of official duties' in general, 18 U.S.C. § 115(a)(1)(B), without any need to specify a particular official duty."); *United States v. Huggans*, 650 F.3d 1210, 1219 (8th Cir. 2011) (finding that indictment's use of statutory language was sufficient and that factual details of overt acts was not necessary); *United States v. Klein*, 476 F.3d 111, 113-14 (2d Cir. 2007) (holding that fraud indictment sufficiently alleged a material misrepresentation because "an allegation of materiality can be inferred from use of the word fraud in the indictment"); *United States v. Martinez*, 981 F.2d 867, 872 (6th Cir. 1992) (holding that indictment "sufficiently alleged willfulness by citing the appropriate section of the United States Code," and that "citation to the statutes informed [the defendant] of the elements of the charged offenses"). As such, the Indictment sets forth the elements of the charged offenses and provides Defendant with clear notice

of the allegation against him and is sufficient. *See United States v. Lundergan*, No. 5:18-cr-106, 2019 WL 1261354, at *5 (E.D. Ky. Mar. 18, 2019) ("The consistent use of the term 'contributions,' plus the inclusion of the relevant statutory language for each violation clearly establishes the crimes for which the Defendants are being charged. The United States is not required to define every component of every statutory term, including, here, all possible types of contributions.") (citation omitted).

### III. Defendants' First Amendment Challenge to Counts Two and Three Lacks Merit.

As the Indictment sufficiently alleges that Defendant solicited and caused an unlawful campaign contribution by Foreign National 1, Defendant's next argument that Counts Two and Three violate the First Amendment because Foreign National 1's contribution was made for purposes other than influencing the election must also fail. ECF No. 34, at 8. Once again, rather than arguing the sufficiency of the charges as a matter of law—the only proper argument under Federal Rule of Criminal Procedure 12(b)(3)—Defendant's First Amendment argument focuses solely on a question of fact. As described above, whether Defendant's solicitation of $100,000 from Foreign National 1, of which $25,000 went to Political Committee C, constitutes a "contribution" is a matter of fact for the jury to decide. The Indictment plainly alleges that Defendant caused and solicited such a "contribution," reciting the language of the statutes that Defendant is charged with violating. The fact that Defendant has a different view of the facts—arguing that he did not, in fact, solicit or cause a "contribution" within the meaning of the charged statutes—is a matter to be resolved at trial, not at the motion to dismiss stage. Furthermore, although Defendant's assessment of the government's trial proof is incorrect, Defendant's argument does not lend support to a motion to dismiss under Rule 12 where, as here, the Indictment contains sufficient and proper allegations regarding the essential elements of the charged conduct.

Importantly, the conduct sufficiently alleged in the indictment is not protected by the First Amendment and Defendant cannot argue as much. Despite Defendant's conclusory statement that the "statute is impermissibly broad," federal law has long prohibited foreign nationals from contributing to campaigns. *See* 52 U.S.C. § 30121; *see also United States v. Singh*, 979 F.3d 697, 711 (9th Cir. 2020) ("We hold that Congress acted within its constitutional authority in enacting § 30121(a)"); *United States v. Kanchanalak*, 192 F.3d 1037, 1050 (D.C. Cir. 1999) (concluding that reporting requirements forbid foreign national donations of soft money); *Bluman v. Fed. Election Comm'n*, 800 F. Supp. 2d 281, 288 (D.D.C. 2011), aff'd, 565 U.S. 1104, 132 S. Ct. 1087, 181 L. Ed. 2d 726 (2012) ("It is fundamental to the definition of our national political community that foreign citizens do not have a constitutional right to participate in, and thus may be excluded from, activities of democratic self-government. It follows, therefore, that the United States has a compelling interest for purposes of First Amendment analysis in limiting the participation of foreign citizens in activities of American democratic self-government, and in thereby preventing foreign influence over the U.S. political process."). Since a contribution by a foreign national is unlawful, the knowing solicitation of such a contribution is also not protected. *See Hsia v. United States*, 176 F.3d 517, 525 (D.C. Cir. 1999) (rejecting argument that "simply soliciting political contributions" is protected speech under the First Amendment). Moreover, Defendant has no First Amendment right to disguise an illegal contribution as lawful by falsely asserting to Campaign Committee C that he was the source of the funds. *See id.* (finding no First Amendment protection for conduit contributions); *see also Buckley v. Valeo*, 424 U.S. 1, 66-68, 70 (1976) (finding reporting requirements were essential to inform the public where campaign money comes from and how it is spent, to combat actual and apparent *quid pro quo* corruption, and to gather the data necessary to detect violations of contribution limits and did not infringe on the First Amendment).

