# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) Criminal No. 1:21-CR-00569 (TNM) |
| JESSE R. BENTON, | ) |
| Defendant. | ) |

## DEFENDANT JESSE R. BENTON'S REPLY IN SUPPORT OF MOTION TO DISMISS THE INDICTMENT

Defendant, Jesse R. Benton, through undersigned counsel, hereby submits his Reply in Support of the Motion to Dismiss the Indictment in this case, and states the following in support.[1]

## I.      Introduction

The Government's Opposition to the Motion to Dismiss ("Gov. Opp.") did not adequately defend its deficient Indictment.  The facts as alleged do not constitute a crime as they do not state an offense as a matter of law.  The Government also distorted its own facts – it made a bold assertion in its opposition introduction – that Mr. Benton "sought to conceal its [the conspiracy's] illegal object" and "Defendant continued to try to hide Foreign National 1's identity, by, among other things, initially only providing Wead's name to Political Committee B."  Gov. Opp. at 3.  However, the Government's assertions are easily countered by their own

---

[1] Defendant submits this Reply in Support of his Motion to Dismiss, but will not file a Reply in Support of his Opposition to the Government's Rule 404(b) Notice, ECF No. 33.  After the Defendant filed the Opposition, the Government filed its Omnibus Motion in Limine to Admit Evidence. ECF No. 32.  The Defendant filed an Opposition to the Government's Omnibus Motion in Limine to Admit Evidence, ECF No. 36, and addressed the arguments made by the Government in its subsequent pleading responding to the Defendant's initial opposition, ECF No. 38.  The Defendant considers that motion fully briefed and prepared for decision by the Court.

allegations – the Government references Paragraph 42 of the Indictment for support that Mr.

Benton tried to hide Foreign National 1's identity on September 21, 2016, but then the

Indictment states that ***the very next day***, September 22, 2016, Mr. Benton provided Foreign

National 1's name.  Indictment, ¶ 46.  Therefore, the Government's bold, grand statement that

Mr. Benton tried to hide Foreign National 1's identity falls flat as and is indicative of its

overblown allegations in this case.

II.  <u>**Response to Government's Opposition**</u>

    A.  <u>**The Indictment Is Defective as a Matter of Law**</u>

The Government portrays Mr. Benton's challenges as challenges to questions of fact and

deficiencies in the government's evidence and premature.  This is an inaccurate categorization of

the motion to dismiss.  The motion asserted that the Indictment failed on a legal basis and

remains legally insufficient.

Despite the Government's deflection that sufficiency of an indictment is not whether it

could have been "more definite and certain," Gov. Opp. at 4, the Indictment in this case is

plainly defective as a matter of law.   As noted in the Motion to Dismiss, FECA defines

"contribution" to include "any gift, subscription, loan, advance, or deposit of money or anything

of value made by any person *for the purpose of influencing any election for Federal office*." 52

U.S.C.S. §30101(8)(A) (emphasis added).  Notwithstanding this clear definition and purpose, the

Government states that the Indictment need not "expressly allege or define every component of

every statutory term." *Id.* at 5.  What is lacking in this case, the failure to allege that there was

intent to influence a federal election, is not a superfluous or unnecessary element to allege, rather

it goes to the heart of this case.  The Government's slightly disingenuous retreat to "notice

pleading" case law is challenged by the fact that in an 18 page speaking Indictment, it failed to

allege the most critical aspects of this case – whether Mr. Benton solicited the contribution and the legally required purpose of the contribution.  Indeed, the Indictment listed eight reasons for the contribution as summarized by the Motion to Dismiss that centered around the photo with the candidate, *see* ECF No. 34 at 6-7, but the Government did not also allege in that summary that the purpose was to influence a federal election.  To be sure, if the Government actually had evidence that Foreign National 1 had plans to gain favor with the political candidate at issue like the defendants in the cases cited in the Motion to Dismiss, *id*. at 5, those allegations would have been front and center in the Indictment.  They were not, and that renders the Indictment legally insufficient.[2]  Therefore, this absence and deflection by the Government is telling and demonstrates that there is a legally deficient Indictment regarding the alleged contribution in this case.

