UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JESSE R. BENTON<br><br>     **Defendant.** | Case No. 1:21-cr-00569-TNM |

## UNITED STATES' REPLY IN SUPPORT OF ITS MOTIONS IN LIMINE

Rather than advance legally meritorious arguments against the admission of the government's proffered evidence, Defendant Jesse Benton ("Defendant") quibbles with what the proffered evidence will show, and what inferences should be drawn from that evidence. But the government has provided a clear legal basis for (1) the admission of Defendant's prior conviction, both pursuant to Federal Rule of Evidence 404(b) and for impeachment purposes, and (2) the admission of the facts outlined in an October 2016 Telegraph article as a basis for cross examination. This Court should reject Defendant's invitation to pre-decide the facts, and permit the United States to introduce evidence as requested in its motions in *limine*.[1]

---

[1] As stated in his Opposition (*see* ECF No. 36 at 3-5), Defendant does not object to the government's motion to admit evidence that predates the inception of the conspiracy as intrinsic to the conspiracy. Defendant argues that this evidence is helpful to his motion to dismiss because it shows that the purpose of the conspiracy was to introduce Foreign National 1 to a celebrity. The government notes that it is an unremarkable proposition that a conspiracy may have multiple objectives, and the background evidence which the government intends to introduce in no way undercuts the criminality of Defendant's conduct in engaging in a conspiracy to funnel Foreign National 1's money into the 2016 United States Presidential campaign in Defendant's name. Indeed, as the Court may expect, the parties have a different interpretation and view of the facts and evidence in this case, and facts that Defendant deems exculpatory, the United States believes are inculpatory. Although Defendant once again argues the facts of the case in his motion response, the United States strongly disputes his characterization of the facts.

**B. Defendant's Conviction Is Admissible Under Federal Rule of Evidence 404(b)**

Defendant misconstrues the law under Federal Rule of Evidence 404(b). Rule 404(b) applies to "other crimes, wrongs, or acts" and allows such evidence for non-propensity purposes including "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). The other act need not have the "exact congruence" as the presently charged offense, nor need the other act be a crime.[2] *See United States v. Long*, 328 F.3d 655, 661 (D.C. Cir. 2003) ("Rule 404(b)'s terminology 'other crimes, wrongs, or acts' includes conduct that is neither criminal nor unlawful if it is relevant to a consequential fact."). Where the evidence is introduced to show intent, "[w]hat matters is that the evidence be relevant to show a pattern of operation that would suggest intent and that tends to undermine the defendant's innocent explanation." *Id.* (internal quotations omitted).

As laid out in detail in previous filings, Defendant's previous conviction arose out of a scheme to hide payments by the Ron Paul 2012 campaign to a state senator from the Federal Election Commission ("FEC"). To accomplish those criminal acts, the state senator created false invoices for "consulting services" and the senator was paid through a third party that falsely categorized the expenses as "audio visual expenses." *United States v. Benton*, 890 F.3d 697, 706 (8th Cir. 2018). As a result, the campaign filed false FEC reports. *Id.* at 707. Here, the United States alleges that Defendant (along with Doug Wead) created a scheme to hide an election

---

[2] Although Defendant wishes to call into question whether his criminal conviction in the Southern District of Iowa was a crime or bad act, ECF No. 36 at 6, the fact is that he was convicted by a jury, his conviction was affirmed by the Eighth Circuit, the Supreme Court denied certiorari, and he accepted a pardon for his conduct from President Trump. In any event, there is no requirement that the "other act" be a "bad act" for it to be admissible under Rule 404(b). *See United States v. Long*, 328 F.3d 655, 661 (D.C. Cir. 2003).

contribution by a foreign national, using a false invoice for consulting services, and to pay the contribution through Defendant, which similarly caused false reports to be filed with the FEC. Although Defendant correctly notes that his previous conviction involved expenditures by a campaign, and the present case involves a contribution to a campaign (via a political committee), the import of both schemes was the same: concealing the true purpose of the funds from the FEC, and ultimately, the public, by using a false invoice and a conduit for payment. The prior conviction is therefore "relevant to show a pattern of operation that would suggest intent and that tends to undermine the defendant's innocent explanation." *Long*, 328 F.3d at 661; *see also United States v. Emmons*, 8 F.4th 454, 473-75 (6th Cir. 2021) (finding district court properly allowed evidence under Rule 404(b) that the defendants had given corporate contributions to two state campaigns, even though the conduct was not necessarily unlawful, involved state and not federal campaigns, and involved different methods of payment).

