UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 1:21-cr-00569-TNM** |
| **JESSE R. BENTON** | |
| **Defendant.** | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR IN THE ALTERNATIVE MOTION FOR A NEW TRIAL**

After hearing two days of testimony and receiving dozens of exhibits, the jury found the Defendant, Jesse R. Benton, guilty on all counts of the Indictment. The Defendant now asks this Court to overturn the jury's verdict, arguing the evidence was insufficient. In the alternative, the Defendant asks this Court to order a new trial due to purported errors this Court made in three evidentiary rulings. These contentions are meritless. The Defendant's Motion for Judgment of Acquittal or in the Alternative Motion for a New Trial, ECF No. 64, should be denied and this case should proceed to sentencing as scheduled.

## BACKGROUND

On September 9, 2021, a federal grand jury sitting in the District of Columbia returned an indictment charging the Defendant and Roy Douglas "Doug" Wead ("Wead")[1] with one count each of 18 U.S.C. § 371 (conspiracy) ("Count 1"); 52 U.S.C. § 30121 (electoral contributions by foreign nationals) ("Count 2"); and 52 U.S.C. § 30122 (electoral contributions in the name of another) ("Count 3"); and three counts each of 18 U.S.C. § 1519 (causing false records) ("Counts

---

[1]     Following the Indictment, Wead passed away. On December 23, 2021, the Government filed a Motion to Abate Prosecution as to Wead only. The Court granted that motion the same day. As such, the trial proceeded as to the Defendant only.

4-6").  As alleged in the Indictment, these charges arise out of a conspiracy involving the Defendant and Wead to solicit $100,000 from Roman Vasilenko ("Vasilenko"), a Russian foreign national, and to use those funds to make an unreported foreign national contribution to Trump Victory, a joint fundraising committee that supported Donald J. Trump's 2016 presidential campaign.

Trial on this matter began on November 9, 2022.  On November 14, 2022, the Defendant moved for a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure ("Rule 29") and this Court heard argument from both the Defendant and the Government.  Trial Tr. 11/14/2022 AM, 130-139.  After argument, this Court denied the Defendant's Motion for a Judgment of Acquittal under Rule 29.  Trial Tr. 11/14/2022 AM, 139-143.  On November 17, 2022, the jury returned a verdict finding the Defendant guilty of all counts in the Indictment.  ECF No. 61.  On December 1, 2022, the Defendant filed the present motion.  ECF No. 64.

## I.  DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL

### a.  STANDARD OF REVIEW

Federal Rule of Criminal Procedure 29(a) provides that at the close of the Government's evidence, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  Rule 29(c) allows a defendant to renew a motion for judgment of acquittal within 14 days of a guilty verdict.  "In ruling on a motion for a judgment of acquittal, the trial court must view the evidence in the light most favorable to the Government giving full play to the right of the jury to determine credibility, weigh the evidence and draw justifiable inferences of fact."  *United States v. Treadwell*, 760 F.2d 327, 333 (D.C. Cir. 1985) (citation and internal quotation marks omitted); *see also United States v. Kayode*, 254 F.3d 204, 212 (D.C. Cir. 2001) (when considering a Rule 29 motion, the court must consider "the evidence in the light most

favorable to the Government and determin[e] whether, so read, it is sufficient to permit a reasonable trier of fact to find all of the essential elements of the crime beyond a reasonable doubt" (citation and internal quotation marks omitted)).  "When a reasonable mind might fairly have a reasonable doubt of guilt or might fairly have none, the decision is for the jurors to make." *United States v. Herron*, 567 F.2d 510, 514 (D.C. Cir. 1977); *see also United States v. Davis*, 763 F. Supp. 645, 648 (D.D.C. 1991) ("Sentencing courts should therefore be wary of rejecting a jury's assessment of witness credibility."); *United States v. Khanu*, 675 F. Supp. 2d 55, 60 (D.D.C. 2009) ("This stringent standard contemplates that the ultimate decision of guilt or innocence should be left to the jury, and that it is the province of the jury to credit certain testimony and reject other testimony.").

### b.  ARGUMENT

The Defendant seeks to overturn the jury's verdicts for the offenses in this case, arguing once again that a Motion for a Judgment of Acquittal is appropriate under Rule 29 because "the Government failed to present sufficient evidence to sustain a conviction for the offenses in this case, and the evidence does not rest on an adequate foundation."  ECF No. 64 at 2.  He further seeks to overturn the jury's verdicts "based on the lack of evidence on the advice of counsel defense and lack of evidence of [the Defendant's] willfulness in this case." *Id*.  This Court has already rejected the Defendant's arguments, finding the Government "put on sufficient evidence that [Vasilenko] intended to influence the election[,]" "it was "reasonable to believe that [Vasilenko] wanted a photo with a future president and not with a loser in the presidential race," and that the Defendant "was acting willfully. . . within the meanings of the statute and that he was himself seeking to influence an election for federal office through the soliciting this contribution of money."  Trial Tr. 1/14/2022 AM, 139-43.  This Court's findings should not be upended.  The

Defendant's arguments continue to be clearly contradicted by the trial record and this Court should (once again) deny the Defendant's Motion for a Judgment of Acquittal.

> i. **THE GOVERNMENT PROVED BEYOND A REASONABLE DOUBT AT TRIAL THAT THE CONTRIBUTION AT ISSUE WAS MADE FOR THE PURPOSE OF INFLUENCING A FEDERAL ELECTION**

First, the Defendant asserts that "the state of the evidence presented at trial in this case did not sufficiently prove a critical element of the offenses in this case – that foreign national Roman Vasilenko's $25,000 contribution was intended to influence a federal election." ECF No. 64 at 2. The Defendant argues that because this "critical element" is "not supported by the evidence and did not rise to a level that supported a finding of guilt beyond a reasonable doubt" that a judgment of acquittal "is required not just on the contribution and conspiracy counts but counts 4-6 as well[.]" ECF No. 64 at 5.

