**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **JESSE R. BENTON**, <br><br> Defendant. | Case No. 1:21-cr-00569 (TNM) |

**MEMORANDUM ORDER**

A federal jury convicted Jesse Benton of six counts related to campaign contributions he made to various political action committees before the 2016 election. *See* Verdict Form, ECF No. 61. Before the Court is his motion for judgment of acquittal or for a new trial. *See* Mot. for Judgment of Acquittal or Mot. for New Trial, ECF No. 64 (Mot.). Because Benton neither shows that this Court's pretrial rulings were error nor that his trial was deficient, the Court denies his motion.

**I.**

In September 2021, a grand jury indicted Jesse Benton and Roy Douglas Wead in connection with campaign contributions made before the 2016 election. *See* Indictment, ECF No. 1. The indictment charged one count each of 18 U.S.C. § 371 (conspiracy), 52 U.S.C. § 30121 (electoral contributions by foreign nationals); 52 U.S.C. § 30122 (electoral contributions in the name of another); and three counts each of 18 U.S.C. § 1519 (causing false records). *See id.* The charges stemmed from an alleged conspiracy between Benton and Wead to solicit $100,000 from Russian oligarch Roman Vasilenko and to use those funds to donate to political action committees supporting Donald Trump's 2016 presidential campaign. *See id.* Wead died of natural causes before trial. *See* Mot. to Dismiss Case, ECF No. 23.

1

Benton's case proceeded to trial.  At the close of the Government's evidence, Benton moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29(a).  *See* Trial Tr. 11/14/2022 AM, 130–34.  This Court denied that motion after argument.  *See id.* at 140–43.  The jury ultimately found Benton guilty of willfully soliciting or causing foreign national contributions to a political committee aggregating more than $25,000 in a year; willfully permitting his name to be used to effect contributions of a foreign national to a political committee aggregating more than $25,000 in a year; and three counts of knowingly causing the Federal Election Commission to create false records.  *See* Verdict Form.  The jury also found him guilty of conspiracy to commit all these offenses.  *See id.*  Benton now moves for judgment of acquittal or a new trial.

## II.

Rule 29 permits a defendant to move for a post-verdict judgment of acquittal if the evidence presented at trial cannot sustain a conviction.  *See* Fed. R. Crim. P. 29(c).  But the Court must affirm the jury verdict if, considering the evidence in the light most favorable to the Government, it finds that "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Wahl*, 290 F.3d 370, 375 (D.C. Cir. 2002).  And the Court must presume that the jury properly discharged its duty to evaluate the credibility of witnesses, find facts, and draw justifiable inferences.  *See United States v. Campbell*, 702 F.2d 262, 264 (D.C. Cir. 1983).  "[A] judgment of acquittal is appropriate only when there is *no* evidence upon which a reasonable juror might fairly conclude guilt beyond a reasonable doubt."  *United States v. Weisz*, 718 F.2d 413, 438 (D.C. Cir. 1983).

Rule 33 allows courts, at a defendant's request, to "vacate [a] judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  Motions under Rule 33 are

disfavored and "viewed with great caution." *United States v. Hale-Cusanelli*, No. 21-cr-37, 2022 WL 4300000, *3 (D.D.C. Sept. 19, 2022). Granting a new trial "is warranted only in those limited circumstances where a serious miscarriage of justice may have occurred." *United States v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2014) (cleaned up). In other words, courts grant such motions in "extraordinary circumstances where the evidence preponderates heavily against the verdict," *United States v. Rogers*, 918 F.2d 207, 213 (D.C. Cir. 1990), and when any error affects a defendant's substantial rights, *see United States v. Lawson*, 494 F.3d 1046, 1053 (D.C. Cir. 2007). The party seeking a new trial bears the burden of proving that it is justified. *See United States v. Mangieri*, 694 F.2d 1270, 1285 (D.C. Cir. 1982).

Under Federal Rule of Criminal Procedure 52(b), the Court reviews objections not raised at trial for plain error. *See United States v. Williams*, 825 F. Supp. 2d 128, 132 (D.D.C. 2011). To be plain, any error "must be clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009). And it must be prejudicial, meaning it "affect[s] substantial rights" or the outcome of the proceeding. *United States v. Olano*, 507 U.S. 725, 734 (1993) (cleaned up).

