UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | CRIMINAL NO. 1:21-CR-00569 (TNM) |
| JESSE R. BENTON, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT JESSE R. BENTON'S
MEMORANDUM IN AID OF SENTENCING**

Jesse R. Benton, through counsel, respectfully submits this Memorandum in Aid of Sentencing. Mr. Benton respectfully requests that this Honorable Court impose a non-incarceration sentence in this case, with an alternative to incarceration such as home confinement, direct designation to a halfway house, and probation with conditions.

Mr. Benton also respectfully requests that if the Court orders incarceration, that release pending appeal be granted for Mr. Benton to prosecute his appeal in this matter.

**I.      Procedural History**

Mr. Benton was charged in a six-count indictment alleging conspiracy pursuant to 18 U.S.C §371, contributions by a foreign national pursuant to 52 U.S.C. §30121, contributions in the name of another pursuant to 52 U.S.C. §30122, and causing false records pursuant to 18 U.S.C. §1519. After a jury trial, Mr. Benton was convicted of all counts in the Indictment. Sentencing is set for February 17, 2023.

II.    **<u>Sentencing Standards Pursuant to 18 U.S.C. §3553</u>**

    A.    **Legal Standard for Sentencing**

18 U.S.C. §3553(a) requires that the Court consider the following factors in determining a sentence: (1) the nature and circumstances of the offense; (2) the history and character of the defendant; (3) the need for the sentence imposed; (4) the kinds of sentences available; (5) the applicable advisory guideline range and any policy statements therein; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. §3553 (2018).

The Court is required to consider these factors and fashion a sentence "sufficient, but not greater than necessary: to comply with traditional sentencing purposes. *Id.* In considering these factors, 18 U.S.C. §3661 states that "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. §3661 (2018).

    B.    **Sentencing Factors Under 18 U.S.C. §3553(a)**

The sentencing factors of 18 U.S.C. §3553(a) are discussed in detail below, and demonstrate that a sentence below the applicable Guideline range is an appropriate sentence in this case.

    1.    **Nature and Circumstances of the Case**

Although Mr. Benton respects the jury's verdict in this case, he humbly and respectfully maintains his innocence in this case and asserts that he acted in good faith and under the advice of experienced political law counsel in an uncertain election law landscape

that his own election law counsel declared was "clear as mud." Mr. Benton wrote an extensive, heartfelt letter to the Court regarding his background, his mindset regarding the events of the case, his prior conviction, and his current family and financial situation. Mr. Benton's letter is attached as Exhibit 1.

Notwithstanding the verdict in this case, the Defendant's continued reading of the trial evidence in this case remains that the Russian national at the center of this case, Roman Vasilenko, was interested in meeting a celebrity to enhance his image in his home country, and former President Trump was the eleventh person that was proposed for him to meet during his trip to the United States. This case, which took place over a very limited period of time, is about an Instagram influencer and Russian businessman looking to enhance his image, not someone whose intent was to influence a federal election in this country – indeed no evidence of any *quid pro quo* or any contact other than a seconds-long photo was presented.

Also, not to minimize the conduct but to put it into context, this case involved $25,000, which was a miniscule amount compared to the amount former President Trump raised in 2016 ($646 million), also demonstrates that the contribution in this case was not made for the purpose of influencing a federal election and even if it were, the amount was so minimal that it was not capable of any such influence, and not deserving of significant punishment. It should be noted that $25,000 is the statutory line for classification of the offense in this case as a felony rather than a misdemeanor for the FECA offenses; therefore, had Mr. Benton purchased a $15,000 or $20,000, or a $24,999 ticket for the event, Mr. Benton would have been charged with a misdemeanor under FECA, and this fact should be instructive in sentencing. 52 U.S.C. § 30109(d)(1)(A).

**2.     History and Character of the Defendant**

Mr. Benton's history and character are set forth in detail in the numerous sentencing support letters attached to this Memorandum. In short, it is evident that Mr. Benton is a man of deep faith and commitment to his family who has significant health issues requiring a non-incarceration sentence.

Furthermore, Mr. Benton is the sole income-earning member of his immediate family, and due to his convictions, he is doing food delivery to earn money. As noted in the letter provided by Mr. Benton's wife, she and their young child (12 y.o.) will have significant financial and personal difficulties if Mr. Benton is incarcerated in this case as Mrs. Benton is not employed and Mr. Benton shares a special bond with his daughter. *See* Exhibit 2.