Importantly, "contributions have long been treated as marginal speech restrictions subject to relatively complaisant First Amendment review because contributions lie closer to the edges than to the core of political expression." *Fed. Election Comm'n v. Beaumont*, 539 U.S. 146, 147-48 (2003). As such, Defendant's constitutional attack on Counts Two and Three not only improperly argues a factual issue that must be left for the jury, but is also foreclosed by established precedent.

### IV. Count Three Does Not Omit the Required Specific Intent Element

Defendant next argues that Count Three "contains additional language that is legally insufficient." ECF No.. 34, at 9. Notably, in advancing this argument, the Defendant does not maintain that the entire count is legally insufficient, just that the "additional" language is a "logical inconsistency." *Id* at 9-10. For the reasons discussed above, Count Three is sufficiently pled—it informs the defendant of the precise offenses of which he is accused so that he may prepare his defense and plead double jeopardy in any further prosecution for the same offense. *See* Indictment ¶ 58; *see also Conlon*, 628 F.2d at 155 ("The test for sufficiency is whether it is fair to require the accused to defend himself on the basis of the charge as stated in the indictment.").[4] Moreover, Count Three falls squarely within a well-established line of cases applying 18 U.S.C. § 2 to fraudulent or deceitful conduct that occurs through an intermediary, such as here. *See, e.g.*, *Hsia*, 176 F.3d at 522-23 (D.C. Cir. 1999) (finding no defect in charging defendant with 18 U.S.C. §§ 2(b) and 1001 where defendant made false statements to a political committee, thereby causing the committee to convey those false statements to the FEC); *Kanchanalak*, 192 F.3d at 1042 (D.C. Cir. 1999) (same).

---

[4] Indeed, it is not required for the Government to even allege liability under § 2 to proceed on such a theory, as it is read into every offense. *United States v. Kegler*, 724 F.2d 190, 201 (D.C. Cir.1983) ("The indictment need not specifically charge a violation of 18 U.S.C. § 2. An aiding and abetting instruction may be given in a case where the indictment does not allege violation of the aiding and abetting statute.").

Under 18 U.S.C. § 2, there are two theories of liability. First, a person is punishable "as a principal" if he "aids, abets, counsels, commands, induces or procures" the commission of a federal offense. S*ee* 18 U.S.C. § 2(a); *see also United States v. Ali*, 718 F.3d 929, 935-36 (D.C. Cir. 2013). To convict as a principal of aiding and abetting the commission of a crime under § 2(a), the government must prove that the defendant associated with the criminal venture, purposefully participated in the criminal activity, and sought by his actions to make the venture successful. *United States v. Lucas*, 67 F.3d 956, 959 (D.C. Cir. 1995); *see also Ali*, 718 F.3d at 936 ("All that is necessary is to show some affirmative participation which at least encourages the principal offender to commit the offense, with all its elements, as proscribed by the statute.") (quoting *United States v. Raper*, 676 F.2d 841, 850 (D.C. Cir. 1982)). Second, a person is punishable "as a principal" if he "willfully causes an act to be done which if directly performed by him or another" would be a federal offense. *See* 18 U.S.C. § 2(b); *see also United States v. Trie*, 21 F.Supp 2d 7, 14 (D.D.C. 1998). A principal who has caused another to engage in deceitful conduct under § 2(b) is culpable himself even if the intermediary has no criminal intent and is therefore innocent of the substantive crime. *See Kanchanalack*, 192 F.3d 1046-47 (D.C. 1999) (finding that because defendant had "caused" a political committee to report a false statement to the FEC, he had violated 18 U.S.C. §§ 2(b), 1001, even where the political committee did not know it had submitted a false statement).

As such, pursuant to 18 U.S.C. §§ 30122 and 2, Count Three is sufficiently pled. It alleges that Defendant had the required mental state when he caused the political committees to accept an illegal contribution by using his own name to illegally funnel $25,000 of Foreign National 1's money into a campaign for federal office. Under § 2, the government does not need to allege that the Political Committees acted "knowingly and willfully" as the Defendant has asserted. ECF No.