In addition to failing to allege a critical element of the statute, the Government also did not respond to the argument that on the face of the Indictment itself, the Government did not file a legally sufficient Indictment because the Indictment plainly states that the Political Committee who allegedly filed a false campaign report was aware that Foreign National 1 ***was the one who provided the contribution***.  Specifically, the Motion to Dismiss referenced the allegation in the Indictment that Mr. Benton in his discussions with Political Committee B referred to the individual who turned out to be Foreign National 1 and stated "***not that that is all he'll give, but he'll ask me***."  Defendant's Motion to Dismiss at 6; Indictment ¶ 31 (emphasis added). This allegation renders the FECA allegation legally insufficient because the Indictment itself shows

---

[2] This failure to allege a "*quid pro quo*" in the Indictment also renders the allegation defective under the First Amendment as set forth in the Motion to Dismiss.  Although the Government generally addressed the First Amendment issue, it did not differentiate or distinguish the cases cited in the Motion to Dismiss that if a person does not seek to garner favor or access with an elected official or political party, there is nothing for Congress to regulate. *See* Defendant's Motion to Dismiss at 8-9.

who the contribution was from even though the Indictment alleges Mr. Benton was a straw donor.

Therefore, the Government's Opposition does not adequately defend the Indictment in this case and it should be dismissed.

**B.** **Count Three Remains Legally Defective**

Despite the Government's arguments, Count Three remains legally defective and logically inconsistent. The Government treats the argument as a foregone conclusion – that aiding and abetting has been used in campaign conduit cases before and therefore its use in this case is proper. However, the majority of the Government's cited cases refer to the interplay between the aiding and abetting statute and the false statements statute, 18 U.S.C. §1001, not the "knowing acceptance" component of 52 U.S.C. §30122 ("no person shall knowingly accept a contribution made by one person in the name of another person."). Because the Indictment alleges that the acceptance of the contribution by the Political Committees was "unwitting," the requirement of "knowing acceptance" is not met.

Furthermore, the Government did not address the reasoning of this Court in *United States v. El-Saadi*. 549 F. Supp. 3d 148, 158 (D.D.C. 2021), in which the Court stated (admittedly in a venue challenge but the reasoning holds) that "because the acceptance of the contributions was 'unwitting,' the Indictment does not allege that the political committees committed—or that El-Saadi aided and abetted—the third type of offense under the statute, which requires 'knowing acceptance.'" *Id.*

Therefore, Count Three remains legally deficient, and should be dismissed, or at a minimum, the "unwitting knowing acceptance" aspect of the Count should be stricken if the Court does not dismiss the count.

**C.**      **The Sarbanes-Oxley Counts – Counts Four through Six – Should be Dismissed**

The Government's use of the Sarbanes-Oxley counts in this case remains problematic and requires relief.  Although the Government seeks to minimize and downplay the impact of *Yates v. United States*, 574 U.S. 528 (2015), the reasoning and rationale still apply to this case.  The Supreme Court was very clear in its reasoning: "[m]indful that in Sarbanes-Oxley, Congress trained its attention on corporate and accounting deception and coverups, we conclude that a *matching construction of § 1519 is in order*."  *Id*. at 522 (emphasis added).  The Court also noted that § 1519 was part of the "specialized provisions" of the specific Title 18 chapter that were "expressly aimed at corporate fraud and financial audits."  *Id*. at 541.

Therefore, the reasoning holds that this case should be prosecuted, if at all, under FECA rather than § 1519 to maintain a "matching construction" of the statute.  These counts are plainly add-on counts that are meant to significantly enhance Mr. Benton's potential exposure.  A violation under Section 1519 of the Sarbanes-Oxley Act has a maximum punishment of up to twenty years. 18 U.S.C. §1519. On the other hand, a violation of the campaign finance laws has a maximum imprisonment of five years. 52 U.S.C.S. §30109(d)(1)(A)(i).  *Yates* identified this danger in adhering to the rule of lenity regarding the application of § 1519.  *Yates*, 574 U.S. at 549 (stating that the Government urges a 20-year prison sentence for the expansive reading of the statute).  In addition to the potential enhanced punishment, § 1519 also waters down the *mens rea* requirement in this case, with a "knowing" standard rather than FECA's more demanding "knowingly and willfully" standard.  This difference is critical – federal election laws are very specific and have complicated and often confusing regulatory schemes.  Thus, a more significant *mens rea* is appropriate.  The Government's attempt to circumvent that through the use of §

1519, all while getting the benefit to them of a significantly higher potential punishment, is improper.  Counts Four through Six should be dismissed.