In addition, as laid out in detail in previous filings, the fact that Defendant was previously convicted of campaign finance related criminal activity, including under one of the exact same statutes charged in the instant case, 18 U.S.C. § 1519, is probative of his knowledge and willfulness in this case. *See* Fed. R. Evid. 404(b). The Court should reject Defendant's attempts to appeal to the political nature of the pardon process as reason to exclude this highly probative and relevant evidence. *See* ECF No. 36 at 7-8. This is not a legitimate basis to exclude evidence under Rule 404(b), and any potential political biases of the prospective jurors can be sorted out in voir dire. Indeed, the fact of the pardon is not relevant to the proposed use of the prior conviction, and the government respectfully submits that the Court should exclude the fact that the conviction was pardoned.

**C. The Court Should Allow the Government to Impeach Defendant with his Prior Conviction Under Federal Rule of Evidence 609.**

Rule 609, by its terms, clearly permits the United States to use Defendant's prior conviction to impeach him should he take the stand. Fed. R. Evid. 609. In his response, Defendant again cites no law in support of his position seeking to exclude the use of his prior conviction for impeachment purposes under Rule 609. *See* ECF No. 36 at 8. Instead, Defendant asks this Court to read into the White House explanatory statement an implication that the pardon was based on actual innocence by Defendant. *Id.* But there is no basis for the Court to do so. The President or the White House clearly could have made such a statement if actual innocence was the reason for the pardon. Neither did so. This Court should therefore reject Defendant's request to stretch the statement beyond its plain language. *See Zinman v. Black & Decker*, 983 F.2d 431, 435 (2d Cir. 1993) ("We have construed Rule 609(c)(1) strictly, interpreting it to bar admission of a prior conviction only when there has been an express finding that the person convicted has been rehabilitated."); *Watkins v. Thomas*, 623 F.2d 387, 387 (5th Cir. 1980) (allowing impeachment by pardoned convictions where defendant's pardons "were not the consequence of subsequent proof of innocence" but rather defendant was pardoned "because he performed undercover activities in the service of the Federal Bureau of Narcotics and Dangerous Drugs.").

The Court should similarly reject Defendant's argument that the pardon and the accompanying statement are admissible if the United States uses the conviction for impeachment purposes. ECF No. 36 at 8-9. Defendant again offers no law to support his contention that these facts relating to the pardon are relevant or admissible, or that by allowing the United States to (properly) impeach him with his prior conviction, the Court would be opening the door to allowing him to refute or relitigate his underlying conviction. *See id.* Indeed, the law is squarely *against* this proposition: as the Supreme Court has recognized, a pardon "carries an imputation of guilt;

4

acceptance a confession of it." *Burdick v. United States*, 236 U.S. 79, 94 (1915). Moreover, "a pardon cannot erase a judgment of conviction, or its underlying legal and factual findings." *United States v. Flynn*, 507 F. Supp. 3d 116, 136 (D.D.C. 2020) (citation omitted). The fact that Defendant was pardoned "does not 'blot out guilt' in any literal or uncritical sense[.]" *Richards v. United States*, 192 F.2d 602, 607 (D.C. Cir. 1951) (citation omitted). The Court should reject Defendant's invitation to try to improperly blot out his guilt, and allow the United States to impeach him with his prior conviction should he take the stand.