As an initial matter, the Defendant provides no legal precedent to support his blanket assertion that the Government was required to prove a contribution as to all Counts of the Indictment. Indeed, the Defendant provides no authority for his unsupported assertion that Vasilenko's intent somehow impacts Count 1 and Counts 4-6. The word "contribution" does not appear anywhere in the statutory language for Count 1, 18 U.S.C. § 371, conspiracy. *See also Treadwell*, 760 F.2d at 333 (asserting a conspiracy conviction requires "(1) two or more persons formed an agreement either to commit an offense against or defraud the United States; (2) the defendant knowingly participated in the conspiracy with the intent to commit at least one of the offenses charged or to defraud the United States; and (3) at least one overt act was committed in furtherance of the common scheme."); *Salinas v. United States*, 522 U.S. 52, 65 (1997) ("It is elementary that a conspiracy may exist and be punished whether or not the substantive crime ensues, for the conspiracy is a distinct evil, dangerous to the public, and so punishable in itself.")

Nor does the word "contribution" appear anywhere in the statutory language for Counts 4-6, 18 U.S.C. § 1519, causing false entries. *See also Yates v. United States*, 574 U.S. 528, 544 (2015) (recognizing that Section 1519 applies to anyone who "alters, destroys, mutilates, conceals, covers up, *falsifies*, or *makes a false entry* in any record, document, or tangible object with the requisite obstructive intent") (emphasis in original) (internal quotations omitted). In short, neither Count 1 nor Counts 4-6 require the United States to prove that a contribution was made. As such, the Defendant's argument that this Court should enter a judgment of acquittal for Counts 1 and 4-6 should be denied. [2]

The Defendant seems to rely on the language in the Indictment in *United States v. El Saadi*, 549 F. Supp. 3d, 153 (D.D.C. 2021), to somehow suggest that the Government has not met its burden of proof in this case. ECF No. 64 at 2-3. This argument compares apples to oranges and is not persuasive. This Court previously rejected all the Defendant's arguments that the Indictment in this case was insufficient. *See* Hearing Tr. 11/23/2022, 33-44. The Defendant's sufficiency of the evidence arguments have nothing to do with the Government's sufficiently pled Indictment and the Defendant's reliance on *El Saadi* is misplaced and irrelevant.

Moreover, the Defendant's Motion for Judgment of Acquittal minimizes, ignores, and miscomprehends the evidence presented at trial. [3] The fact that when "Mr. Vasilenko was first

---

[2]     With regards to Counts 1 and 4-6, the Defendant's only arguments are his unsupported contention that Vasilenko's intent somehow impacts the jury's conviction, which is addressed above, and that the Defendant lacked willfulness because of the advice he received from his counsel, which is also addressed herein. As such, the Government will not separately address the abundance of evidence presented at trial that proved beyond a reasonable doubt that the Defendant committed these offenses. Indeed, following the Rule 29 arguments at the close of the Government's case-in-chief, the Court noted, "I don't think there really was much argument as to the remaining counts." Trial Tr. 11/14/2022 AM, 142.

[3]     Under the case law and the plain language of the statutes, it is unclear whether Vasilenko, the Defendant, or both had to have the purpose of influencing the election under 52 U.S.C. § 30121

approached regarding his visit to the United States, ten celebrities from entertainment, sports, and politics were presented," does not, as the Defendant argues, demonstrate "that the 2016 presidential election was not the purpose of Vasilenko's visit to the United States." Purposes can change and there can be more than one purpose. The evidence presented at trial proved beyond a reasonable doubt that Vasilenko had the purpose to influence the 2016 presidential election when he wired $100,000 to the Defendant.

The jury saw evidence that Vasilenko was eager to meet then-candidate Donald Trump. After Wead first proposed that Vasilenko could meet Donald Trump on September 11, 2016, GX 007, speaking through an interpreter, Olga Kovalova ("Kovalova"), Vasilenko repeatedly followed up, emphasizing his excitement. *See* GX 008, 013 (emails from Kovalova to Wead asking about meeting Donald Trump). In fact, the jury saw evidence that Vasilenko was so eager to meet Donald Trump, he was willing to spend $100,000—separate and apart from the $100,000 he had previously wired Wead—to do so. *See e.g.*, GX 19 (wire reflecting $49,000 from Vasilenko to Titan Strategies on September 19, 2016), 13 (wire reflecting $51,000 from Vasilenko to Titan Strategies on September 20, 2016), 24 (foreign bank records from Bank Winter), 63 (bank statements for Titan Strategies), Trial Tr. 11/10/2022 PM, 25-36 (Agent Phan testimony on money wired from Vasilenko to Titan Strategies).

The evidence presented at trial established that Vasilenko was eager to meet and have his photograph taken with Donald Trump because of the status it would bring him. The jury heard testimony that Vasilenko had a "very active" Instagram account with posts related to his success

---

and 52 U.S.C. § 30122 to meet the statutory definition. While the Government does not concede that it had to prove that Vasilenko had the purpose of influencing the election, the Government has consistently argued and presented more than sufficient evidence at trial that both Vasilenko and the Defendant had the purpose of influencing the 2016 presidential election.

in business, *see* Trial Tr. 11/10/2022 PM, 86-87, and Vasilenko appeared on at least one magazine cover advertising his company, "Life is Good," *see id.* at 88; *see also* DEX 6.  A picture with an American President would help Vasilenko's status and business more than a picture with a presidential candidate who lost the election.