### III.

The Court first addresses Benton's arguments for acquittal under Rule 29 and then moves to his arguments for a new trial under Rule 33.

### A.

First up is Benton's Rule 29(c) motion. Benton primarily argues that the Government did not sufficiently prove a critical element of the offenses in this case—that Vasilenko's contribution was intended to influence a federal election. *See* Mot. at 2–5. Benton raised the same issue in his Rule 29(a) motion at the close of the Government's evidence. *See* Trial Tr.

11/14/2022 AM, 130–34.[1]

The Federal Election Campaign Act (FECA) makes it unlawful for a "person to solicit . . . a contribution" from a foreign national "in connection with a Federal, State, or local election."  52 U.S.C. § 30121.  And it criminalizes "knowingly permit[ting] [one's] name to be used to effect" a contribution in the name of another.  *Id.* § 30122.  The statute elsewhere defines "contribution" as "anything of value made by any person for the purpose of influencing any election for Federal office[.]"  *Id.* § 30101(8)(A)(i).[2]

Some factual background is warranted.  The core of Benton's argument throughout the case has been that "intent to influence an election" in FECA means that someone contributed money to gain some benefit from a politician—perhaps special favor or financial support.  *See, e.g.*, Mot. at 2–3; *see also* Trial Tr. 11/10/2022 PM, 118–19 (defense cross-examination of FBI witness eliciting that the witness found no evidence that Vasilenko sought anything from Trump or asked for foreign policy assistance after meeting him).

Benton's theory of the case at trial was that Vasilenko—a prominent businessman—merely sought a photo with an American celebrity to enhance his public image.  *See, e.g.*, Mot. at

---

[1]  Benton argues that a failure to prove intent to influence an election would require acquittal on all six counts, even though only the first three pertain to campaign contributions.  *See* Mot. at 5; *see also* Trial Tr. 11/14/2022 AM, 131.  The Court assumes without deciding that he is correct.

[2]  The Government notes that "under the case law and the plain language" of FECA, it is unclear whether Vasilenko, Benton, or both "had to have the purpose of influencing the election."  Gov't Resp. to Def.'s Mot. for Acquittal or for a New Trial (Gov't Opp'n) at 5 n.3, ECF No. 65 (citing 52 U.S.C. § 30121 and § 30122).  But the Defense only argues that the Russian's intent must be proven.  *See, e.g.*, Mot. at 2–5; Trial Tr. 11/14/2022 AM, 132–33 (Defendant's argument that because the Government's theory is "a conduit with Mr. Benton in the middle," the prosecution must prove that Vasilenko intended to influence the election with his contribution).  So the Court declines to address the question of whether Benton must also have intended to influence the election under 52 U.S.C. § 30121 and § 30122.

3; Trial Tr. 11/14/2022 AM, 131–33.  On Benton's telling, Vasilenko would have met any number of celebrities, and indeed he first considered meeting other celebrities from entertainment, sports, and politics.  *See, e.g.*, Trial Tr. 11/10/2022 AM, 9–13.  Trump was a fallback option.  Vasilenko's intent, therefore, was purely to raise his public profile back home, not to influence the American presidential election.  *See, e.g.*, Trial Tr. 11/14/2022 AM, 131–33.

The Government countered that Vasilenko could have mixed motives, and that one of his purposes was to influence the presidential election by contributing money.  *See, e.g.*, Gov't Resp. to Def.'s Mot. for Acquittal or for a New Trial (Gov't Opp'n) at 6–7, ECF No. 65; Trial Tr. 11/14/2022 AM, 135–39.  The Government's primary argument was that Vasilenko contributed to Trump's campaign because a photo taken with a President-elect—rather than a failed candidate or other celebrity—would better bolster the Russian's image and influence.  *See, e.g.*, Gov't Opp'n at 6–7; Trial Tr. 11/14/2022 AM, 135–39.