One of the support letters received is from United States Senator Rand Paul, who wrote of his long-standing personal and professional relationship with Mr. Benton. *See* Exhibit 2. Critically, in the letter, Senator Paul wrote that "I have had long talks with Jesse about his troubles and have been thoroughly impressed with his positive attitude and deep introspection. Many feel he has been harshly treated, but Jesse has refused to play the victim, looking first to his own shortcomings, how he can do better, and how he can serve others through his penance." *Id*. Furthermore, Senator Paul referenced the negative impact incarceration would have on Mr. Benton's daughter and family, and also called upon his Senate work on criminal justice reform and the need for alternatives to incarceration as they apply to Mr. Benton's case. *Id*.

Additionally, former Congressman and presidential candidate Dr. Ron Paul, stated that he has had many discussions with Mr. Benton about his legal issues, and "Jesse

4

accepted his initial punishment and worked hard to rebuild his life. Through it all, I saw a good man use the adversity in his life to better himself. I can see no use in sending him to a lengthy prison, only loss for him, his family and so many others." *Id*. (Letter of Dr. Ron Paul).

Other letters from family and friends demonstrate Mr. Benton's dedication to his family and the need to consider alternatives to incarceration. For example, Mr. Benton's sister-in-law referenced the special relationship Mr. Benton has with his daughter and the impact of any incarceration on his daughter: "As for Caroline, who is almost a teenager, this is a very critical time for her to have her father in her life. They have a special bond that I witness any time I am around them. This bond that they share is very important, especially at a time where she is becoming a young woman. By having Jesse in her life, I believe she will do better in school, have higher self-esteem, and make better life choices." *See* Exhibit 2. (Letter of Vicki White).

In addition to the significant personal impacts any incarceration would have on Mr. Benton's family, he also suffers from a significant medical condition, diabetes and underlying renal disease, in which he has to take several prescribed shots as well as seven different oral medications which is noted in the PSR. Mr. Benton has a history of ketonic episodes when his medication is not regularly taken, which is a significant concern, and is a reason for the Court to consider an alternative to incarceration in this case.

Mr. Benton's doctor wrote a letter regarding the condition and the impact of any incarceration:

> In addition to the long-term ramifications, Jesse struggles with acute hypoglycemic attacks which can be very dangerous. It is critically important that Jesse continue his regime or he may go into diabetic ketoacidosis, ending up in ICU. A prison sentence would be harmful to Jesse's health and well being. Please consider a punishment that will allow him to remain free and under my care since he is a brittle diabetic with renal failure.

*See* Exhibit 2 (Letter of Dr. Reyes).

Therefore, based on Mr. Benton's personal circumstances, including the financial issues that will befall his immediate family and his significant health issues, a non-incarceration sentence is appropriate.

### 3. The Need for the Sentence Imposed, the Kind of Sentences Available and the Need to Avoid Sentencing Disparities

Since *United States v. Booker,* 543 U.S. 220 (2005), District Courts are permitted to engage in more individual outcomes and the traditional goals of retribution, deterrence, incapacitation and rehabilitation rather than uniform sentencing under the United States Sentencing Guidelines. In this case, the need for a Guideline sentence is not present.

Based on the information presented at trial, in the PSR and in the sentencing support letters submitted in this case, Mr. Benton is not involved in politics any longer, and there is no concern about any further recidivism as he is no longer involved in that type of profession and is literally delivering food to attempt to make ends meet due to the impacts of this case and the highly-publicized nature of the conviction in this case. Mr. Benton is committed to reinventing himself after this case and providing for his family.

### 4. Applicable Advisory Guideline Range

The PSR states that the applicable advisory sentencing guideline level in this case is 14, and the government contends that Mr. Benton is in criminal history category II; therefore, the applicable sentencing guideline range according to the government is 18-24

months.

The Guideline range in this case substantially overrepresents the offense in this case. As noted above, this case involves $25,000 into a campaign that raised $646 million, and there was no evidence whatsoever of any *quid pro quo* or any attempt by Mr. Vasilenko to seek any favors or anything else from the United States government. This case remains about a picture on an Instagram account, and not one that was material to the 2016 Presidential campaign.

Furthermore, a Guideline range that carries such a significant penalty represents a substantial overrepresentation of Mr. Benton's criminal history in this case.  U.S.S.G. §4A1.3(b), Commentary Note 3. With respect to criminal history, the Guidelines state that "[i]f reliable information indicates that the defendant's criminal history substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." In this case, due to the sentence given in the Iowa case, Mr. Benton received 1 criminal history point, and then two points for committing the instant offense while under a criminal justice sentence that case which gave him 1 point. Therefore, a case that gave him one criminal history point, which was a non-incarceration sentence with a subsequent pardon, was tripled to three points to arrive at criminal history category II and that results in an over-representation of his criminal history. When that fact is coupled with the press release that accompanied the pardon that referenced the unclear nature of the statute of conviction in that case, the overrepresentation becomes even more clear.