11

33 at 10. Defendant's argument that Count Three should be dismissed is overreaching and should be denied.[5]

### V. Counts Four through Six Are Sufficiently Pled.

Defendant challenges Counts Four through Six on three grounds: (1) Defendant claims that the charges were "brought inappropriately under the Sarbanes-Oxley Act"; (2) Defendant claims that the Indictment fails to allege the requisite mental state; and (3) Defendant claims that the charges are multiplicitous. *See* ECF No. 34, at 10-17. Each of these arguments lack merit, and Defendant's motion should be denied with respect to Counts Four through Six.

#### a. Section 1519 Applies to False FEC Reports.

Defendant argues that Counts Four through Six were improperly charged because Section 1519 was enacted to address corporate fraud. ECF No. 34, at 10-12. But Section 1519 on its face is not limited to cases involving corporate fraud. Section 1519 criminalizes the knowing "conceal[ment], cover[ing] up, falsif[ying] or mak[ing of] a false entry in *any record [or] document* with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of *any department or agency of the United States*." 18 U.S.C. § 1519 (emphasis added).

Campaign finance reporting requirements are codified in the Federal Election Campaign Act of 1971 ("FECA"), *codified as amended at* 52 U.S.C. § 30101 *et seq.*. FECA requires every political committee to designate a treasurer. *See* 52 U.S.C. § 30102(a). Any person who receives a contribution for a political committee must promptly send it to the treasurer, along with (in most

---

[5] Even if the language identified by Defendant were legally deficient—which, for the reasons described above, it is not—the remedy would be a special verdict form or, perhaps, striking the "additional" language that Defendant alleges is problematic, rather than dismissal of the entire count.

12

circumstances) information about the person who made the contribution. *See* 52 U.S.C. § 30102(b). The treasurer is required to account for all contributions received by the committee and to preserve records of those transactions for a period of time. *See* 52 U.S.C. § 30102(c). The treasurer must also file with the FEC periodic reports of the political committee's receipts and disbursements. *See* 52 U.S.C. § 30104(a)(1)-(2). Those reports must disclose contributions, transfers, loans, and other income received by the committee and the contributors' identities for transactions over a certain monetary threshold. *See* 52 U.S.C. § 30104(b)(2)-(3).

"In construing a statute, we look first for the plain meaning of the text. If the language of the statute has a 'plain and unambiguous meaning,' our inquiry ends so long as the resulting 'statutory scheme is coherent and consistent.'" *United States v. Barnes*, 295 F.3d 1354, 1359 (D.C. Cir. 2002). Section 1519 plainly applies to falsified FEC filings. Arguing otherwise, Defendant relies solely on *United States v. Yates*, 574 U.S. 528 (2015). However, *Yates* provides no support for Defendant's argument, and only by cherry picking quotes and misrepresenting the Supreme Court's ruling is he able to claim that it does. *Yates* was a case involving the defendant's tossing of *undersized fish* overboard to interfere with a federal investigation. *Id.* at 1078-079. On those facts, the Supreme Court held that the phrase "tangible object" under § 1519, which had been passed in the context of "corporate and accounting deception and coverups," had to be construed as something "used to record or preserve information," and did not encompass the throwing overboard of fish. *Id.* at 1079. The case did not hold, as Defendant suggests, that charges under § 1519 are limited to the context of a financial fraud scheme.

Because § 1519 criminalizes the false entry in *any record* or *document*, § 1519 plainly applies on these facts. *See United States v. Hunt*, 526 F.3d 739, 744 (11th Cir. 2002) (observing that § 1519's text "bears no hint of any limiting principle cabining § 1519 to corporate fraud

cases"). And § 1519 charges have been brought numerous times outside the context of financial fraud, including in cases involving false statements to the FEC. *See United States v. Benton*, 890 F.3d 697, 711 (8th Cir. 2018) (holding that a defendant may be convicted of violations of FECA and § 1519, because "[t]he production of false financial records by a political campaign falls within" the framework set forth by *Yates*); *United States v. Rowland,* 826 F.3d 100, 108-11 (2d Cir. 2016) (same); *see also United States v. Gonzalez*, 906 F.3d 784, 794 (9th Cir. 2018) (rejecting defendant's challenge to the application of § 1519 in a case involving falsification of law enforcement reports); *United States v. McQueen*, 727 F.3d 1144, 1151–53 (11th Cir. 2013) (upholding § 1519 conviction predicated on falsified police report); *United States v. Moore*, 708 F.3d 639, 648-49 (5th Cir. 2013) (same); *United States v. Moyer*, 674 F.3d 192, 206–08 (3d Cir. 2012) (same); *United States v. Gray*, 642 F.3d 371, 374–79 (2d Cir. 2011) (same). Defendant's argument is wholly without merit and should be rejected.