      **D.**     <u>**Counts Four Through Six Remain Multiplicitous**</u>

      The Government's arguments regarding the multiplicitous counts demonstrates the pleading flaws in the Indictment.  Mr. Benton made one entry regarding the alleged conduit contribution on October 26, 2016 in which he filled out the campaign event invitation form stating he was the contributor.  Indictment ¶ 49.  His one entry in that form has now spawned three charges.  The one entry is the unit of prosecution in this case, not each of the allegedly false reports by the various Political Committees.  Mr. Benton cannot be charged with three counts for one act, subjecting him to significantly more potential punishment.  Indeed, a case cited by the Government in support of its multiplicity argument actually demonstrates why the counts in this case are multiplicitous.  In *United States v. Diana Shipping Servs., S.A.*, 985 F.Supp.2d 719, 727-28 (E.D.Va. 2013), the Defendant madefalse entries in a log book regarding improper discharges of bilge water regarding separate and distinct sea voyages in which the vessel would be subject to boarding by potential Coast Guard investigations.  The Court stated that the "the "false entry" clause, *at a minimum,* criminalizes each separate knowingly false entry made in a record *on a separate and distinct occasion,*" and that the legislative history of §1519 supported the conclusion that "the false entry clause separately criminalizes discrete written false entries, made days, weeks, or months apart, in a historical record book used to document activities over the course of several months."  *Id*. at 730 (emphasis in original).  In this case, Mr. Benton did not engage in "discrete written false entries," rather he submitted one statement on one form that was sent to one Political Committee.  That one entry is all that can be charged, and not broken out into three counts.

In addition to subjecting Mr. Benton to more potential punishment, the multiple counts are also prejudicial because they provide the jury with a legally incorrect view of the number of counts he should be facing.  Thus, the Government's final argument on this issue is that the multiplicity should be addressed post-trial is flawed.  Gov. Opp. at 17-18.  The jury needs to be properly charged with the actual crime the Government alleges Mr. Benton committed rather than a three-part derivation of the same offense.  Having multiple additional counts such as the multiplicitous counts gives the jury more ability to convict, and thus is a source of significant prejudice to Mr. Benton.

The Government should heed the statement made by the Court in one of the cases it cited – "The United States Attorneys' Manual states, in order to "promote the fair administration of justice" and to give the "perception of justice", United States Attorneys should charge as few separate counts as reasonably necessary in an indictment to fully prosecute and to provide for a fair sentence on conviction." *United States v. Mixon*, CR 14-0631-TUC-JGZ, 2015 WL 5692569, at *2 (D. Az. June 17, 2015). That reasoning applies here and Counts 4-6 should be consolidated.

III.   __Conclusion__

Wherefore, for the reasons set forth herein and in Mr. Benton's initial Motion to Dismiss, Mr. Benton respectfully requests that the Court grant this Motion to Dismiss the Indictment or, in the alternative, that Counts Four through Six are deemed multiplicitous and thus consolidated.

Dated: September 9, 2022                    Respectfully submitted,


By: */s/ Brian W. Stolarz*
    Brian W. Stolarz (D.C. Bar No. 466160)
    Norton Rose Fulbright US LLP
    799 9th Street, NW, Suite 1000
    Washington, DC 20001-4501
    Telephone: (202) 662-0309
    Facsimile: (202) 662-4643
    Email: brian.stolarz@nortonrosefulbright.com
    *Counsel for Defendant Jesse R. Benton*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that this document filed through the CM/ECF system on September 9, 2022, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Brian W. Stolarz*
Brian W. Stolarz