### D. The Court Should Allow the United States to Use the Circumstances Described in the Telegraph Article and Confirmed by Defendant's Email On Cross-Examination

Finally, the Court should permit the United States to cross-examine Defendant and defense witness David Warrington regarding the Telegraph scheme, as described in the article and corroborated by email records seized from Defendant's email account. The United States will not seek to cross-examine Mr. Warrington regarding his representation of Defendant on the related FEC matter, but rather only regarding whether Defendant sought his advice on the Telegraph scheme as described in the article and in seized emails at the time it occurred.[3]

Cross examination regarding the Telegraph scheme serves two primary purposes: first, Defendant's creation of another false invoice, to hide the true purpose of the funds, will function to impeach any testimony by Defendant that he did not know his conduct was unlawful or that he believed that a lawyer had sanctioned this method of getting money into United States political elections. It will also undercut any claim that this was an accident or a mistake by Defendant. Second, in traveling to New York to meet with the undercover reporter, Defendant lied to his

---

[3]  A more fulsome recitation of the facts of the Telegraph circumstance have been described in multiple filings. *See* ECF No. 32 at 7-8, Ex. C; *see also* ECF No. 35 at 4-6.

Probation Officer in his prior case; as a result, the incident goes to his truthfulness, which is always an appropriate focus of cross-examination. *See* Fed. R. Evid. 608 (permitting cross-examination of specific instances of conduct if they are probative of a witness's character for untruthfulness). "Counsel…need only have a reasonable basis for asking questions on cross-examination which tend to incriminate or degrade the witness, and the general rule in such situations is that the questioner must be in possession of some facts which support a genuine belief that the witness committed the offense or the degrading act to which the question relates." *United States v. Whitmore*, 359 F.3d 609, 621–22 (D.C. Cir. 2004) (internal quotations omitted). Here, the Telegraph article plus the emails found in Defendant's email account provide a reasonable basis for the requested cross-examination. *See id.*

Defendant makes much of the fact that the video that accompanied the article is no longer online. ECF No. 36 at 9. But the United States produced a copy of the video in discovery.[4] More importantly, the United States has contemporaneous emails that corroborate the article. The presence of the video online, or the FEC's decision not to proceed against Defendant, are both immaterial to the ultimate purpose of the evidence, which is Defendant's creation of yet another false invoice for consulting services and his lack of candor with Probation. Indeed, Defendant appears to concede that the invoice was false in his filing, as he concedes that Defendant took the money from the foreign national as a "public affairs contract" because he determined that the money could not legally go into a 501(c)(4). ECF No. 36 at 10. That is precisely the point – Defendant created a false invoice to hide the true purpose of the money. As noted previously, it

---

[4] Defendant also asserts that the video and article are one sided. ECF No. 36 at 10. Defendant ostensibly knows what he told the reporter; he is free to deploy that knowledge in responding to questions on cross examination.

is immaterial under Rule 404(b) whether Defendant's actions were criminal. *See Long*, 328 F.3d at 661. The Court need not, notwithstanding Defendant's fears, engage in a mini trial whether Defendant's actions were criminal. *See id.* Defendant's creation of yet another false invoice points to lack of mistake or accident in the present case, as well as a modus operandi by Defendant. Defendant's lack of candor with Probation goes to his veracity. Both are proper grounds for cross-examination and should be admitted for those purposes.

E. Conclusion

The government respectfully requests that the Court grant its motions.

//

//

//

//

        Respectfully submitted,

        Corey R. Amundson
        Chief
        Public Integrity Section

By: */s/ Michelle L. Wasserman*
        Michelle L. Wasserman
        Special Assistant United States Attorney
        United States Attorney's Office for the
        District of Columbia

        Rebecca G. Ross
        Michelle K. Parikh
        Trial Attorneys
        Public Integrity Section
        Criminal Division
        U.S. Department of Justice

## **CERTIFICATE OF SERVICE**

      I hereby certify that this motion was filed by ECF on September 9, 2022, and thereby served on defense counsel.

                                              */s/ Michelle L. Wasserman*
                                              Michelle L. Wasserman
                                              Special Assistant United States Attorney