The evidence at trial further proved beyond a reasonable doubt that Vasilenko knew the $100,000 he wired to the Defendant would be used for a political contribution.[4]  Speaking through Kovalova, Vasilenko repeatedly expressed his willingness to pay the $100,000 "donation" he believed was necessary to meet Donald Trump.  GX 013 (September 14, 2016, e-mail from Kovalova to Wead stating, "I've talked to Rom[a]n.  He is happy and ready to wire **his donation**… [Vasilenko] asks for info where to send **his donation**") (emphasis added).  Additionally, Vasilenko physically attended the event held by Trump Victory at the Ritz Carlton in Philadelphia, Pennsylvania.  The jury heard testimony that it was obvious this event was a political fundraiser intended to raise money for Donald Trump's presidential campaign.  Sarah Robinson Burnett, the Republican National Committee Midwest Regional Finance Director in 2016, testified:

> Whenever people check in at the event at the registration table, there are people there who are collecting and soliciting contributions. Oftentimes in the remarks section of the reception, there would be reference to how much the event raised or how successful the event was in terms of raising money for the organization. And people would, you know, thank the attendees for their support.

Trial Tr. 11/10/2022 AM, 47.  The jury also saw photos and video from this event.  In those photos, GX 56, and videos, GX 12A-C, the jury saw just how close Vasilenko was to Donald Trump.

---

[4] As previously briefed, courts interpreting the relevant provision of FECA have rejected arguments that it requires an inquiry into the subjective state of mind of the individual giving the contribution.  *See* ECF No. 47 at 12-14.  The evidence presented in this case clearly meets the objective standard in examining whether the statutory definition of "contribution" has been satisfied.  Even so, the Government maintains that the evidence at trial also established beyond a reasonable doubt that Vasilenko had the purpose to influence the 2016 presidential election.

From the videos, the jury also heard that Donald Trump discussed his campaign, spending money, and his opponent.  GX 12A-C.

Furthermore, the jury learned that Vasilenko was an educated businessman with experience in politics who would have understood the purpose of his $100,000 "donation."  Vasilenko claimed to speak both English and Russian,[5] had an extensive background in economics and business, and was highly educated.  *See* GX 059 at 2 (Department of State visa application records listing Vasilenko's primary occupation as business and part of his education history), GX 024 at 8-11 (Vasilenko's resume).  Vasilenko's understanding that his funds would be used to make a contribution was further underscored by the evidence presented to the jury regarding Vasilenko's involvement in politics.  *See* GX 068 (Kovalova informing Wead that Vasilenko "will participate in the elections to the Russian Parliament on the 18"), GX 013 (Kovalova writing Wead, "[Vasilenko] is leaving for his election trip."), GX 086 ( email written on behalf of Doug asserting, "[Wead] has a Russian running for the Duma coming to the US who would like to meet a US senator"), Trial Tr. 11/29/2016 AM, 102 (**Q:** Focusing on September and October of 2016, through the course of your investigation, did you learn what Mr. Vasilenko was doing in Russia during this timeframe? **A.** Yes, I did. **Q.** What is that? **A.** One of the things he was doing during that timeframe was that he was running for a seat in the Russian parliament.).

The evidence presented at trial also proved beyond a reasonable doubt that Vasilenko was following the 2016 United States presidential election and understood the impact his photograph with the next American President would have on his status.  Once Vasilenko received his official photograph, he posted it to his Instagram account.  Trial Tr. 11/10/2022 PM, 116.  Shortly after

---

[5] Kovalova, a Russian translator, also accompanied Vasilenko throughout his trip to the United States.  *See e.g.* GX 56 (photos from the fundraising event), GX 44 at 3 (Kovalova's official photograph with Donald Trump).

Donald Trump won the election, Vasilenko again posted his official photograph with Donald Trump, but this time with the caption, "Two Presidents" and "Roman Vasilenko versus Donald Trump" with his company's logo on the image. DEX 4-4; *see also* Trial Tr. 11/10/2022 PM, 117-18. Based on this evidence alone, the jury could draw the reasonable inference that Vasilenko recognized his photograph with an American President could bolster his political prospects, his status as an influencer, and his business. In fact, the jury learned this is exactly what happened. In an email from Kovalova to Wead, sent shortly after the election, Kovalova wrote, "Due to the picture with Trump, [Vasilenko] is considered now in Russia to be the almost the only one who personally met and knows Trump. [Vasilenko] has been invited to speak in a special programme dedicated to Trump on the First Russian Channel, the main, the most influence TV Channel in Russia[.]" GX 076.

As even the Defendant recognized, Vasilenko "sought to enhance his image." ECF No. 64 at 5. There was no better way for Vasilenko to enhance his image than to make a political contribution and help Donald Trump win the election so that he would have a photograph with the President of the United States—the person most capable of "enhancing his image." As this Court aptly summarized, Vasilenko "wanted to get bang for his buck; and the biggest bang for his buck is being able to influence the election so that he has this photo, this opportunity with a future president, not with the person who's not going to be president." Trial Tr. 11/14/2022 AM at 143. Based on the foregoing facts, there is no basis to disturb the Defendant's conviction, which is amply supported by the record.

ii. **THE GOVERNMENT PROVED BEYOND A REASONABLE DOUBT AT TRIAL THAT THE DEFENDANT ACTED WITH THE REQUISITE MENS REA**

The Defendant's additional argument that the advice he received from David Warrington, a friend who represented him in a legal capacity at various times, somehow prevented the jury from being able to conclude the Defendant acted willfully is also unavailing. Importantly, for an advice of counsel defense to apply, the Defendant must introduce evidence showing: "(1) 'he relied in good faith on the counsel's advice that his course of conduct was legal,' and (2) 'he made full disclosure of all material facts to his attorney before receiving the advice at issue.'" *United States v. Gray-Burriss*, 920 F.3d 61, 66 (D.C. Cir. 2019) (quoting *United States v. DeFries*, 129 F.3d 1293, 1308 (D.C. Cir. 1997); *see also United States v. West*, 392 F.3d 450, 457 (D.C. Cir. 2004) ("A defendant may avail himself of an advice of counsel defense only where he makes a complete disclosure to counsel, seeks advice as to the legality of the contemplated action, is advised that the action is legal, and relies on that advice in good faith.").