Viewing the evidence in the light most favorable to the Government, the Court finds that a rational jury could have found the essential elements of the crime beyond a reasonable doubt. *See Wahl*, 290 F.3d at 375.  A person's intent is difficult to prove, especially where, as here, he did not testify and the Government relies on third-parties' statements as proof.  But enough evidence existed of Vasilenko's intent to make it a jury issue.  *See, e.g.*, Trial Tr. 11/14/2022 AM, 141 (explaining that a jury could draw justifiable inferences based on the Government's evidence, especially given the need "to get inside someone's head").  As relevant here, the following evidence was introduced at trial:

- Vasilenko was running for Russian office and is an influencer who runs his own business.  *See, e.g.*, Trial Tr. 11/10/2022 AM, 102, 106; Trial Tr. 11/10/2022 PM, 88; Trial Tr. 11/14/2022 AM, 23.

- He donated $100,000 to get a photo with Trump.  *See, e.g.*, Trial Tr. 11/10/2022 PM,

6–10, 25–36.

- Vasilenko attended a campaign event for Trump in Philadelphia in September 2016 and sat at a private roundtable with Trump and other contributing attendees. *See id.* at 48–49.

- The Russian would have understood that this event was a political fundraiser for a presidential candidate. *See, e.g.*, Trial Tr. 11/10/2022 AM, 47.

- After the event, he was very interested in obtaining the photo he took with Trump. *See, e.g.*, Trial Tr. 11/10/2022 PM, 58–62 (summarizing persistent communications from the Russian's translator about obtaining the picture with Trump).

- Soon after receiving his photo with Trump, Vasilenko posted it to his Instagram account. *See id.* at 116–17.

- After Trump won the election, the Russian again posted his picture with Trump on Instagram, now adding the wording "Two Presidents" and "Donald Trump v. Roman Vasilenko," alongside his company's logo. Trial Tr. 11/10/2022 PM, 117–18. This photo received many likes and comments. *See id.* at 118.

- Vasilenko bragged about meeting with Trump in his office and speaking with him personally, even though such a meeting never occurred. *See* Trial Tr. 11/10/2022 PM, 115.

- After Trump won the election, the Russian's interpreter sent an email to Wead explaining that Vasilenko is considered to be the only person in Russia "who personally met and knows Trump." Trial Tr. 11/14/2022 AM, 27–28. So he was "invited to speak in a special program dedicated to Trump on the . . . most influential TV channel in Russia" about Trump's "attitude towards Russia and his possible political moves connected with Russia." *Id.*

*See also, e.g.*, Trial Tr. 11/14/2022 AM, 135–42 (summarizing the evidentiary reasons for denying Benton's Rule 29(a) motion during trial).

The Court found there was sufficient evidence of Vasilenko's intent to influence a federal election to make it a jury question, even though he could have had mixed motives. *See id.* at 140–42. Vasilenko wanted to raise his public profile as a candidate for office and as a

6

businessman.  *See id.* at 140–42.  As such, it would be reasonable to think that he wanted a photo

with a future President and not with a loser in the presidential race to bolster his influence in

Russia.  *See id.*  For Vasilenko, "the biggest bang for his buck is being able to influence the

election so that he has this photo, this opportunity with a future President, not with the person

who's not going to be President."  *Id.* at 142.

The Court "must presume that the jury properly discharged its duty," which includes

drawing "justifiable inferences" from the facts presented at trial.  *Campbell*, 702 F.2d at 264.

The Government presented at least some evidence—rather than "*no* evidence"—"upon which a

reasonable juror might fairly conclude guilt beyond a reasonable doubt."  *Weisz*, 718 F.2d at 438.

And, of course, circumstantial evidence and testimony from others may establish the requisite

intent.  *See, e.g.*, *United States v. Stephens*, 23 F.3d 553, 555–56 (D.C. Cir. 1994).  Viewing the

evidence in the light most favorable to the Government, Benton's Rule 29(c) motion for failure

to prove intent to influence a federal election must be denied.

Benton makes one other argument for acquittal under Rule 29(c):  that his advice of

counsel defense showed he lacked the required willfulness to commit the offenses of conviction.

*See* Mot. at 5.[3]  For an advice of counsel defense to apply, Benton must introduce evidence

showing that (1) he relied in good faith on his counsel's advice that his actions were legal, and

(2) he made full disclosure of all material facts to his attorney in seeking advice.  *See United

States v. Gray-Burriss*, 920 F.3d 61, 66 (D.C. Cir. 2019).