Judges in this District have been receptive to ordering sentences that vary from the applicable Guidelines range.  According to the annual statistics published by the United

States Sentencing Commission, in Fiscal Year 2021, only 29% cases were sentenced within the Guideline range.  Furthermore, of the 34 fraud cases (this case is not a traditional wire/mail fraud case but categories of offenses in the statistics do not have FECA offenses) in that Fiscal Year, 22 defendants were sentenced to incarceration, and 12 were sentenced to some form of prison/community split sentence, probation and confinement, and probation only.  The median sentence for fraud cases in 2021 was 14 months. https://www.ussc.gov/sites/default/files/pdf/research-and-publications/federal-sentencing-statistics/state-district-circuit/2021/dc21.pdf

       Although the Guidelines remain a necessary component of a sentencing, based on all of the 18 U.S.C. §3553 factors present in this case, it is respectfully requested that the Court sentence Mr. Benton to a non-incarceration sentence below the advisory Guidelines range in this case.  A sentence that includes home detention, community service, or an alternative to incarceration is appropriate in this case. Indeed, a sentence similar to the case for which Mr. Benton was pardoned – two years of supervised probation, 6 months of home confinement, 160 hours of community service, and a $10,000 fine, is appropriate in this case.

### III.    <u>Release Pending Appeal is Appropriate</u>

       Based on the significant issues raised in this case in Mr. Benton's motion for judgment of acquittal or in the alternative for a new trial, ECF No. 64, specifically related to the Court's evidentiary orders regarding the admissibility of Mr. Benton's prior conviction, the denial of the admission of deceased co-defendant Doug Wead's statements to law enforcement, and the order permitting the government to cross-examine Mr. Benton about a

"gotcha" stunt by a foreign news outlet, there are significant issues requiring appellate review in this case.

Release pending appeal is governed by 18 U.S.C. §3143(b)(l)(A-B). The Court can permit a Defendant to be released pending appeal if by clear and convincing evidence the person is not likely to flee or pose a danger to society, the appeal is not for purposes of delay and raises a substantial question of law or fact likely to result in: (1) reversal, (2) an order for a new trial, (3) a sentence that does not include a term of imprisonment, or (4) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. 18 U.S.C. §3143(b)(l)(A-B).

There is no debate that Mr. Benton is not a flight risk or poses any danger to society – he has been on a personal recognizance bond and has checked in as required and attended all court hearings, traveling to Court from outside of the jurisdiction.

With respect to the issues raised in the appeal, they are clearly not frivolous or for purposes of delay, and there are very significant issues of evidence that potentially deprived Mr. Benton of a fair trial in this case. Critically, the substantial question standard "does not require the district court to find that it committed reversible error." *See United States v. Pollard*, 778 F.2d 1177, 1181-82 (6th Cir. 1985) (citations omitted); *see also United States v. Giancola*, 754 F.2d 898, 900 (11th Cir. 1985) (per curiam) (stating that "[w]e . . . are unwilling to attribute to Congress the intention to deny bail pending appeal unless a district court judge found that he or she had committed error but was obstinately unwilling to grant a new trial or other relief to correct that error."). Therefore, Mr. Benton is not requesting that the Court admit error, only that there is a substantial question that the appellate court should review and consider. *See United States v. Garcia*, 340 F.3d 1013, 1020 n.5 (9th Cir.

2003) (stating that the issue presented must "only [be] a non-frivolous issue, that if decided in his favor, would likely result in reversal or could satisfy one of the other conditions.").

### IV.  Conclusion

Mr. Benton respectfully requests that the Court consider a non-incarceration sentence. Mr. Benton also respectfully requests that the Court waive any fine in this case because of the impact on this case on his financial situation.  Finally, if the Court orders any term of incarceration, Mr. Benton respectfully requests that it be limited in scope, and the Court permit Mr. Benton to be released pending appeal.  If the Court denies that relief, it is respectfully requested that the Court recommend to the Bureau of Prisons that Mr. Benton be incarcerated at a facility in near Houston, Texas in the Southwest region to be close to his family members and support system (i.e., FCI Beaumont Low/Camp, FCI Bastrop Low/Camp) and that he be permitted to voluntarily surrender to the facility designated by the Bureau of Prisons.

Date:   February 10, 2023               Respectfully submitted,


By: */s/ Brian W. Stolarz*
Brian W. Stolarz (DC Bar No. 466160)
Norton Rose Fulbright US LLP
799 9th Street, NW, Suite 1000
Washington, DC 20001-4501
Telephone: (202) 662-0309
Facsimile: (202) 662-4643
Email: brian.stolarz@nortonrosefulbright.com
*Counsel for Defendant Jesse R. Benton*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system on February 10, 2023 will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                                        */s/ Brian W. Stolarz*
                                                        Brian W. Stolarz