    **b. Counts Four through Six Adequately Allege the Requisite Mental State.**

Defendant makes two arguments with regard to the Indictment's allegations regarding Defendant's mental state on the § 1519 charges: (1) the Indictment improperly alleges that Defendant "caused the political committees to unwittingly, knowingly falsely record a future report to the Federal Election Commission", and (2) the Indictment insufficiently alleges that "Benton intended to impede, obstruct, or influence any pending or contemplated investigation or administration of any matter". ECF No.. 34, at 12-14. Both arguments fail, for the same reasons that the challenge to the mental state requirement for Counts Three fails (*see supra*, at 10-11).

First, despite Defendant's claims, there is no "flawed logic" in the government's framing of the § 1519 charges. The government charges in Counts Four, Five and Six that Defendant caused the recipient political committee to "unwittingly, falsely record in a record in a report to

14

the Federal Election Committee" the contribution made with Foreign National 1's money as a contribution made by Defendant. As Defendant notes, he is charged with §§ 1519 and 2 together. Under this theory of liability, Defendant with knowledge and the requisite intent, caused the recipient political committee to file a false report. As discussed in detail in section IV above, the § 2(b) causation theory of liability has been upheld by the D.C. Circuit even where the party performing the action proscribed by the statute—here, the filing of the false record—is not criminally liable, so long as the defendant caused the performance of that action and had the requisite criminal intent. *See, e.g.*, *Hsia*, 176 F.3d at 522-23. Convictions under §§ 1519 and 2 on a causation theory of liability have been repeatedly upheld in the context of FECA violations. *See, e.g.*, *United States v. Emmons*, 8 F.4th 454, 477-78 6th Cir. 2021) (affirming conviction under §§ 1519 and 2 where defendant caused the filing of false FEC reports where committing filing report lacked criminal intent); *Singh*, 979 F.3d at 717 (same). This challenge is no more successful with respect to Counts Four through Six than it was with respect to Count Three. For the same reasons articulated *supra* at 10-11, Defendant's argument should be rejected.

Defendant next argues that Counts Four, Five and Six fail to allege "all essential elements" of a § 1519 violation. ECF No. 34, at 13. But Defendant also acknowledges that the language of these counts tracks the language of § 1519. *See id.* (describing what the government has to allege for a § 1519 charge to be sufficiently pled). Defendant further argues that "the Indictment only references a future report to be filed pursuant to FECA without allegations regarding Benton's knowledge or intent regarding the specific Political Action Committees and their reporting obligations or reporting cycles". ECF No. 34, at 13. But the precise contours of Defendant's knowledge—and the evidence will show that Defendant's knowledge was sophisticated, given his wealth of experience as a political operative—is a question of fact for the jury, not a question of

15

the legal sufficiency of the Indictment.  For present purposes, it is sufficient that the Indictment alleges that Defendant possessed the mental state required by the statute.  Counts Four through Six each charge that Defendant, with the requisite mental state, caused the filing of a false record. Because the Indictment "'set[s] forth the offense in the words of the statute itself" and those words are set forth "fully, directly, and expressly, without any ambiguity" Counts Four, Five and Six are sufficiently pled.  *Williamson*, 903 F.3d at 130.

### c. Counts Four through Six Are Not Multiplicitous, and Merger Is Not Warranted.

Defendant argues, as an alternative to dismissal, that Counts Four through Six should merge because they arise out of the same conduct and therefore are multiplicitous.   This claim, too, is meritless.