The jury learned that the Defendant <u>did not</u> make a "full disclosure of all material facts to his attorney." *Cf. Gray-Burriss*, 920 F.3d at 66. As the jury learned, the Defendant sent Mr. Warrington an email in which he asked Mr. Warrington if he could buy a ticket to a fundraising event and gift the ticket to a Russian. *See* DEX 13; *see also* Trial Tr. 11/14/2022 PM, 116-17. Mr. Warrington testified that he also spoke to the Defendant on the phone and that during that telephone conversation, the Defendant again asked the question whether he could gift a ticket to a political event to a Russian. Trial Tr. 11/14/2022 PM, 118. Importantly, Mr. Warrington never testified, and there was no evidence presented at trial to indicate, that the Defendant told Mr. Warrington the most consequential fact—that Defendant was buying the ticket using Mr. Vasilenko's money (and planned to lie about it). *See e.g.*, GX 19 (wire reflecting $49,000 from Vasilenko to Titan

Strategies on September 19, 2016), 13 (wire reflecting $51,000 from Vasilenko to Titan Strategies on September 20, 2016), 24 (foreign bank records from Bank Winter), 63 (bank statements for Titan Strategies), Trial Tr. 11/10/2022 PM, 25-36 (Agent Phan testimony on money wired from Vasilenko to Titan Strategies).   Given that the Defendant failed to disclose all the relevant information to Mr. Warrington, the jury was well within its rights to reject Defendant's affirmative defense.

Even so, the jury heard an abundance of evidence of the Defendant's knowledge and willfulness.   First, the jury learned that the Defendant was an experienced political operative with an extensive background advising political candidates, managing campaigns, and fundraising for political candidates and causes.   *See e.g.*, GX 1, 78, 87, 88, 101, Trial Tr. 11/10/2022 AM, 87-89, 101-102.   Second, the jury heard testimony that it is widely known amongst those who have experience in political fundraising and have worked as campaign managers that foreign contributions and conduit contributions are prohibited. Trial Tr. 11/10/2022 AM, 27-28.   Third, the jury saw evidence that the Defendant had previously been convicted of a FECA crime, the underlying facts of which involved a similar *modus operandi*.   GX 30.

Furthermore, the jury saw evidence of the effort the Defendant took to conceal his actions, from which the jury could rationally draw the inference that the Defendant knew his actions were illegal.   For example, the jury saw evidence that the Defendant misled the Republican National Committee about where Vasilenko was from, asserting he had a "friend who spends most of his time in the Caribbean[,]" GX 9, when the Defendant in fact knew Vasilenko was from Russia, *see* DEX 13, GX 22 at 2.   As another example, the jury saw evidence that the Defendant withheld Vasilenko's personal identifying information from the RNC and Trump Victory, despite being asked for it numerous times.   *See e.g.*, GX 25, 27, 203.   Additionally, the Government presented

evidence that the Defendant tried to withhold the contribution he promised to Trump Victory for the two tickets to the fundraising event. *See* GX 27, 36. And, most consequentially, when the Defendant ultimately made the contribution, he used his own name on the contribution form, when in fact the money came from Vasilenko—a prohibited source. GX 39, 58, 304-306. These lies and concealment are significant as consciousness of guilt.

The evidence presented at trial allowed the jury to reasonably infer that the Defendant's email to Mr. Warrington and the follow-up call were deficient and were just another attempt by the Defendant to cover his tracks. As an experienced political operative, the Defendant knew the law and willfully violated it for his own personal greed and gain, which included helping his candidate of choice win the election. Considered in the light most favorable to the Government, the evidence was more than sufficient to permit the jury to find all the essential elements of the charged crimes beyond a reasonable doubt. *See Kayode*, 254 F.3d at 212. The Court should deny Defendant's motion under Rule 29.

## II. DEFENDANT'S MOTION FOR A NEW TRIAL

### a. STANDARD OF REVIEW

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed.R.Crim.P. 33(a). "The Rule does not define 'interests of justice' and the courts have had little success in trying to generalize its meaning." *United States v. Cabrera*, 734 F.Supp.2d 66, 87 (D.D.C. 2010) (*quoting United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir.1989)). Nonetheless, the D.C. Circuit has instructed that "granting a new trial motion is warranted only in those limited circumstances where a serious miscarriage of justice may have occurred." *United States v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2014).

12

A defendant bears a heavy burden under Fed.R.Crim.P. 33(a), and trial courts enjoy broad discretion in ruling on motions for a new trial. *See id.* "[T]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand . . . . This power should be exercised with caution, and is invoked only in those exceptional cases in which the evidence weighs heavily against the verdict." *United States v. Howard,* 245 F.Supp.2d 24, 30 (D.D.C. 2003) (*quoting United States v. Edmonds,* 765 F.Supp. 1112, 1118 (D.D.C. 1991)). "[A] new trial should be granted only if the defendant has shown that the error was substantial, not harmless, and that the error affected the defendant's substantial rights." *United States v. Williams,* 825 F.Supp.2d 128, 132 (D.D.C. 2011) (internal quotations omitted). "An error affecting 'substantial rights' must have a 'substantial and injurious effect or influence in determining the . . . verdict.'" *United States v. Lawson,* 494 F.3d 1046, 1053 (D.C. Cir. 2007) (*quoting United States v. Dominguez Benitez,* 542 U.S. 74, 81 (2004)).