At trial, Benton admitted evidence that he had emailed his lawyer asking if he could buy

a ticket to a political fundraising event and give it to Vasilenko.  *See* Trial Tr. 11/14/2022 PM,

---

[3]  Benton asked for—and the Court granted—his request to include an advice of counsel defense
in the jury instructions.  *See* Trial Tr. 11/14/2022 PM, 40–41; *see also* Jury Instructions at 39,
ECF No. 56.

16–17.  His lawyer replied (and also confirmed by phone) that "[t]here is no prohibition on a Russian citizen receiving a ticket to an event."  *Id.* at 17–18.  Benton used this evidence to argue that he "cleared" his conduct with his lawyer and was thus not willfully violating the law.  *See, e.g.*, Trial Tr. 11/15/2022 AM, 63–64.  But based on the evidence at trial, the jury could have reasonably concluded that Benton failed to disclose "all material facts" to his lawyer when seeking his advice.  *Gray-Burriss*, 920 F.3d at 66.  For instance, Benton supplied no evidence that he told his lawyer he planned to purchase the ticket to the political fundraiser with the Russian's money.  *See, e.g.*, Trial Tr. 11/15/2022 AM, 31–33.  On these facts, the jury was within its rights to reject Benton's advice of counsel defense.

## B.

Next up is Benton's Rule 33 Motion.  Recall that such motions are "viewed with great caution" and only granted in "extraordinary circumstances where the evidence preponderates heavily against the verdict" and when any error "affects a defendant's substantial rights."  *Hale-Cusanelli*, 2022 WL 4300000, at *3.  Benton argues that three "errors" warrant a new trial:  (1) the Court's admission of his prior conviction for other campaign finance crimes, and the Government's argument about it at closing; (2) the Court's ruling permitting cross-examination about a newspaper article, which Benton claims chilled his ability to testify at trial; and (3) the Court's exclusion of statements Benton's alleged co-conspirator Wead gave to the FBI.  *See* Mot. at 5–13.  The Court addresses each argument in turn.

*First*, Benton argues that the Court should not have admitted his prior convictions.  *See* Mot. at 7.  Following the 2012 Presidential campaign, a federal jury in Iowa convicted Benton of crimes similar to those charged here; namely, causing false records in violation of 18 U.S.C. § 1519, causing false campaign expenditure reports in violation of various FECA provisions,

engaging in a false statements scheme, and conspiracy to commit all those offenses. *See United States v. Benton*, 890 F.3d 697, 703–04 (8th Cir. 2018). That case also involved potentially illegal payments through fake invoices and third parties. *Id.* at 706. As Benton acknowledges, *see* Mot. at 7, both sides extensively briefed this issue pretrial and the Court held argument about it, *see* Tr. of Mot. Hr'g (Tr.) at 22–25, ECF No. 43.

The Court eventually admitted this evidence under Rule 404(b), finding it probative as to whether Benton's conduct with the Russian was willful and because it could also "show[] a certain *modus operandi* in the use of false invoices in both cases." *Id.* at 49. Benton now claims that the Court erred in admitting the prior conviction because it "was a critical component of" the Government's case and was used as propensity evidence. Mot. at 7–9. But Benton gives the Court no reason to rethink its decision to admit this evidence.

As the Court explained at length in its pretrial ruling, Benton's prior campaign finance-related conviction "is relevant to something other than propensity"—namely, willfulness and a method of committing crimes. *See* Tr. at 48–49. And the Court found the evidence's probative value not outweighed by a danger of unfair prejudice, especially when the Court could provide a limiting instruction to the jury. *See id.* at 49–50. Benton fails to show that this ruling was error.

More, the Court gave the jury a detailed limiting instruction about the prior conviction. *See* Jury Instructions at 21–22, ECF No. 56. Jurors were told to use this evidence "only for the limited purposes" of deciding whether (1) the circumstances of the prior crime and the charged offenses are so similar that it is likely the person who committed the prior offense also committed the offense here; and (2) the Government has proven beyond a reasonable doubt that Benton acted knowingly and on purpose and willfully. *Id.* In other words, the Court instructed the jury that it could use the prior conviction only for inference of a modus operandi, or for

analysis of Benton's knowledge and willfulness.  The Court instructed the jury that they "may not use this evidence to conclude that [Benton] has a bad character[] or . . . a criminal personality."  Jury Instructions at 22.  The jury is presumed to follow such instructions.  *See, e.g.*, *United States v. Straker*, 800 F.3d 570, 593 (D.C. Cir. 2015).