Where multiple violations of the same statute are charged, the Court must ask what the legislature intended to be the "unit of prosecution" under the statute.  *United States v. Weathers*, 186 F.3d 94, 952 (D.C. Cir. 1999).  To identify the proper unit of prosecution, the Court first looks to the plain language of the statute.  *United States v. Song,* 934 F.2d 105, 108-09 (7th Cir. 1991). Beginning with the plain language of the statute, § 1519 states:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation or in contemplation of such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

On its face, as relevant here, the statute clearly criminalizes each *falsification* of, or *false entry* in, any *record*, *document*, or *tangible object*.  Thus, the unit of prosecution is each falsified record, document or tangible object, or false entry in a record, document, or tangible object, and. Because Defendant caused three different false reports to be filed with the FEC by three different political committees on three different dates, he committed three violations of § 1519.  This view

16

of § 1519 is consistent with the assessment of courts who have analyzed the question of what the proper "unit of prosecution" is under § 1519. *See United States v. Diana Shipping Servs., S.A.*, 985 F. Supp. 2d 719, 727-28 (E.D. Va. 2013) (finding the "unit of prosecution" for a § 1519 "false entry" case to be each "separate and distinct false entry"); *United States v. Mixon*, CR 14-0631-TUC-JGZ (LAB), 2015 WL 5692569, at * 2 (D. Az. June 17, 2015) (finding the proper "unit of prosecution" for a § 1519 charge to be "each separate record, document or tangible object that the defendant is accused of falsifying"); *see also United States v. Schmeltz*, 667 F.3d 685, 688 (6th Cir. 2011) (finding that § 1519 was "intended to punish *the falsification of a document*") (emphasis added). The government charged one count for each false record Defendant caused by his illegal actions: (1) the December 8, 2016 false FEC report filed by Political Committee B (Count Four); (2) the March 15, 2017 false FEC report filed by Political Committee C (Count 5); and (3) the July 20, 2017 false FEC report filed by Political Committee A (Count 6). The Indictment's charging structure is not multiplicitous.

Arguing otherwise, Defendant relies on *United States v. Johnson*, 4 F.4th 116 (D.C. Cir. 2021). However, that case is distinguishable because it related to a different statute, and did not even cite § 1519. Despite being a case decided by the D.C. Circuit, the case was interpreting a D.C. Code statute, which required the court to step into the shoes of the D.C. Court of Appeals. *Id.* at 120. More fundamentally, the unit of prosecution necessarily turns on the language of the particular statute, so an analysis of the unit of prosecution of a different statute is irrelevant to the unit of prosecution for a § 1519 charge.

Even if Defendant's multiplicity argument were meritorious—and it is not—merger of Counts Four through Six would not be appropriate at this time. As the D.C. Circuit has made clear, "multiplicity claims are better sorted out post-trial." *United States v. Hubbell*, 177 F.3d 11, 14

(D.C. Cir. 1999). Because the primary concern with multiplicitous counts is that a defendant may be punished twice for the same criminal conduct, any potential harm caused by multiplicitous charges can be remedied at sentencing if the jury returns convictions on Counts Four, Five and Six. Defendant has not, and indeed, cannot, articulate any prejudice of allowing the government to proceed to trial on Counts Four, Five, and Six, particularly where Defendant has argued that the Counts are based on the same set of facts. *See United States v. Sanford, Ltd.*, 859 F.Supp.2d 102, 124 (D.D.C. 2012) (collecting cases denying pre-trial motions, finding that multiplicity issues are better decided post-trial and finding no prejudice where the objected-to counts are based on the same set of facts).

For all of the foregoing reasons, Defendant's challenges to Counts Four through Six lack merit and should be denied.

**VI.   Count One Is Sufficiently Pled.**

Finally, Defendant argues that, because of the claimed legal insufficiencies he raises regarding Counts Two through Six of the Indictment, Count One must be dismissed as well. However, as demonstrated in this pleading, there is no infirmity in Counts Two through Six, and therefore, there is no infirmity in Count One. The defendant's motion should be denied in its entirety.

**CONCLUSION**

For the foregoing reasons, the United States respectfully submits that Defendant's Motion to Dismiss the Indictment Should be denied.

//

//

//

          Respectfully submitted,

          Corey R. Amundson
          Chief
          Public Integrity Section

By: */s/ Rebecca G. Ross*
          Rebecca G. Ross
          Michelle K. Parikh
          Trial Attorneys
          Public Integrity Section
          Criminal Division
          U.S. Department of Justice

          Michelle L. Wasserman
          Special Assistant United States Attorney
          United States Attorney's Office for the
          District of Columbia

## **CERTIFICATE OF SERVICE**

I hereby certify that this motion was filed by ECF on August 19, 2022, and thereby served on defense counsel.

          */s/ Rebecca G. Ross*
          Rebecca G. Ross
          Trial Attorney