### b.  ARGUMENT

The Defendant argues that he is entitled to a new trial based on this Court's September 23, 2022, ruling that the Defendant's prior conviction in the Southern District of Iowa for campaign finance violations was admissible pursuant to Federal Rule of Evidence 404(b).  ECF No. 64 at 5, 7-10.  The Defendant further argues that the Government's references to the prior convictions were improper, further entitling him to a new trial.  *Id.*  Finally, Defendant asks this Court to revisit its *in limine* rulings allowing the Government to cross-examine Defendant regarding the Telegraph newspaper article, which never came in at trial, and excluding Wead's self-serving false statements to law enforcement.  ECF No. 5-6; 10-13.  Because this Court properly admitted the Defendant's prior conviction under Rule 404(b), and because the Government's references to the prior convictions at trial stayed within the confines of this Court's 404(b) ruling, the Defendant's Motion

for a New Trial on these grounds fails.  Because this Court's rulings regarding the Telegraph and

Wead's statements were correct, and Defendant chose not to testify and present his side of the

story at trial, Defendant's motion on these grounds fails as well.

> i. **THE COURT PROPERLY ADMITTED EVIDENCE OF THE DEFENDANT'S PRIOR CONVICTION UNDER RULE 404(B) AS EVIDENCE OF THE DEFENDANT'S KNOWLEDGE, WILLFULLNESS AND *MODUS OPERANDI***

In its Omnibus Motion *in Limine* To Admit Evidence, the Government sought to admit the

Defendant's prior conviction pursuant to Rule 404(b) as "relevant to his knowledge, willfulness,

intent, *modus operandi,* and lack of mistake or accident."  ECF No. 32 at 1.  At oral argument on

September 23, 2022, the Government argued, consistent with its written motion, that the prior

conviction was admissible both as evidence that the Defendant had the requisite mental state in

this case, and that it was evidence of the Defendant's *modus operandi,* because the Defendant

"resort[s] to false invoices to hide from the FEC the true purpose of campaign money."  Hearing

Tr. 09/23/2022, 24.   This Court agreed, finding that "the fact that the Defendant was convicted

for causing false records to be produced in the past is probative as to whether his conduct with the

foreign national here was willful" and also "probably shows a certain *modus operandi* in the use

of false invoices in both cases."  *Id.* at 49.

This Court did not err in its finding, and the Defendant cannot now meet his high burden

pursuant to Rule 33 to demonstrate that he is entitled to a new trial based on this Court's Rule

404(b) ruling.  As the D.C. Circuit has repeatedly observed, "Rule 404(b) is a rule of inclusion

rather than exclusion."  *United States v. Brown*, 597 F.3d 399, 404 (D.C. Cir. 2010) (internal

quotation marks and citation omitted).  Rule 404(b) permits admission of prior bad acts for many

reasons, including proof of motive, intent, knowledge, identity, and absence of mistake, while

prohibiting the admission of prior bad acts for the purpose of proving that a defendant's actions

were made in conformity with his character.  *United States v. Douglas*, 482 F.3d 591, 596 (D.C. Cir. 2007).  The D.C. Circuit has termed the introduction of other crimes evidence to establish a *modus operandi* "virtually a textbook case for the application of Rule 404(b)".  *United States v. Pindell*, 336 F.3d 1049, 1058 (D.C. Cir. 2003).  In fact, Rule 404(b) does not "prohibit character evidence generally, only that which lacks any purpose but proving character."  *Douglas*, 482 F.3d at 596 (quoting *United States v. Bowie*, 232 F.3d 923, 930 (D.C. Cir. 2000)).

As this court ruled, the proffered evidence was probative of the Defendant's knowledge, intent, willfulness, and absence of mistake or accident, as well as the Defendant's *modus operandi*. As reflected in Government's Exhibit 30, the agreed-upon stipulation between the parties that was presented to the jury, the Defendant had previously been convicted of campaign finance violations involving, among other things, the use of false invoices.  As more fully laid out in the Government's Motion *in Limine*, this evidence was probative both of the Defendant's knowledge of the law, and therefore, his willful conduct in violating that law, and of his *modus operandi*, because he employed the use of false invoices to paper over his crimes.  The Court did not err in permitting the jury to consider this evidence for certain specified purposes.  Moreover, the Court appropriately gave the jury a well-crafted limiting instruction both at the time that Government's Exhibit 30 was received into evidence and at the close of the case outlining the permissible uses the jury could make of the evidence and admonished the jury that the evidence could not be considered as establishing any propensity on the part of the Defendant to commit crimes.  The Defendant's Motion for a New Trial based on the Court's Rule 404(b) ruling should be denied.

ii. **THE GOVERNMENT LIMITED ITS REFERENCES TO THE DEFENDANT'S PRIOR CONVICTION CONSISTENT WITH THE COURT'S RULE 404(b) RULING.**

At trial, consistent with the Court's ruling, the parties jointly submitted a proposed instruction to the Court based on Criminal Jury Instructions for the District of Columbia Rule 2.321 that covered willfulness, knowledge, lack of mistake or accident, and *modus operandi* to reflect the Court's September 23, 2022, ruling. *See* Trial Tr. 11/14/2022 PM, 52-53. Defense counsel acknowledged that the proposed instruction was appropriate and consistent with the Court's ruling. *See id.* at 52 ("I've read [the proposed 2.321 instruction] and it looks consistent with the Rule 404(b) ruling that you have made in this case."). Without objection and at the request of both parties, the Court gave the following instruction to the jury at trial:

> You have heard evidence that Mr. Benton was previously convicted of conspiracy to commit against the United States, causing false records, causing false campaign expenditure reports, and false statements seen as detailed in Government's Exhibit 30. It is up to you to decide whether to accept that evidence.

> If you find that Mr. Benton committed the offenses as detailed in Government's Exhibit 30, you may use this evidence only for the limited purposes of deciding whether, one, the circumstances of the other crimes or charged offenses are so similar that it is likely that the person who committed the offenses as detailed in Government's Exhibit 30 also committed to the offenses as charged in the indictment, or the government has proved beyond a reasonable doubt that Mr. Benton acted knowingly and on purpose and willfully and not by mistake or accident or in good faith.

> If you conclude that the offenses described in Government's Exhibit 30 are so similar to the charged offense or offenses that it is likely that the same person committed both of them, you may use this evidence in determining whether the government has proved beyond a reasonable doubt that Mr. Benton is the same person who committed the crimes as charged in the indictment.