Benton also contends that the Government impermissibly discussed his prior conviction at closing.  *See* Mot. at 8–9.  Benton challenges the Government's argument that he had a modus operandi when committing his crimes, claiming it goes "beyond the permissible uses of the prior conviction."  *See id.*  He also criticizes stray statements by the prosecutor as verging on propensity evidence, including:  "This is how he commits his crimes."  *See id.*  Benton did not object during the Government's closing, so the Court's review is for plain error.[4]  *See Williams*, 825 F. Supp. 2d at 132.

For a new trial based on opening or closing statements, the Court considers "the severity of the alleged misconduct, the centrality of the issue affected by the error, the steps taken to mitigate the error, and the closeness of the case."  *United States v. Rawlings*, 522 F.3d 403, 411 (D.C. Cir. 2008).  All factors lean heavily in favor of the verdict here, particularly on plain-error review.

Recall that the Court told the parties at the pretrial conference that it was admitting Benton's prior conviction for limited purposes, including as evidence of a modus operandi.  *See* Tr. at 49–50.  The Government's statements honored those limits.  And the jury instruction to which Benton consented permits use of the prior conviction to assess whether "[t]he

---

[4]  Benton argues he did not object at closing because his "counsel did not fully hear the precise wording by the Government" and "did not fully appreciate the cumulative effect of the statements that were made."  Mot. at 7 n.1.  But whether counsel heard the argument is immaterial; his failure to object at trial dictates the Court's standard of review.  *See, e.g.*, *United States v. Brown*, 508 F.3d 1066, 1071 (D.C. Cir. 2007).

circumstances of the other crimes . . . are so similar [to the charged offenses] that it is likely" the same person committed them.  Jury Instructions at 21–22.  The Court read this limiting instruction after introduction of the prior conviction, *see* Trial Tr. 11/14/2022 AM, 128–29, and the Government referenced it twice during closing, *see* Trial Tr. 11/15/2022, 33–34, 82.  More, the jury was properly instructed not to consider the statements and arguments of the lawyers— including closings—as evidence.  *See id.* at 8.  The Court presumes that the jury obeys.  *See, e.g.*, *Straker*, 800 F.3d at 593.  Finally, the Court is persuaded that even without these stray statements, the other evidence of Benton's guilt would have led to the same verdict.  *See United States v. Moore*, 651 F.3d 30, 53 (D.C. Cir. 2011).  Any error thus did not cause prejudice.  *See id.*

*Second*, Benton argues that the Court erred by being willing to admit a newspaper article that suggested Benton did similar acts to the crimes charged here.  *See* Mot. at 10–11.  The Government asked for this article to be admitted for cross-examination should Benton testify. *See* Mot. in Limine at 16–17, ECF No. 32.  But Benton did not testify so the Government never introduced the article.  Benton now argues that the Court's pretrial ruling was error and "effectively chilled" Benton's right to testify in his defense.  *See* Mot. at 10; *see also* Def.'s Reply at 7–8, ECF No. 66.  ("[T]he ruling rendered [Benton's] waiver in this case involuntary.").

Although the Court stands by its pretrial ruling, *see* Tr. at 58–59, Benton cannot challenge it now because he did not testify.  Analogously, a defendant cannot challenge an in limine ruling about the admissibility of his prior conviction for impeachment when he decides not to testify.  *See Luce v. United States*, 469 U.S. 38, 41–42 (1984).  The *Luce* Court reasoned that "[a]ny possible harm flowing from a district court's *in limine* ruling . . . is wholly speculative" because "[w]hen the defendant does not testify, the reviewing court [] has no way of

11

knowing whether the Government would have sought to impeach with the prior conviction." *Id.* at 42.  And the D.C. Circuit has read *Luce* to cover a different factual scenario—an in limine ruling about the scope of cross-examination of character witnesses.  *See United States v. Coumaris*, 399 F.3d 343, 348 (D.C. Cir. 2005).  The Circuit held that a defendant "clearly waived his objection to the district court's *in limine* ruling by failing to call the character witnesses to testify." *Id.*

While Benton is correct that the facts of *Luce* and *Coumaris* differ slightly, *see* Def.'s Reply at 6–7, the Court finds their logic compelling.  Just as in *Luce and Coumaris*, it would be speculative for the Court to assess harm flowing from its ruling regarding the newspaper article because Benton did not testify, and therefore the Government never used the evidence against him.  While Benton argues the Government "was eager to use this evidence" and it was a "spectre of prejudice lurking behind this case at all times," Def.'s Reply at 7, the same could be said for any "other acts" evidence that would tend to establish a modus operandi or prove lack of mistake.