> If you find that Mr. Benton committed the offenses as detailed in Government's Exhibit 30, you may also use this evidence for the limited purpose of deciding and determining whether the government has proved beyond a reasonable doubt that Mr. Benton acted knowingly and on purpose and willfully and not by mistake or accident and in good faith.

You may not use this evidence for any other purpose.  Mr. Benton is only on trial for the crimes charged.

Mr. Benton is not charged in this case with any offenses relating to the offenses detailed in Government's Exhibit 30, and you may not use this evidence to conclude that he has a bad character or that Mr. Benton has a criminal personality.  The law does not allow you to convict Mr. Benton simply because you believe he may have done bad things not specifically charged as crimes in this case.

During closing arguments, the Government addressed the Defendant's prior conviction in opening closing and in rebuttal.  In both jury addresses, the Government argued that the jury could consider the prior conviction consistent with this Court's instruction regarding the limited permissible purpose of the evidence, and explicitly referenced this Court's instructions on the issue in rebuttal.  *See* Trial Tr. 11/15/2022,  33-34 ("First, you heard – and what was admitted for a very limited purpose, and that included considering the Defendant's knowledge and willfulness – that in May of 2016, the Defendant was convicted of campaigns [sic] under the Federal Election Campaign Act, the same act under which he's charged here, but a different section, and that he was also convicted of crimes of causing false records, the very same crime he's charged with here. Now, again, you can only consider this for the limited purpose of knowledge and willfulness.  And one of the purposes as well, *modus operandi*."); *id.* at 82 ("You know he likes to cover his tracks. And you heard in the stipulation between the parties, Government's Exhibit 30, that Mr. Benton in 2016 was indicted of [sic] another case.  And you heard in that stipulation that as a part of that conspiracy that he was charged with, the manner and means, that the conspiracy would and did use two intermediary companies to conceal payments to a state senator; and the conspirators would and did conceal the payments to the state senator by a political committee by using false invoices. Now, ladies and gentlemen, the judge instructed you yesterday that you can consider his prior conviction for a limited purpose.  One of them is for willfulness.  That's what Ms. Wasserman

discussed with you.  And the other one is for MO.  Does this track?  Does it seem like the kind of thing that Mr. Benton is doing?  Does this help you identify [] [h]is MO?  If you see a pattern, you can consider it as indicative of his guilt.").  Apart from the two references quoted here, the Government did not reference the Defendant's prior conviction.  The Defendant did not object to either mention of the prior conviction, nor did he object at any other time during the Government's closing arguments.

The Defendant now takes issue with the Government's arguments concerning the jury's permissible use of the prior conviction to establish *modus operandi*.  Puzzlingly, the Defendant argues in his motion that "[t]hese references went beyond the permissible uses of the prior conviction under Rule 404(b) as the instruction did not reference use of the evidence to establish *modus operandi* or a pattern, but rather the limited purpose of identifying whether Mr. Benton was the person who committed the offenses, and deciding whether Mr. Benton acted knowingly and on purpose and willfully, and not by mistake or accident or in good faith."  ECF No. 64 at 8-9.  As an initial matter, the Defendant failed to object to any aspect of the government's closing, making the closing arguments reviewable only for plain error.  *See United States v. Rawlings*, 522 F.3d 403, 410-11 (D.C. Cir. 2008).  Second, the Defendant was on notice that the Government intended to argue that the Defendant's prior conviction could be considered evidence of his *modus operandi*: the Government argued for permission to make such use of the evidence at trial in its Motion *in Limine*; this Court explicitly ruled that the prior conviction was admissible at trial as evidence of the Defendant's *modus operandi*; and the Government directly referenced that ruling at the charging conference, without any objection or concern raised by the Defendant.  *See* Trial Tr. 11/14/2022 PM, at 53 ("And we combined [the two versions of Criminal Jury Instructions for DC Instruction 2.321] because our understanding of Your Honor's ruling is that this evidence comes

in both to go to Mr. Benton's willfulness, knowledge, lack of mistake or accident, and also to show some *modus operandi*."). Moreover, the comments to Criminal Jury Instructions for D.C. Instruction 2.321, on which the joint proposed jury instruction provided to the jury was based verbatim, state that "Part A [which was incorporated into the jury instruction given in this case] should be given when other crimes evidence is introduced to establish a factor, e.g., motive, common scheme or plan, *or modus operandi*, that in turn has a bearing on an element, such as identity." (emphasis added).

The Government made no error, let alone plain error, in its closing arguments. The Government made two references to the Defendant's prior conviction: the first focused on the Defendant's willfulness, knowledge, and lack of mistake or accident, and the second focused on the Defendant's *modus operandi*, and how that *modus operandi* was probative of the Defendant's identity. The Government's arguments were consistent with this Court's prior rulings, and explicitly referenced the limiting instructions, which the Court gave twice—first immediately after the introduction of the prior conviction by stipulation, Trial Tr. 11/14/2022 AM, 127-29, and again at the close of all evidence, Trial Tr. 11/15/2022, 33-34, 82—to cabin and define the permissible uses of the prior conviction. At no time did the Government suggest that the jury could consider the Defendant's prior conviction as evidence of the Defendant's propensity to commit crimes or his criminal nature. Moreover, there is no reason to believe that the jury did not follow this Court's instruction regarding the prior conviction, which specifically admonished the jury that they could not consider the evidence for propensity purposes. *See United States v. Straker*, 800 F.3d 570, 593 (D.C. Cir. 2015) ("Juries are presumed to follow instructions that caution them to draw only permissible inferences from Rule 404(b) evidence.") (citation omitted). The cases cite by the Defendant, in which (1) the government argued prior bad acts evidence as propensity evidence,