More, Benton's argument that admitting this evidence chilled his ability to testify is unpersuasive.  The Court confirmed through the standard colloquy that Benton understood his right to take the stand, but that he "voluntarily decided not to testify[.]"  Trial Tr. 11/14/2022 PM, 37.  Benton signed a waiver affirming the same.  *See* Right to Testify, ECF No. 55.  Benton cannot simply claim that this waiver was involuntary to get a new trial.  Allowing Benton to invalidate a knowing and voluntary waiver of his right to testify weeks after trial risks undermining the finality of jury trials whenever the defendant dislikes the outcome.

*Third*, Benton contends that the Court should have admitted statements Wead, his alleged co-conspirator, made to the FBI.  *See* Mot. at 11.  Benton sought to admit these statements

pretrial under Federal Rule of Evidence 807, the residual hearsay exception.  *See* Not. of Proposed Co-Def.'s Statements for Admission, ECF No. 51.  Benton largely restates his prior arguments, arguing that the statements "would have provided additional factual context, background, and critical information" about the relationship between the Russian and Wead.  Mot. at 11.  And Benton argues that the Government was able to admit Wead's emails, allowing it to "have its evidentiary cake and eat it too."  *Id.* at 12.

As the Court explained in its pretrial ruling on this issue, Rule 807 remains an "extremely narrow" exception to hearsay, applied "sparingly, only in the most exceptional circumstances." *United States v. Mason*, 951 F.3d 567, 574 (D.C. Cir. 2020).  To qualify for the exception, Benton must show that the statements are both very necessary and very reliable.  *See United States v. Slatten*, 865 F.3d 767, 806 (D.C. Cir. 2017); *see also United States v. Smith*, No. 19-cr-324, 2020 WL 5995100 (D.D.C. Oct. 9, 2020) (explaining the parts of *Slatten* that survived amendments to Rule 807).

The Court found pretrial that Wead's statements to the FBI failed both parts of the test. *See* 11/09/2022 Pre-Trial Tr. (Pre-Trial Tr.), 5–11.  The statements in the transcript were unnecessary because the defense had admissible contemporaneous emails containing much of the same evidence.  *See id.* at 9–10.  And the statements were unreliable for several reasons.  *See id.* at 6–9.  First, the Government submitted emails that undermined many of Wead's assertions to the FBI.  *See, e.g.*, Gov't Opp'n to Def.'s Proposed Co-Def.'s Statements for Admission at 25, ECF No. 51-1.  Second, the Court reasoned that people lie to the FBI all the time, *see, e.g.*, *United States v. Wright* 363 F.3d 237, 246 (3d Cir. 2004) (Alito, J.); *United States v. Bruguier*, 961 F.3d 1031, 1033 (8th Cir. 2020), and found that Wead had incentive to do so in this particular interview, *see* Pre-Trial Tr. at 8–9.  Finally, the Court found that some statements were

not even relevant under Rule 401.  *See id.* at 10.  Benton does not convince the Court that it erred in excluding Wead's statements to the FBI, or that such a ruling requires a new trial.

*   *   *

In sum, none of Benton's three arguments constitute "extraordinary circumstances where the evidence preponderates heavily against the verdict" and constitutes error affecting "substantial rights." *Lawson*, 494 F.3d at 1053.  Except for his arguments about the Government's closing arguments, Benton largely rehashes arguments he raised—and the Court rejected—at the pretrial stage.  He has given the Court no reason to displace its prior rulings or the jury's guilty verdict.

<h2 style="text-align:center">IV.</h2>

For these reasons, it is ORDERED that Benton's [64] Motion for Judgment of Acquittal or Motion for a New Trial is DENIED.

**SO ORDERED.**

Dated: January 27, 2023

TREVOR N. McFADDEN, U.S.D.J.