(2) the government failed to demonstrate for what non-propensity purpose the other crimes evidence was being offered; or which (3) deal with the entirely separate issue of minimizing risk of prejudice in a case involving multiple, similar joined counts, are clearly and easily distinguishable. *See United States v. McGill*, 815 F.3d 846, 878-887 (D.C. Cir. 2016) (finding that certain other crimes evidence should not have been admitted by District Court because it served only as propensity evidence, but finding in any event that the improperly admitted evidence constituted harmless error); *United States v. Brown*, 765 F.3d 278, 292-93 (3d Cir. 2014) (finding that district court had erred in admitting prior bad acts evidence under Rule 404(b) because government "has completely failed to explain how the fact that [the defendant] used a straw man in 2005 to *purchase* firearms tends to prove that he knowingly *possessed* the gun under the driver's seat of the Impala six years later.  These are two entirely distinct acts, and participation in one has no relationship to the other."); *United States v. Richards*, 719 F.3d 746, 764-65 (7th Cir. 2013) (government repeatedly referred to defendant as a "drug dealer" or "drug trafficker" with the other crimes evidence as "its centerpiece"; government "simply used the [Rule 404(b) evidence] to label [the defendant] a cocaine trafficker and rested its case there."); *United States v. Rich,* 343 F. Supp. 2d 411, 414 (E.D. Pa. 2004) (examining closing argument remarks not for propensity but for whether they encouraged cumulation of evidence where counts charging separate but similar conduct had been joined).  On the facts presented in this case, the Defendant cannot meet his heavy burden for a new trial, and the Government respectfully submits that the Court should deny the Defendant's motion.

### iii. THE COURT PROPERLY RULED ON THE TELEGRAPH EVIDENCE, AND DEFENDANT WAIVED ANY CLAIM OTHERWISE

The parties briefed, in detail, the Telegraph evidence before trial, and the Court correctly ruled that if the Defendant took the stand the Government could use that evidence to cross-examine the Defendant, "subject to other evidentiary rules about foundation and authentication." Hearing Tr. 9/23/2022, 58. In his Rule 33 motion, Defendant re-raises many of the same arguments already rejected by this Court. As the Government has previously noted, the article was corroborated by email exchanges seized from the Defendant's email account. *Id.* at 58-59. Moreover, as the Government argued, and as the Court correctly held, the facts about which the Government wished to inquire were properly admissible on cross-examination under Fed. R. Evid. 404(b) as probative of the Defendant's knowledge, *modus operandi*, and lack of mistake. *Id.*; *see also United States v. Brawner*, 32 F.3d 602, 604 (D.C. Cir. 1994) ("Rule 404(b) permits evidence of prior bad acts to be introduced for other purposes. For example, such evidence may be used in an attempt to impeach the accused as a witness.") (internal quotations omitted); *United States v. McGill*, 815 F.3d 846, 884 (D.C. Cir. 2016) ("'[O]ther crimes' evidence may properly be introduced to impeach a witness.") (*quoting Brawner*, 32 F.3d at 604); *Jenkins v. Anderson*, 447 U.S. 231, 238 (1980) ("impeachment follows the defendant's own decision to cast aside his cloak of silence and advances the truth-finding function of the criminal trial.")

Ultimately, the Defendant chose not to testify and no evidence relating to the Telegraph article was introduced at trial. The Court engaged in a colloquy with Defendant confirming that he understood his right to testify, and that he "voluntarily decided not to testify[.]" Trial Tr. 11/14/2022 PM, 37. The Defendant also signed a waiver on November 14, 2022 affirming that he understood his constitutional right to testify and that he intended to give up that right. ECF No.

55.  Nonetheless, the Defendant now claims that his waiver was not voluntary and that this Court's ruling regarding the Telegraph evidence "effectively chilled Mr. Benton's right to testify in his own defense."  ECF No. 64 at 10-11.

First, there is no question that Defendant's waiver of his right was knowing and voluntary. He confirmed as such on the record to this Court and in writing.  He at no point informed this Court that he felt forced into that decision in any way.  He therefore cannot claim as much now. *See United States v. Wilson*, No. 96-319-01 (CKK), 2005 WL 6293747, at *10 (D.D.C. Sept. 12, 2005) (unpublished), aff'd, 219 F. App'x 5 (D.C. Cir. 2007) (rejecting argument on § 2255 motion that defendant did not testify because he was not prepared to do so by his lawyer because "despite being provided the opportunity, Petitioner did not inform the trial judge that he was not prepared and therefore could not testify. Rather, the colloquy on the record before the trial court highlights Petitioner's explicit, knowing waiver of his right to testify on his own behalf.")

Second, because the Defendant did not testify, his argument that the Court erred in its *in limine* ruling is foreclosed by Supreme Court and D.C. Circuit precedent.  As the Supreme Court has recognized, "an accused's decision whether to testify seldom turns on the resolution of one factor," and therefore a reviewing court cannot assume that an adverse evidentiary ruling motivated a defendant's decision not to testify.  *Luce v. United States*, 469 U.S. 38, 42 (1984) (internal citation and quotations omitted).  In *Luce*, the defendant claimed after trial that the district court's *in limine* ruling allowing the Government to cross-examine him regarding a previous conviction was error.  The Supreme Court rejected that claim because the defendant did not testify, holding that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify."  *Id.* at 43.  In so doing, the Supreme Court explained that "[a] reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a

factual context."  The Supreme Court also noted, "[a]ny possible harm flowing from a district court's *in limine* ruling permitting impeachment by a prior conviction is wholly speculative" as "[t]he ruling is subject to change when the case unfolds[.]"  *Id.* at 41.  Thus, "[w]hen the defendant does not testify, the reviewing court also has no way of knowing whether the Government would have sought to impeach with the prior conviction."  *Id.* at 42; *see also United States v. Shorter*, 622 F. Supp. 998, 999 (D.D.C. 1985) (denying Rule 33 motion and stating, "[w]hen the defendant chooses not to take the stand, there is simply no way any court can assess (1) whether the government's hypothetical cross-examination would be improper, and (2) whether that hypothetical cross-examination would actually prejudice the defendant.").

Circuit Courts have expanded *Luce* beyond its original context.  In *United States v. Coumaris*, 399 F.3d 343, 348 (D.C. Cir. 2005), the D.C. Circuit held that a defendant had waived his objection to the district court's *in limine* ruling regarding the scope of cross-examination of his character witnesses, because he had not called those witnesses to testify.  *Id.*  ("Whatever its merits, Coumaris clearly waived his objection to the district court's *in limine* ruling by failing to call the character witnesses to testify.").  In *United States v. Nivica*, 887 F.2d 1110, 1116 (1st Cir. 1989) the First Circuit found that a defendant waived his argument that the district court erred in refusing to limit the scope of his cross-examination should he take the stand, because he did not testify.  And in *United States v. Johnson*, 767 F.2d 1259, 1270 (8th Cir. 1985) the Eighth Circuit found that the defendants waived objection to the district court's ruling regarding the admission of other acts evidence during rebuttal and cross examination should they testify, because defendants elected not to testify.  The Eighth Circuit explicitly rejected the claim that the district court's ruling "effectively prevented them from testifying."  *Id.*

Ultimately, like all *in limine* motions, this Court's ruling regarding the Telegraph materials was dependent upon the factual situation at trial, which this Court explicitly noted in its *in limine* ruling.  Because the Defendant did not testify, any error from the potential use of that material is purely speculative, and the Defendant has waived his objection.  *See Luce*, 469 U.S. at 41-42; *Coumaris*, 399 F.3d at 348.  Defendant's Rule 33 motion on this basis therefore fails.

### iv.  THE COURT CORRECTLY RULED THAT DOUG WEAD'S HEARSAY STATEMENTS TO THE FBI WERE INADMISSIBLE

The parties have already extensively briefed this issue, and the Court has already ruled on the precise arguments raised by Defendant. ECF Nos. 50, 51, 11/09/2022 Minute Entry.  For the reasons laid out in the Government's previous briefing on this issue, ECF No. 51, the Court's original ruling on the issue was correct.  The Defendant now complains about the emails and statements that the Government presented at trial and complains that the Government was "able to effectively have its evidentiary cake and eat it too."  ECF No. 64 at 12.  But this ignores the fact that Defendant stipulated to the admissibility of the vast majority of the Government's exhibits. *See* Trial Tr. 11/10/22 AM, 19-20.  If the Defendant believed the emails the Government introduced to be objectionable, he had an opportunity to object at their admission, but he did not. *See United States v. Johnson,* 802 F.2d 1459, 1465 (D.C. Cir. 1986) ("A defendant is normally deemed to have waived any legal objections not actually articulated at trial.").

Moreover, as laid out in detail in the Government's original briefing, many of Wead's statements in his interview were belied by the contemporaneous email record. ECF No. 51 at 3-8.  This included statements that the Defendant wanted to introduce at trial. *Id.* at 9-12.  The Defendant could have introduced additional <u>emails</u> from Wead to provide additional correct context.  But the fact that the Defendant preferred Wead's self-serving statements to law enforcement, made five years after the events in this case, does not make those statements

24

admissible. *United States v. Mason*, 951 F.3d 567, 574 (D.C. Cir. 2020) (Rule 807 an "extremely narrow exception" applied "sparingly, only in the most exceptional circumstances, and only if the out-of-court statement is both very important and very reliable.") (internal citation and quotations omitted); *United States v. Wright*, 363 F.3d 237, 246 (3d Cir. 2004) (Alito, J.) (finding district court did not commit clear error in excluding statements made by deceased individual to his lawyer because, as district court noted, declarant's statements were "self-serving statements made at a time when he knew he was under investigation and had a motive to not tell the truth. Human nature is to deny committing crimes, especially for a public figure who is held in high esteem by the community and knows he is under investigation.").[6]

Ultimately, if the Defendant wished to present evidence regarding his purpose, or the purpose of Roman Vasilenko's trip to the United States, or to put a non-nefarious gloss on contemporaneous email exchanges regarding the events presented at trial, he had a simple option: the Defendant could have elected to testify and tell his side of the story. The fact that the Defendant chose not to, does not render this Court's proper ruling on Wead's false and self-serving statements to law enforcement incorrect, and it certainly does not warrant a new trial. The Court should deny Defendant's motion on this basis.

---

[6]     In his motion, the Defendant cites to *United States v. Weber*, 437 F.2d 327, 336 (3d Cir. 1970) supposedly for the proposition that the Court erred in excluding Wead's statements. But *Weber* was a case about the <u>Government</u> admitting co-conspirator statements made in furtherance of the conspiracy, which is clearly allowed by the evidentiary rules. *See* Fed. R. Evid. 801(d)(2)(E). There the court held that co-conspirator statements made in furtherance of the conspiracy apply whether the declarant is alive or dead. *See id.* This case is inapposite to the present situation as the Defendant could never introduce Wead's statements as co-conspirator statements made in furtherance of the conspiracy.

## **CONCLUSION**

For the foregoing reasons, this Court should deny the Defendant's Motion for Judgment of

Acquittal or in the Alternative Motion for a New Trial in its entirety.


                      Respectfully submitted,

                      Corey R. Amundson
                      Chief
                      Public Integrity Section

By: */s/ Rebecca G. Ross*            
                      Rebecca G. Ross
                      Michelle K. Parikh
                      Trial Attorneys
                      Public Integrity Section
                      U.S. Department of Justice

                      Michelle L. Wasserman
                      Special Assistant United States Attorney
                      United States Attorney's Office for the
                      District of Columbia

**CERTIFICATE OF SERVICE**

I hereby certify that this motion was filed by ECF on December 15, 2022, and thereby served on defense counsel.

/s/ Rebecca G. Ross
Rebecca G. Ross
Trial Attorney