```
 1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF COLUMBIA
 2
       * * * * * * * * * * * * * * *    )
 3     UNITED STATES OF AMERICA,        )      Criminal Action
                                        )       No. 21-00569
 4                    Plaintiff,        )
                                        )
 5       vs.                            )
                                        )
 6     JESSE R. BENTON,                 )      Washington, D.C.
                                        )      February 17, 2023
 7                    Defendant.        )      10:10 a.m.
                                        )
 8     * * * * * * * * * * * * * * *    )

 9

10                       SENTENCING HEARING
             BEFORE THE HONORABLE TREVOR N. McFADDEN,
11                  UNITED STATES DISTRICT JUDGE

12

13     APPEARANCES:

14     FOR THE GOVERNMENT:      MICHELLE WASSERMAN, ESQ.
                                UNITED STATES ATTORNEY'S OFFICE
15                                FOR THE DISTRICT OF COLUMBIA
                                555 Fourth Street, Northwest
16                              Eleventh Floor
                                Washington, D.C. 20530
17
                                REBECCA G. ROSS, ESQ.
18                              U.S. DEPARTMENT OF JUSTICE
                                PUBLIC INTEGRITY SECTION
19                              1301 New York Avenue
                                Tenth Floor
20                              Washington, D.C. 20530

21                              MICHELLE PARIKH, ESQ.
                                U.S. DEPARTMENT OF JUSTICE
22                              1331 F Street, Northwest
                                Washington, D.C. 20005
23

24

25
```

```
1     APPEARANCES, CONT'D:

2     FOR THE DEFENDANT:        BRIAN W. STOLARZ, ESQ.
                                STEPHANIE METHERALL, ESQ.
3                               NORTON ROSE FULBRIGHT U.S., LLP
                                799 Ninth Street, Northwest
4                               Suite 1000
                                Washington, D.C. 20001
5

6     FOR U.S. PROBATION:       SHERRY BAKER

7
      REPORTED BY:              LISA EDWARDS, RDR, CRR
8                               Official Court Reporter
                                United States District Court for the
9                                 District of Columbia
                                333 Constitution Avenue, Northwest
10                              Room 6706
                                Washington, D.C. 20001
11                              (202) 354-3269

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1          THE COURTROOM DEPUTY:  Your Honor, this is

2    Criminal Case 21-569, the United States of America versus

3    Jesse R. Benton.

4          From Probation, Officer Sherry Baker.

5          Counsel, please come forward to identify

6    yourselves for the record, starting with the Government.

7          MS. WASSERMAN:  Good morning, your Honor.

8    Michelle Wasserman, Rebecca Ross and Michelle Parikh for the

9    United States.  We are joined at counsel table by Lauren

10   Fastenau.

11         THE COURT:  Good morning, ladies.

12         MR. STOLARZ:  Good morning, your Honor.  Brian

13   Stolarz and Stephanie Metherall on behalf of Mr. Benton, who

14   is present.  Good morning.

15         THE COURT:  Good morning, Mr. Stolarz.

16         Good morning, Mr. Metherall.

17         And good morning, Mr. Benton.

18         THE DEFENDANT:  Good morning.

19         THE COURT:  We're here for the sentencing of the

20   Defendant, Jesse Benton, who was convicted by a federal jury

21   of willfully soliciting or causing foreign national

22   contributions of more than $25,000 to a political committee

23   in violation of 52 USC 30121; willfully permitting his name

24   to be used to effect contributions of a foreign national to

25   a political committee in violation of 52 USC 30122 and

1    30109; and three counts of knowingly causing the Federal

2    Election Commission to create false records in violation of

3    18 USC 1519.

4          I've received and reviewed the presentence

5    investigation report and sentencing recommendation from the

6    probation office as well as sentencing memoranda from the

7    Government and the Defendant.  The Defendant's memorandum

8    was accompanied by a number of letters written in his

9    support, including two from him, all of which I've reviewed.

10         Are there any other documents or materials that I

11   should have reviewed?  Ms. Wasserman?

12         MS. WASSERMAN:  No, your Honor.

13         THE COURT:  And Mr. Stolarz?

14         MR. STOLARZ:  No, your Honor.  Thank you.

15         THE COURT:  Mr. Benton, this sentencing hearing

16   will proceed in four steps, some of which may seem a bit

17   mechanical to you.  But I want you to keep in mind why we

18   are here today and the gravity of the situation:  You've

19   committed a federal crime.  Today's proceeding is a serious

20   matter, as it is about the consequences that you will face

21   because of your decision to engage in criminal behavior in

22   violation of federal law.

23         Sir, the first step of today's hearing is for me

24   to determine whether you've received the presentence report

25   and whether there are any outstanding objections to it and,

1    if so, to resolve those objections.

2          The second step is to determine what sentencing

3    guidelines and sentencing range applies to your case based

4    upon your criminal history and considering any mitigating or

5    aggravating factors that may warrant a departure under the

6    sentencing guidelines manual.

7          The third step is to hear from the Government,

8    from your attorney and you, sir, if you wish to be heard

9    about sentencing in this case.

10          And the last step requires the Court to fashion a

11    just and fair sentence in light of the factors Congress set

12    forth in 18 USC 3553(a).  As part of this last step, the

13    Court will actually impose the sentence, along with the

14    other required consequences of the offense.

15          So turning to that first step, Probation filed its

16    final presentence investigation report and sentencing

17    recommendation on February 10th, 2023.  Both parties filed

18    their memoranda in aid of sentencing that same day.

19          Does the Government have any objection to any of

20    the factual determinations set forth in the presentence

21    report?

22          MS. WASSERMAN:  No, your Honor.

23          THE COURT:  Mr. Stolarz, have you and Mr. Benton

24    read and discussed the presentence report?

25          MR. STOLARZ:  Yes, we have.

 1             THE COURT:  Does the Defendant have any

 2    outstanding objections to any of the factual statements set

 3    forth in it?

 4             MR. STOLARZ:  We have listed a number of them that

 5    we submitted to the probation office, and they have been

 6    responded to by the final PSR.  We stand by our objections.

 7             THE COURT:  So are you looking for me to resolve

 8    those at this point?

 9             MR. STOLARZ:  No.  They are noted.  The only

10    one -- I do have one that I'd like to address, if I may.

11             THE COURT:  Okay.

12             MR. STOLARZ:  Your Honor, we have noted several

13    factual objections, mostly to the categorization of the

14    facts as they were set forth by the Government.  We're not

15    going to rehash facts here.

16             The one thing I did want to raise, though, is the

17    overrepresentation of his criminal history based on the fact

18    that one conviction in Iowa that was noncustodial turns into

19    three criminal history points.  And so I don't know if now

20    is the time or it's more for allocution, but I do believe

21    that giving three criminal history points for a noncustodial

22    sentence that was pardoned overrepresents his criminal

23    history.

24             THE COURT:  So if you think there's a legal error

25    at this point, I'm happy to hear from you.  If your argument

 1    is more of a variance, then we can deal with that at

 2    allocution.

 3              MR. STOLARZ:  It is a variance argument, your

 4    Honor.  Thank you.

 5              THE COURT:  Thank you.

 6              Mr. Benton, could you approach the podium, sir.

 7              THE DEFENDANT:  Yes, sir.

 8              THE COURT:  Sir, are you fully satisfied with your

 9    attorney in this case?

10              THE DEFENDANT:  Yes, I am.

11              THE COURT:  Do you feel you've had enough time to

12    talk with him about the probation office's presentence

13    report and the papers the Government filed in connection

14    with the sentencing?

15              THE DEFENDANT:  Yes, sir.

16              THE COURT:  Thank you.  You may have a seat, sir.

17              The Court will accept the facts as stated in the

18    presentence report.  The presentence report will serve as my

19    findings of fact for purposes of this sentencing.

20              My appreciation to Officer Baker for her work on

21    this case.

22              The presentence report lays out the probation

23    office's calculation of the advisory guideline range that

24    applies in this case.  I'll attempt to summarize the

25    calculation as follows:

1            The maximum term of imprisonment for Counts 1 to 3

2     is five years.  The maximum term of imprisonment for Counts

3     4 through 6 is 20 years.  The probation office's presentence

4     report notes that the guideline for Counts 1 through 3 is

5     2C1.8.

6            The presentence report has proposed that for that

7     guideline, Mr. Benton's base offense level is 8.  The

8     probation office states that because the value of the

9     illegal transactions was more than $15,000 but less than

10    $40,000, the offense level is increased four levels under

11    guideline 2C1.8(b)(1) and guideline 2B1.1(b)(1)(C).

12           The probation office also submits that because the

13    offense involved an illegal transaction made by a foreign

14    national, two levels are added under guideline

15    2C1.8(b)(2)(A).  This results in a total offense level of

16    14.

17           Is there any objection to the calculation of that

18    offense level?  Ms. Wasserman?

19           MS. WASSERMAN:  No, your Honor.

20           THE COURT:  And Mr. Stolarz?

21           MR. STOLARZ:  Not to the offense level.

22           I do believe we received an email from your clerk

23    about the merger.  I don't know when you want to speak about

24    that.  But as to the question you've posed, I have no

25    objection to the calculations you've raised.

1            THE COURT:  Great.  Thanks for reminding me about

2       that.  Let's deal with that in just a minute, sir.

3            Turning to Mr. Benton's criminal history, the

4       presentence report estimates that he has a total criminal

5       history score of 3.  This places him in Criminal History

6       Category II.

7            Based upon a total offense level of 14 and a

8       criminal history category of II, the guideline range

9       applicable to him would be 18 to 24 months.

10           Is there any objection to that calculation?

11      Ms. Wasserman?

12           MS. WASSERMAN:  No, your Honor.

13           THE COURT:  And Mr. Stolarz?

14           MR. STOLARZ:  With reserving my variance argument,

15      no, your Honor.  Thank you.

16           THE COURT:  So why don't we go ahead and -- I

17      think now is as good a time as any to deal with the merger.

18      I know that's an issue you had raised, I think, back maybe

19      even pretrial; and I think the Government convinced me that

20      was something that's appropriately handled on the back end.

21      So here we are.

22           MR. STOLARZ:  Thank you.  We are on the back end.

23           I do appreciate your clerk's email, because that

24      is something I had not remembered until I saw that and then

25      quickly went back and reviewed it.

1          Your Honor, I do believe that now is the

2     appropriate time for you to rule on the issue of

3     multiplicity and that Counts 4 through 6 only accuse

4     Mr. Benton of having made one false entry, but yet that one

5     false entry has been broken out into three charges to which

6     he faces 60 years in prison rather than 20.

7          The unit of prosecution analysis is the analysis

8     under the multiplicity test.  And in this case, Counts 4, 5

9     and 6 all reference the same date, October 27th, 2016, and

10    all reference a false entry in a record, which is the only

11    entry that is allegedly -- or not allegedly now -- that is

12    false here, the record that he submitted saying the 25,000

13    was from him.

14         From that one charge, from that one statement, the

15    one entry, stems three charges in which the 25,000 is broken

16    out into its base unit of 25; and then one count, 22,300, in

17    Count 4; and 2,700 in Count 6.

18         There is only one alleged wrongful contribution of

19    25,000, and additional charges for the same unit of

20    prosecution are improper.  And it makes somewhat common

21    sense here that they're vagaries --

22         THE COURT:  Sir, can you remind me, why did this

23    end up this way?  Is it because there are automatically

24    generated multiple reports?

25         MR. STOLARZ:  Well, in short, multiple people want

1    a slice of the pie, want the money.  So they split it up

2    under political committees.  Each of those committees files

3    a separate report.

4              THE COURT:  I see.  So he filed one; and as a

5    result, three different entities filed reports.

6              MR. STOLARZ:  That's right.

7              So what he did and has been convicted of is one

8    statement:  "25,000 is from me."  The political committees

9    then chop that up into the vagaries of political

10   contribution law and who wants what and whose hands are out

11   and who takes it.  They submit reports.

12             THE COURT:  And so I want to see if we actually

13   need to have argument on this.  The bottom line is, do you

14   think Counts 5 and 6 should be dismissed?

15             MR. STOLARZ:  No.  Merged into -- at this point,

16   it's now -- it would be merged into 4.

17             I do think, as the Government will raise, and as

18   we discussed yesterday to anticipate this argument, that,

19   practically speaking, the guidelines remain the same.  So --

20   but that's why actually my -- I favor doing this on the

21   front end, because it gives the jury three options for

22   conviction rather than one.

23             But at this point, our argument is 5 and 6 should

24   merge into 4 for sentencing purposes.

25             THE COURT:  Ms. Wasserman, do you disagree?

```
 1              MS. WASSERMAN:  We do.

 2              THE COURT:  So go ahead and give me your

 3    explanation, then.

 4              MR. STOLARZ:  And I think I was near the end

 5    there.

 6              You know, we are dealing with, as I say, the

 7    vagaries of political contribution law.  And Mr. Benton's

 8    one statement turns into three charges.  And the analogy

 9    that I put into the brief is, if someone paid $5,000 and the

10    committees decided to split that 100 times, someone would be

11    subject to 2,000 years of prison.  That can't be what

12    Congress intended when you're dealing with one statement.

13              So you're talking about the unit of prosecution,

14    your Honor.  And in our view, the unit is the false entry.

15    And the false entry is alleged in each.  The false entry is

16    alleged and the same date is alleged, too.

17              So if he makes one statement on one day under

18    the -- what we believe is the prevailing law cited in the

19    brief and the motion --

20              THE COURT:  I'm trying to find that brief,

21    actually.  Do you happen to remember when you filed that?

22              MR. STOLARZ:  It was pretrial.  I did look at it

23    last night, but I don't have the ECF number in front of me.

24    My apologies.

25              THE COURT:  I'm just trying to remember.
```

```
1                 MR. STOLARZ:  The Government said No. 34.

2                 THE COURT:  What you're saying to me makes

3     intuitive sense, but that doesn't always add to legal sense

4     here.

5                 MR. STOLARZ:  Understood.  Yes.

6                 THE COURT:  Go ahead, sir.

7                 MR. STOLARZ:  So again, just to summarize, it's a

8     unit of prosecution, is your analysis you have to do.  What

9     is the unit in that offense?

10                And our view is the unit for Mr. Benton's purpose

11    is the false entry, which he made one.  If someone takes

12    that one entry and they chop it up multiple times, that is

13    not his mindset.  He does not know that it's going to be

14    chopped up into multiple pieces and therefore subject him to

15    multiple counts of punishment.

16                So we'd defer to the papers before your Honor and

17    ask that Counts 5 and 6 be merged into Count 4 for purposes

18    of sentencing.

19                THE COURT:  Thank you.

20                Ms. Wasserman?

21                MS. WASSERMAN:  Thank you, your Honor.

22                So the parties agree that the question here is the

23    unit of prosecution.  I think where we disagree is what is

24    the false entry.

25                So Mr. Benton isn't actually making the false
```

1    entry in the FEC records.  He is causing three separate

2    committees to file three separate reports that are three

3    separate false entries in the record.  So in essence,

4    although his activity took place -- he filed one document --

5    that winds up causing three separate committees on three

6    separate dates on three separate forms to file a false

7    record with the FEC.

8            And actually, it's interesting.  There actually is

9    a case that is more or less directly on point.  It's from

10   the Eastern District of Virginia.  It's *United States versus*

11   *Diana Shipping Services*.  That's 985 F.Supp 2d 719.  And

12   there, they had to deal with exactly this, which was a

13   multiplicity claim about the false entry clause of 1519.

14           What the Court said there was that --

15           THE COURT:  Did you say 719 or 819?

16           MS. WASSERMAN:  So the cite is 985 F.Supp.2d 719.

17   719.

18           THE COURT:  Okay.

19           MS. WASSERMAN:  And then what I'm about to read is

20   on Page 728 to 729.

21           The Court said that the Court would find -- so

22   there, the Court was addressing -- they hadn't raised it

23   pretrial.  But it said:  The Court would find that the

24   language of the statute itself is sufficient to determine

25   the unit of prosecution.  The, quote, "false entry clause"

1    at a minimum criminalizes each separate knowingly false

2    entry made in a record on a separate and distinct occasion,

3    regardless of whether each entry was made in the same

4    historical record book or on a separate single-page

5    document.

6           So in other words, what that court found was based

7    on the plain language of the statute -- and they go through

8    the legislative history as well -- but the plain language of

9    the statute criminalizes each separate false entry.

10           THE COURT:  But isn't the key word there kind of

11    "knowing"?  And I'm not sure that there's evidence that he

12    knew that there were going to be three different committees

13    that would file records.

14           MS. WASSERMAN:  Oh, but there is, because when --

15    he's on the contribution form.

16           So first of all, Trump Victory a joint fundraising

17    committee; so by definition, it's passing off the money to

18    different organizations.  He's a sophisticated political

19    actor.

20           And on the actual contribution form, on the -- I

21    think it's the second or third page -- it actually says

22    exactly where the money is going to go.  It tells the donor

23    or the contributor exactly what's going to happen to the

24    money.  So the first $2,700 goes to the Trump campaign; the

25    rest of the money up to a certain amount goes to the RNC;

1    and then if there's overage, it's disbursed between a number

2    of different state committees.

3           And so it actually told the contributor on the

4    contribution form:  Here is exactly where your money is

5    going to go.

6           At the very least, because it's a joint

7    fundraising committee and Mr. Benton is a sophisticated

8    political actor, he would be aware that it's not staying

9    with the joint fundraising committee, because that's the

10   whole point of that committee.  The committee isn't keeping

11   the funds.

12          THE COURT:  So do you agree that there would have

13   to be some -- he would have had to have been on notice in

14   some way?  For instance, let's say that the flier didn't

15   make that clear and on the back end they end up -- you know,

16   the RNC ends up sending some to a state political committee.

17   And so while even somebody sophisticated looking at the

18   information that would have been publicly available would

19   have just seen one committee, it turns out that there are

20   two or ten that end up filing reports.

21          MS. WASSERMAN:  Well, I mean, the *mens rea* for the

22   crime was "knowingly."  And the jury found him guilty.  And

23   so again, for him to be guilty of the crime, it is a

24   knowingly *mens rea*.  And he's knowingly -- right.  He was

25   charged under Section 2, liability.  Right?  Because he

1    didn't actually make the false record himself; he caused

2    these committees to unwittingly make the false records.

3            THE COURT:  So I think what I hear you saying is

4    you agree there would have to be evidence that he knew?

5            MS. WASSERMAN:  And there was.  And the jury found

6    that, because they found him guilty, because that was the

7    requisite *mens rea* for the crime.  So for him to be guilty

8    of the crime, they had to find that this was knowingly; and

9    they did.  And that came into evidence at trial.

10           You know, let's say -- this wasn't the case here

11   at all.  But hypothetically speaking, if the committees were

12   in on it and they had falsely -- knowingly falsely filed

13   this report, that would clearly be three separate charges,

14   because it's three separate false entries in the record.

15   The record is the FEC.  And they're each filing their own

16   separate report.

17           And the Court may or may not remember, but two of

18   the committees had the same form.  I forget the name.  But

19   one had a completely separate form.  The Trump campaign did,

20   because it was a different type of committee.  So truly it

21   is.

22           If you go on the FEC website, which is sort of the

23   public record of what happened here, there are three

24   different entries in that record for the single

25   contribution --

1          THE COURT:  Yes.  I don't --

2          MS. WASSERMAN:  -- each of which is false.  And

3     that is the unit of prosecution, what is the entry in the

4     record.  They're made on three separate days.

5          So although he had the single false contributor

6     form, he certainly was on notice -- this is a joint

7     fundraising committee -- that the money is going elsewhere.

8     And it wound up making three distinct -- three different

9     committees on three different days file three separate false

10    reports based on his misrepresentation.

11         And so just based on the plain language of the

12    statute, which is where the Court in the Eastern District of

13    Virginia started, just based on the plain language of the

14    statute, the unit of prosecution is the false entry in the

15    record.

16         His contribution form isn't the entry in the

17    record.  It's not.  The entry in the record are these FEC

18    reports.  And there are three of them.  And three of them

19    are false.

20         THE COURT:  I understand.

21         MS. WASSERMAN:  So I think, based on the pure

22    plain language of the statute, that it was not

23    multiplicitous.  It's appropriately charged.

24         You know, I was thinking last night, had we

25    charged it in one count, Mr. Stolarz would no doubt be up

1    here saying it was duplicitous, and that you would have to

2    dismiss it for other reasons.  So it's kind of -- we would

3    have lost either way.  Right?  If we had charged it the

4    other way, he would have claimed it was also erroneous.

5           But I do think it's properly, appropriately

6    charged.  It's not multiplicitous based on the plain

7    language of the statute.

8           THE COURT:  I'm certainly not suggesting you all

9    did anything wrong.  I'm not sure that he is.  I think there

10   is this appropriate merger analysis at the end.  And that's

11   what I'm trying to determine, whether, despite you having

12   appropriately charged it at the outset, if now it merges.

13          Mr. Stolarz, I'll give you a very brief

14   opportunity to respond.

15          MR. STOLARZ:  That's fine.  I think this issue is

16   pretty well talked out.  I think, you know, the Government

17   is hanging on fine print in the document to potentially

18   subject him to 40 more years' imprisonment, you know, in

19   which there was no testimony, we believe, that there was

20   knowledge on his part.

21          We believe the false --

22          THE COURT:  Well, but what about the fine print?

23   Fair enough.  But I think Ms. Wasserman is right that that

24   was presented to the jury.  There is certainly evidence that

25   your client is a sophisticated political actor.  So I mean,

1      is your argument that there's not sufficient evidence of his

2      knowledge?

3              MR. STOLARZ:  Well, I mean, this is ironic,

4      because this is exactly why I like these things done on the

5      front end rather than on the back end, because now that

6      we're on the back end they can say, Well, they found him

7      guilty, so he must have been guilty of all three, whereas I

8      believe from the beginning that they were improperly

9      charged.  But that's the -- you know, the water's under that

10     bridge.

11             We believe that the unit of prosecution is what he

12     submitted:  one record, not the underlying three records.

13     He submitted one record, and that was what was given.  And

14     therefore, now he's subject to three charges for one thing

15     that he signed.

16             THE COURT:  I guess I'll ask you the flip side of

17     my question to Ms. Wasserman:  Even if there was

18     overwhelming evidence that your client knew that it was

19     going to result in three statements, three false records

20     being filed, your position is that the number is what --

21     that he filed one document; therefore, that's all that

22     matters?

23             MR. STOLARZ:  So sorry to splice your question.

24             But if the testimony was, which I don't think

25     there was, that Agent Phan or someone else said specifically

1    that he knew he was trying to deceive multiple parties -- I

2    don't think there was any testimony about that.  All there

3    was was a $25,000 form with some fine print.  I don't

4    believe -- they can gloss over it and say, Well, the jury

5    found him guilty, so he's knowingly done this.

6          But I would answer you if the agent said, and

7    there's testimony there, that he knows these are going to

8    different waterfalls and he knows they're all going to file,

9    then yes.  I think the charges are proper.

10          I've seen these in larger cases with larger dollar

11    amounts in which someone knows:  Okay.  Well, that's going

12    to that state; that's going to that state.  But in this

13    case, you've got 25 grand that I don't think the Defendant

14    had the -- there's not evidence the Defendant had the

15    knowledge that these were going to be independent false

16    claims.  That's all.

17          THE COURT:  Thanks.

18          I will circle back and rule on this when I explain

19    my sentence.  I will certainly state that this will make

20    absolutely no difference in terms of what sentence I

21    actually impose.

22          So I appreciate the parties' argument on this.  I

23    just need to go back and refresh my memory on the briefing,

24    and I'll rule on this in a few minutes.

25          Other than that, any objections to -- I think

1    we've gotten there.  You said no objections to the guideline

2    calculation.

3            Let me discuss the remaining applicable penalties,

4    which includes supervised release, probation --

5            MS. WASSERMAN:  Your Honor?

6            THE COURT:  -- fines and forfeiture.

7            MS. WASSERMAN:  Your Honor?

8            THE COURT:  Yes.

9            MS. WASSERMAN:  Just quickly, I think I heard the

10   Court calculate the guidelines for I think the first three

11   counts.  I'm not sure I heard -- because of the grouping --

12   it's kind of a complicated grouping analysis.  Ultimately,

13   it's all the same guideline level.  I just want to make sure

14   for purposes of the record the Court had calculated the

15   guidelines for Counts 4 through 6 as well.

16           THE COURT:  I thought they were all 18 to 24

17   months.

18           MS. WASSERMAN:  It is.  It's just a guideline

19   level 14.  I just wanted to make sure the record was clear

20   that the Court had calculated all of the guidelines, that it

21   had done the grouping analysis and that the ultimate

22   adjusted offense level was a 14 with a guideline range of 18

23   to 24 months.

24           THE COURT:  That's what I was trying to do anyway.

25   I think we're all relying on Officer Baker's careful

1    evaluation, which I understand neither party is disputing at

2    least for purposes of the guidelines.

3            So the maximum fine the Court may impose for the

4    offense is $250,000.  And that's per count.

5            The Court may also impose a term of supervised

6    release of no more than three years per count.

7            There's a mandatory special assessment of $100 for

8    each count under 18 USC 3013.  So I suppose maybe this is

9    where -- there may be a difference of $200, I guess, if the

10   Defendant -- if I agree with Mr. Stolarz.  I think there

11   would be a $400 total special assessment.  If I disagree,

12   there's a $600 special assessment.  So there is a

13   difference.  I take that back.

14           The Defendant is eligible for not less than one

15   nor more than five years' probation because the offenses are

16   Class C and D felonies.  One of the following must be

17   imposed as a condition of probation unless extraordinary

18   circumstances exist; and that would be a fine, restitution

19   or community service.

20           Under the guidelines, the fine range for each

21   count is $7,500 to $75,000.  The guideline range for a term

22   of supervised release is one to three years.  If a sentence

23   of imprisonment of one year or less is imposed, a term of

24   supervised release is optional.  Supervised release is

25   required if the Court imposes a term of imprisonment for

1    more than one year.

2            Looking to the guidelines, the Defendant is

3    ineligible for probation because the applicable guideline

4    range is in Zone D of the sentencing table.  So he would be

5    eligible under the statute, but not under the guidelines,

6    for probation.

7            Have I stated accurately the statutory and

8    guidelines framework under which we are operating in regard

9    to this case?  Ms. Wasserman?

10            MS. WASSERMAN:  Yes, your Honor.

11            THE COURT:  And Mr. Stolarz?

12            MR. STOLARZ:  You have, your Honor.

13            THE COURT:  Having determined the applicable

14    guidelines sentence, the next step is for the Court to

15    consider departures from the guidelines.  Am I correct that

16    neither party is seeking a departure as opposed to a

17    variance here?  Ms. Wasserman?

18            MS. WASSERMAN:  Yes, your Honor.

19            THE COURT:  And Mr. Stolarz?

20            MR. STOLARZ:  Reserving the right of variance as

21    previously discussed, as well as the other 3553 factors,

22    yes.  We'd be seeking a variance from the applicable

23    guideline.

24            THE COURT:  Before I discuss the other sentencing

25    factors that will bear on the Court's final decision, I will

1    at this point share with the parties the particular sentence

2    the probation office has recommended, taking into account

3    the advisory guidelines sentence, the available sentences

4    and all of the factors listed in Section 3553(a):  The

5    probation office has recommended a sentence of 18 months'

6    incarceration, 24 months of supervised release, a $5,000

7    fine, no probation and a special assessment of $600.

8            The recommendation of the probation office is

9    based solely on the facts and circumstances contained in the

10   presentence report.

11           I must now consider the relevant factors that

12   Congress set out in 18 USC 3553(a) to ensure the Court

13   imposes a sentence that is sufficient but not greater than

14   necessary to comply with the purposes of sentencing.  These

15   purposes include the need for the sentence imposed to

16   reflect the seriousness of the offense, to promote respect

17   for the law and to provide just punishment for the offense.

18   The sentence should also afford adequate deterrence to

19   criminal conduct, protect the public from future crimes of

20   the Defendant and promote rehabilitation.

21           In addition to the guidelines and policy

22   statements, I must consider the nature and circumstances of

23   the offense, the history and characteristics of the

24   Defendant, the need for the sentence imposed, the guideline

25   ranges, the need to avoid unwarranted sentence disparities

1    among defendants with similar records who have been found

2    guilty of similar conduct and the types of sentences

3    availability.

4        Does the Government wish to be heard on the

5    application of the factors set forth in 3553(a), request a

6    variance or otherwise make a sentencing recommendation?

7    Ms. Wasserman?

8        MS. WASSERMAN:  In my district, we normally go

9    last.

10        THE COURT:  Well, welcome to D.C.

11        MS. WASSERMAN:  I'm not used to going first.

12        You know, just briefly, your Honor:  Every

13    sentencing that comes before this Court is a tragedy for the

14    family of the individual who's being sentenced.  Every

15    single one.

16        And nowhere is that more apparent than in

17    white-collar cases, because in -- particularly in

18    white-collar cases, the defendants that come before this

19    Court have families.  They are generally parents; they are

20    spouses; they have resources; they are integrated members of

21    their communities.  And that is generally true in

22    white-collar cases.  And they generally have no shortage of

23    individuals willing to write letters on their behalf.

24        But actions and choices have consequences.  And

25    nobody was more aware of the potential consequences of

1    criminal conduct than Jesse Benton in September of 2016.

2            In September 2016, he had just gone through a

3    federal criminal trial.  And in his allocution to the Court

4    at that time, on September 20, he told the Court exactly

5    what he thought might happen to his family.  So he was aware

6    of what the potential consequences of criminal conduct would

7    be for his family.  And nonetheless, he chose to engage in

8    this conduct anyway.

9            In his letter, he talks about -- in his

10   supplemental letter, he talks about repentance.  But what is

11   clear from this case and the last case is that Mr. Benton

12   has never taken responsibility for his criminal conduct.

13   He's never accepted responsibility.

14           At no point does he acknowledge that he is here

15   because of choices he made and actions that he took.

16           One of the things that sort of stood out to the

17   United States in the sentencing papers was this idea that

18   what happened here was no big deal.  We were particularly

19   troubled by a letter by -- from a sitting United States

20   senator on Senate letterhead that called what happened here

21   an administrative infraction, as if to suggest that the

22   campaign finance laws don't matter or they are

23   inconveniences and that what happened here was okay or

24   wasn't a big deal.

25           And we disagree vehemently.  The United States

1  believes that our campaign finance laws matter, that the

2  integrity of our elections matters and that individuals who

3  are sophisticated in those laws and who decide to knowingly

4  and willfully break those laws should be punished and must

5  be punished accordingly.

6         You know, unlike many defendants who come before

7  this Court, Mr. Benton clearly had options.

8         In the letters, they suggest that his privileged

9  background is a mitigating factor, but the United States

10  believes that it is not, that the fact that he had career

11  options, that he was smart, that he was talented, that this

12  is an aggravating factor, that he can and does know how to

13  do better and should have done better.  And he chose not to.

14         And so because Mr. Benton's actions can and do and

15  must have consequences and because particularly for specific

16  and general deterrence, that the overwhelming arc of the

17  letters was this idea that this was no big deal, which only

18  I think further serves to reinforce that general deterrence

19  is important here, so that another individual in

20  Mr. Benton's position who is sophisticated, who knows what

21  they are doing, thinks twice before they break the campaign

22  finance laws.

23         And so because of that, we are asking for a

24  24-month sentence, which the United States believes is

25  sufficient but not greater than necessary to meet the goals

1    of sentencing.

2            THE COURT:  I just remembered.  I'd be interested

3    in your thoughts, Ms. Wasserman, on -- well, one argument,

4    and one thing that neither party has actually suggested,

5    Mr. Stolarz's argument that this contribution was one dollar

6    over a misdemeanor, if you can confirm that.  And is that

7    true for all of the counts or only one or some of them?

8            And the second is -- and I'm not questioning the

9    jury's verdict on any of this.  But it occurred to me that,

10   looking at the facts that came out, that one could think the

11   Defendant actually had no intention of providing any money

12   to the RNC, that he was actually either fleecing

13   Mr. Vasilenko or the RNC or both and kind of got pushed into

14   a corner here with the RNC repeatedly asking, "Where's my

15   money?" and Mr. Vasilenko asking, "Where's my picture?"  And

16   he ended up kind of unwillingly, perhaps, providing the

17   $25,000.

18           And I note that it looked to me he had actually

19   promised at least $50,000, arguably, you know, more, and he

20   only provided 25,000, which would potentially support this

21   theory that he actually wasn't all that interested in

22   helping the Trump campaign, but was really primarily

23   interested in getting Mr. Vasilenko's money.

24           So I'd be interested in your thoughts on that

25   theory and if that would be aggravating or mitigating here.

1              MS. WASSERMAN:  So I think first, a conspiracy

2       obviously is a felony.  The crime is the agreement plus an

3       overt act.  So that's a felony regardless.

4              I think the --

5              THE COURT:  But I mean, you could have a

6       misdemeanor conspiracy.  Right?

7              MS. WASSERMAN:  Well, for the 1519, it's a felony,

8       I think, regardless, because the 1519 is the false -- the

9       1519 is the false entry in the record.  And so for those

10      counts, the dollar amount doesn't matter.

11             For the contribution counts, so Counts 2 and 3, it

12      is one -- the $25,000 and up is the felony.  So under

13      $25,000 would be a misdemeanor for those two counts, but I

14      do not believe so for the remaining counts.  I think the

15      remaining counts would be felonies regardless.

16             One of the objects of the conspiracy was the 1519.

17      So regardless, the United States believes that Counts 1, 4,

18      5 and 6 would be felony convictions regardless of the

19      amounts.

20             THE COURT:  And we'd end up at the same sentencing

21      guidelines?

22             MS. WASSERMAN:  Correct.  The same sentencing

23      guidelines.

24             You know, I think it's interesting.  I say to

25      juries all the time when you get to knowledge, you can't cut

1    a defendant's head open and see what's inside of it.  That's

2    the issue with knowledge.

3          It seems to the United States from the evidence

4    elicited at trial that at least from the beginning,

5    Mr. Benton clearly intended to give the contribution because

6    he thought he had to.

7          And the Court might remember that I think -- I

8    forget whether it was Ms. Burnett or Franklin that testified

9    that, generally speaking, best practices would be to collect

10   the money beforehand.

11         And so what's supported by that is the fact that

12   in the chronology, you know, Mr. Benton gets in touch with

13   the RNC.  He's asking about these tickets.  He more or less

14   says they want to do this Philadelphia event.  But he does

15   not actually say he's going to purchase the tickets until

16   the day after all of the money is in his bank account.

17         So he waits until he has the full amount of the

18   money before he commits to the tickets, which suggests to

19   the United States that he understands that he's probably

20   going to have to pay the money up front and that he wants

21   the money in hand to be able to make the contribution

22   because, as the Court might remember, the bank account at

23   that point, there isn't enough money for him to make the

24   contribution without it.

25         So he gets lucky in some sense and they don't ask

1     for the contribution right away.  It did seem there's a

2     period of time where he obviously delays.  But ultimately,

3     to get the picture, he has to make the promised

4     contribution.

5              And so he --

6              THE COURT:  Well, half of it.

7              MS. WASSERMAN:  Well, he stiffs the RNC.  He

8     cheats them out of $25,000 and lies to them about that,

9     claims that Mr. Wead didn't want to pay.  And then he keeps

10    the rest of the money for himself.

11             So I don't think -- it seems to the United States

12    that the plan from the beginning was to make this

13    contribution, that he thinks maybe he can get away with

14    keeping the money; and in the end, he makes the

15    contribution.  I'm not sure that that's either aggravating

16    or mitigating.  I just think the facts are what the facts

17    are.

18             Ultimately, the jury found him guilty.  I think it

19    suggests that Mr. Benton clearly knew what he was doing was

20    illegal.  And he tried not to do it because he knew it was

21    illegal, and then ultimately made the choice to do it

22    anyway.

23             The Court might recall, around the same time that

24    he ultimately makes the contribution, that's when the story

25    breaks for the *Telegraph*, which had happened just a few days

1      before that when he's in contact with the *Telegraph*

2      reporter.

3              So Mr. Benton, I mean, ultimately at the end of

4      the day, it seems clear.  He's just post-sentencing.  He's

5      on probation for his last offense.  Mr. Benton knows this is

6      illegal.  He's trying to kind of, you know -- he is agreeing

7      to do it and then he ultimately goes through with it.

8              That seems to be the aggravating factor here, is

9      that he clearly knows what he's doing.  He knows what he's

10     doing is wrong.  He does it anyway.  And days after he's

11     sentenced on his last criminal case, which just shows that

12     what happened last time did nothing to deter his conduct.

13             THE COURT:  Thank you, Ms. Wasserman.

14             Mr. Stolarz, do you wish to be heard on the

15     application of the factors set forth in 3553(a), request a

16     variance or otherwise make a sentencing recommendation?

17             MR. STOLARZ:  Yes, we do, your Honor.

18             THE COURT:  Obviously, I'd be interested in your

19     thoughts on the same questions there.

20             MR. STOLARZ:  Sure.

21             I have that in my allocution.  I'll be happy to

22     address that.

23             THE COURT:  Great.

24             MR. STOLARZ:  I will state, though, just because

25     it's me, as a former public defender, I take offense that my

1    nonwhite-collar defendants don't have families, including a

2    venireperson who we saw in this exact courtroom, and

3    letters.

4         But yes.  I do frequently get more letters in

5    white-collar cases, but I care just as much for the family

6    members of my nonwhite-collar defendants.

7         Your Honor, a noncustodial sentence is appropriate

8    here for a number of reasons.  First, his personal financial

9    and family situation.  From the high-flying political

10    operative that they alleged him to be to now delivering food

11    for DoorDash, if he's given a custodial sentence, he will

12    have to break the lease he is in and move his wife and

13    daughter in with a family member.  The letters also showed a

14    very close bond with his 12-year-old daughter, who's at a

15    critical age for her development.

16         Number two is his personal medical situation.  You

17    saw the letter from his doctor.  There's a serious medical

18    condition related to his diabetes.  He has been hospitalized

19    many times and the doctor has serious concerns about him

20    being in prison, being able to manage his medication.  I've

21    had many clients in this exact scenario where they have

22    trouble unless they're at the one in Rochester attached to

23    the Mayo Clinic.  There's a real challenge with getting the

24    kind of medications he needs.  The doctor referenced

25    concerns about renal failure and those types of things, and

1    I think that's real.

2         The many letters from his family and friends,

3    including from Senator Paul and Congressman Paul and his

4    family, I believe show who he really is.  And the impact of

5    the punishment on his daughter was particularly stark in the

6    letters, including, as you saw, she's already been taunted

7    and bullied in the schoolyard because someone went on Google

8    with Mr. Benton, and he's incredibly easy to Google and has

9    been vilified in the press.  That public shame is real.

10   He's a sort of pariah.  And that should come into play with

11   your Honor's decision.

12        Regarding the misdemeanor, I still wish the

13   package that he would have purchased would have been five

14   bucks cheaper, because I would have made the argument that a

15   conspiracy to commit a misdemeanor is a misdemeanor and I

16   would have also argued to you that the 1519s, the subject of

17   which are a misdemeanor -- I would have loved to make that

18   argument.  The one on 1519 may have been a little creative,

19   but I would have loved to have made it, because I do believe

20   that all of this -- I'm not going to say it's much ado about

21   nothing, because we're here.  We have multiple prosecutors,

22   multiple agents, multiple everything.  But $25,000 in a

23   $676 million campaign.

24        And to your point about what practically happened

25   here, I have always believed that if he wanted to influence

1     a Trump campaign, he would have taken 80,000 of the 100, 90

2     or a big number and sent that off, if he truly wanted

3     Mr. Trump elected.

4             But I actually think that what happened is -- and

5     the timing of the sentencing actually shows mitigation,

6     because he was worried about going to prison in the other

7     case, had this matter.  And the money was for him, not for

8     Mr. Trump.  And you're right:  If they would have left him

9     alone and never emailed him, he never would have made the

10    contribution.

11            But even though he did, it is still $25,000.  And

12    I sort of begged pretrial for a misdemeanor because I said:

13    One dollar off.  We can't bargain here?

14            But no.  Here we are.

15            And then there's some other facts.  They don't

16    want to argue facts.  But there's no quid pro quo, ever.

17    You heard the woman from the RNC say it's a five-second

18    meet-and-greet, shake your hand and go.  Even the stuff from

19    Doug Wead, which you excluded.  Doug Wead said he told the

20    FBI about this guy that he was bringing over.  Again, it

21    gets into the mindset of Mr. Benton.

22            But it is clear now that he's at his base; he's at

23    his bottom, as I say, delivering food for DoorDash, taking

24    correspondence courses.  He is clearly at the lowest of the

25    low.  And the court of public opinion, if you go on Twitter

1    or Google, you'll see exactly what people think about him.

2         The variance I referenced earlier, I do believe

3    that one -- even the PSR, done by an excellent probation

4    officer, one of my favorites, said that the noncustodial

5    sentence to which he was pardoned got him three points.

6         I do believe that doesn't feel right.  It feels

7    like it's overrepresenting his criminal history.

8         And that's why we believe in this matter a

9    noncustodial sentence, home confinement, direct designation

10   to a halfway house, which I've seen, probation with

11   conditions.  We would request no fine.  The Government asked

12   for 75,000, which is absurd.  It's a lot of DoorDash

13   deliveries.  But we would ask for no fine.

14        We would also, as referenced, ask for bail pending

15   appeal.  I will defer to my arguments in the papers.  It's

16   the arguments I've raised in the post-trial motions, which

17   your Honor dealt with, and just defer to that.  I would ask

18   for bail pending appeal.

19        If your Honor does decide to issue a custodial

20   sentence, I'd ask for an ability to self-report as well as a

21   sort of modification to that, which is his daughter's

22   finishing their school year in June.  And if he were to

23   self -- have to self-report earlier, they'd have to move her

24   in the middle, like right before the school year ends.  We'd

25   ask that that be pushed out until June, if possible.  We

1    understand the BOP may ultimately just tell you no.  But

2    we'd ask that that be --

3                THE COURT:  Do you have a specific date?

4                MR. STOLARZ:  I can find that.  Yes.

5                Do you know?

6                June 1st would be sufficient, I believe.

7                That would enable him to help move his wife and

8    daughter to the family member and not have to interrupt her

9    school year.

10               We still do believe, though, a noncustodial

11   sentence is appropriate here.  And we defer to the arguments

12   in the papers, as well as Mr. Benton would like to speak to

13   you at the appropriate time.

14               THE COURT:  Mr. Benton, you have the right to make

15   a statement or present any information to mitigate the

16   sentence.  Would you like to say anything that you would

17   like me to consider before imposing sentence?

18               THE DEFENDANT:  Yes, sir.

19               Sir, I can tell that you read my letter, and I'm

20   grateful for that.  Thank you.

21               I'm also so grateful for all my friends and family

22   that have stood by me and written to you on my behalf.  And

23   I'm just so thankful for my wife, Valerie, and I'm just so

24   sorry for everything that she's been through, through all

25   this for -- the past eight years have just been such a

1    struggle.

2            I always try to look to God's plan and try to

3    figure out why this is in my life.  And that requires

4    looking into myself.

5            And, you know, I was certainly a prideful person

6    before.  Seven, eight years ago, I was a prideful person and

7    I was scared to admit when I was in over my head, scared to

8    admit when I didn't understand things sometimes.  And I was

9    always moving too fast.

10           And, you know, I really tried to lean into my

11   punishment when I received my punishment in 2016, 2017,

12   2018.  I really tried to lean in and look inside and to

13   become a better person, a less prideful person.  And I think

14   I stand here before you seven years later so much more

15   humble, so much kinder.  It's just -- I just look back and I

16   just feel like seven years ago was just so long, and I've

17   come so far and changed so much.

18           And, you know, I've -- I took correspondence

19   classes.  I've worked hard to move out of politics.  I've

20   lost my taste for spin and for -- I want to be a truthful

21   person and I want to help build positive things.  And, you

22   know, my family and I, we're -- we just want to be together.

23   We're flawed, but we have so much love.

24           And I just -- I just know that if you're merciful

25   to me today, sir, that I can continue to become a better

1   person and that I can be a positive impact.  I can continue

2   to raise my daughter to love the Lord and love her country.

3   I know that I can find a way to sustain my family.

4          It'll be hard to rebuild again.  I rebuilt once.

5   I've been torn back down and reduced to nothing.  We have no

6   home; we have no savings; we have no money; we have no -- we

7   have nothing.  But I know that I can sustain.  And I can

8   find a way and maybe I can help other people just a little

9   bit.  Maybe I can help other people build a business or

10  build their dreams.  I know I can be productive.  I really

11  just struggle to see what the purpose would be in locking me

12  away.

13         I humbly ask for your mercy, sir.

14         THE COURT:  Thank you, sir.

15         We'll take about a five-minute break.

16         (Thereupon a recess was taken, after which the

17  following proceedings were had:)

18         THE COURT:  Let me first address the merger issue.

19         The defense has argued that Counts 4 through 6

20  should be merged under the multiplicity doctrine because

21  they charge multiple offenses for the same transaction.

22         Specifically, the defense claims that the

23  indictment charges Mr. Benton with making one false entry on

24  October 27, 2016.  And the defense notes that Counts 4

25  through 6 contain overlapping dollar amounts, two of which

1    make up the aggregate amount listed in the other.

2          The Government responds that Mr. Benton caused

3    three political committees to file three false reports to

4    the FEC on three different dates, and because Section 1519

5    criminalizes each falsification of a record, he may be

6    charged with three separate violations of the statute.

7          I deferred the defense's argument about

8    multiplicity to sentencing to see what counts, if any, the

9    jury would convict Mr. Benton on following the guidance in

10   *United States versus Hubbell*, 177 F.3d 11, Page 14, from the

11   D.C. Circuit in 1999.

12          In determining multiplicity, I look to the plain

13   language of 1519 to determine what act the legislature

14   intended as the, quote, "unit of prosecution" under the

15   statute.  That's from *United States versus Johnson*, 4 F.4th

16   116 at Page 120 from the D.C. Circuit, 2021.

17          Courts presume a single violation is intended

18   unless Congress clearly expresses its intention to allow

19   multiple offenses under the statute, according to *United*

20   *States versus McLaughlin*, 164 F.3d 1, Page 15, from the D.C.

21   circuit in 1998.

22          As described, Section 1519 criminalizes the making

23   of a false entry in any record.  This suggests that the unit

24   of prosecution is each falsification of a record.

25          Other courts in this district and in other

1    districts agree.  And I'm looking to *United States versus*

2    *Sanford*, 859 F.Supp.2d 102 from this court in 2012; *United*

3    *States Diana Shipping Services*, 985 F.Supp.2d 79 from EDVA

4    in 2013.

5    Here, the indictment alleges three separate

6    records violations in Counts 4, 5 and 6.  And the Defendant

7    was convicted on each of these counts.

8    The different dates, amounts and receipts of the

9    funds suggest the Government is correct that the Defendant

10    violated 1519 three separate times.

11    Count 4 states that the Defendant caused Political

12    Committee B to falsely record that he contributed $22,300 on

13    December 8, 2016.

14    Count 5 states that the Defendant caused Political

15    Committee C to falsely record that the Defendant contributed

16    $25,000 on March 25, 2017.

17    And Count 6 states that he caused Political

18    Committee A to falsely record that he contributed $2,700 on

19    July 20, 2017.

20    I think there was also sufficient evidence before

21    the jury for them to find the Defendant knew of the

22    different filings.  This certainly wasn't a focus of the

23    trial, but I do think there was evidence both in the

24    leaflets and other information provided to the Defendant by

25    the various committees and just in the Defendant's clear

1    sophistication in these matters for the jury to be able to

2    find beyond a reasonable doubt that he knowingly caused each

3    of these three false records.  I therefore decline to merge

4    the claims.

5          And I also note, as I said, that this issue has no

6    impact on my ultimate sentence in this case because the

7    guideline range is not driven by the individual counts and

8    there's no additional punishment for the extra counts.

9          Mr. Benton, if you could approach the podium, sir.

10         Sir, I've assessed the particular facts of this

11   case in light of the relevant 3553(a) factors, and I now

12   want to -- including the sentencing guidelines, and I now

13   want to provide remarks for the record and for you, sir,

14   about my considerations in regard to the nature of the

15   offense and your history and characteristics.

16         You were convicted by a jury of acting as a straw

17   donor by funneling $25,000 from a Russian businessman into a

18   presidential election campaign by making the campaign

19   contribution in your name.

20         You also caused multiple false filings to the FEC

21   that listed yourself rather than him as the source of those

22   funds.

23         I do believe your actions undermine the rule of

24   law in this country.  They did undermine the integrity of

25   the presidential election and the transparency that Congress

1    has mandated in the Election Act.

2              To be sure, as your attorney points out, this

3    individual contribution was rather small, given the total

4    scope of monies raised by the presidential candidates.  But

5    I think $25,000 is actually quite a lot for an individual

6    presidential contribution, and I imagine it would be in the

7    highest percentile of all individual contributions made in

8    that election cycle.

9              Therefore, I reject any suggestion that this was

10   some sort of *de minimis* violation.  I understand

11   Mr. Stolarz's point about being one dollar away from a

12   misdemeanor; and obviously, a lot turned on that here.  But

13   I think ultimately the sentencing guidelines take into

14   account that you're in a lower bracket.  You certainly would

15   have been facing a higher guideline range had you delivered

16   the true $50,000, which you had promised to the campaign.

17   Had you actually delivered that, I think you would be facing

18   more time.

19             And as Ms. Wasserman points out, I think Counts 4

20   through 6 at the very least would remain felonies regardless

21   of whether it was $24,000 or $25,000.

22             Sir, I reject any notion that you didn't know what

23   you were doing was wrong.  While I appreciated many of your

24   comments in your letter, I also detected a suggestion that

25   you didn't realize what you were doing was wrong.  And I

1    just found that completely unbelievable under the

2    circumstances.

3            You emailed the Trump campaign that you have,

4    quote, "a friend who spends most of his time in the

5    Caribbean who has caught the Trump bug in a big way."  Of

6    course, none of that was true.  He wasn't your friend.

7    There's no evidence he spends a lot of time in the

8    Caribbean.  And as your attorney was at pains to show at

9    trial, Trump was far from his top choice to meet with.

10           Now, the statement certainly wasn't criminal, but

11   it is illustrative of how you were covering up the truth of

12   the situation from the outset.  You made out an invoice for

13   Mr. Vasilenko for $100,000 for, quote, "consulting services,

14   charity awards dinner," closed quote.

15           Of course, you did little to no consulting for

16   that dinner, and you knew full well that was just papering

17   the file for a very different purpose.  You repeatedly

18   avoided providing Mr. Vasilenko's, quote-unquote, "vitals"

19   to the RNC.  To be sure, you eventually provided them, but

20   only at the last minute and only after repeated requests.

21           I think the obvious conclusion to be drawn from

22   this is that you knew it would be problematic if people

23   realized what was going on.

24           And then, after the photo op, you repeatedly made

25   false excuses for your failure to wire the promised money to

1    the campaign.  You claimed you literally dropped a check in

2    the mail when you didn't.  Then you claimed that you were

3    going to wire the money, but you never did.  It was only

4    after repeated requests from the campaign for the promised

5    money and repeated requests from Mr. Wead and Mr. Vasilenko

6    for the photos that you sent payment to the campaign.

7          Sir, I will tell you frankly, it is difficult for

8    me to read your letter talking about your integrity and your

9    faith when I see this clear pattern of deception.

10          Having said that, we are more than just a

11    collection of our faults.  And the information submitted on

12    your behalf shows that you have many things going for you.

13    Your family and your friends have written movingly of your

14    character, your dedication to your loved ones.  I thought

15    your wife's letter was especially touching in how it

16    described you as a man and the impact this case has had on

17    your whole family.

18          I've considered the thoughtful letters written by

19    Senator Paul and Congressmen Paul, who both speak warmly in

20    your support.  The letters of your other family and friends

21    are a testament to your kindness and decency and the many

22    positive ways you contribute to our society.

23          I've also considered the letter from your doctor,

24    who describes your healthcare needs.

25          Frankly, these letters and the mitigating factors

1    here would justify a significant variance, likely a

2    noncustodial sentence, but for your prior conviction.  I

3    cannot ignore the fact that you were engaging in the

4    misconduct here during the same time you were being

5    sentenced for another conspiracy to falsify campaign

6    contributions.

7           You told the district judge there that, quote, "My

8    family is paying such a huge price, and I would never have

9    done anything on purpose if I would have known I would

10   subject them to this kind of pain."

11          You also suggested that your days as a political

12   strategist were done and that if the judge didn't send you

13   to prison you could, quote, "hack out a humble living as a

14   copywriter, keep my family afloat and continue to raise my

15   daughter to love the Lord and love her country," closed

16   quote.

17          And the judge gave you a real break:  no jail

18   time, even though the Government asked for more than two

19   years' incarceration.  It's shocking to me that you would

20   take that break, the mercy you sought from the judge and

21   received, and turn around and only weeks later mail in this

22   false campaign contribution here.

23          You knew the law.  You knew what you were doing

24   was wrong.  And you squandered that opportunity given to you

25   in that last case.

1          I'm sorry for the hardship this sentence causes to

2     your wife and daughter.  I recognize the financial hardship

3     that this whole case has had on you all, and I'm sorry for

4     the health implications this may have for you.  But those

5     are consequences of your choices on you and others.

6          I think the Government's sentencing request is

7     entirely reasonable under the circumstances, but I'm mindful

8     that the sentence I impose must be sufficient but not

9     greater than necessary to carry out the purposes of

10    sentencing.  In light of all of the record here, including

11    your undeniable good reputation in the community, the

12    powerful letters and your support and the fact that you have

13    never previously served time in prison, I think a low-end

14    sentence is appropriate.

15         I reached this decision fully cognizant that the

16    sentencing guidelines are merely advisory.

17         I've also considered the parties' arguments on the

18    fine.  I understand the Government's position there, and I

19    agree with them and Probation that you have not shown you

20    don't have any ability to pay a fine.  But I think a lower

21    fine is appropriate than the one they suggest -- or that the

22    Government suggests.

23         Sir, I know this has been a difficult time for you

24    and your family and that there's a lot here that is

25    humiliating and discouraging.  It's clear to me, however,

1    that there's more to you than the facts contained in the

2    indictment and that you have much to be proud of despite

3    your actions here.

4          I, too, am a man of faith, and I think we are all

5    flawed humans who by God's grace can be more than the sum of

6    our mistakes.

7          Regardless of how you feel now, you do not need to

8    be defined by this chapter in your life.  You obviously have

9    an amazing wife and daughter and other friends and family

10   who care about you and depend upon you.  Every day is a new

11   day, and I'm confident that you still have a lot to

12   contribute to our community.

13         I will now impose the sentence.

14         Pursuant to the Sentencing Reform Act of 1984, and

15   in consideration of the provisions of 18 USC 3553 as well as

16   the sentencing guidelines, which are advisory, it is the

17   judgment of the Court that you, Jesse Benton, are hereby

18   sentenced to a term of 18 months' incarceration on Counts 1

19   through 6.  You are further sentenced to serve a 24-month

20   term of supervised release as to Counts 1 through 6.  All

21   terms of incarceration are to run concurrently and all terms

22   of supervised release are to run concurrently.

23         In addition, you are ordered to pay a special

24   assessment of $600 in accordance with 18 USC 3013 and to pay

25   a fine of $10,000.

1          This $600 special assessment is immediately

2     payable to the Clerk of the Court for the U.S. District

3     Court for the District of Columbia.

4          While on supervision, you shall abide by the

5     following mandatory conditions as well as the standard

6     conditions of supervision listed in the most recent version

7     of Judgment in a Criminal Case Form AO 245B, which are

8     imposed to establish the basic expectations of your conduct

9     while on supervision.

10         The mandatory conditions include:  You must not

11    commit another federal, state or local crime; you must not

12    unlawfully possess a controlled substance; you must refrain

13    from any unlawful use of a controlled substance.  I am

14    waiving the drug testing requirement.  You must cooperate in

15    the collection of DNA as directed by the probation office.

16         You shall also abide by the following special

17    conditions:  First, you must provide the probation officer

18    access to any requested financial information and authorize

19    the release of any financial information.  The probation

20    office may share financial information with the United

21    States Attorney's Office.  You must provide the probation

22    officer access to any requested financial information and

23    authorize the release of any financial information.  The

24    probation office may share financial information with the

25    United States Attorney's Office.

1    You must pay the financial penalty in accordance

2    with the schedule of payments sheet of the judgment form.

3    You must also notify the Court of any changes in your

4    economic circumstances that might affect your ability to pay

5    this financial penalty.

6    You must pay the balance of any fine owed at a

7    rate of no less than $200 each month while on supervised

8    release.

9    This requirement begins within 30 days of your

10    release from custody.

11    The financial obligations are payable to the Clerk

12    of the Court for the U.S. District Court for the District of

13    Columbia.  Within 30 days of any change of address, you

14    shall notify the Clerk of the Court of the change until such

15    time as this financial obligation is paid in full.

16    The probation office shall release the presentence

17    investigation report to all appropriate agencies, which

18    includes the probation office in the approved district of

19    residence, in order to execute the sentence of the Court.

20    Treatment agencies shall return the presentence report to

21    the probation office upon the Defendant's completion or

22    termination from treatment.

23    Pursuant to 18 USC 3742, you have the right to

24    appeal the sentence imposed by this Court if the period of

25    imprisonment is longer than the statutory maximum or the

1    sentence departs upward from the applicable sentencing

2    guideline range.  If you choose to appeal, you must file any

3    appeal within 14 days after the Court enters judgment.

4             As defined in 28 USC 2255, you also have the right

5    to challenge the conviction entered or sentence imposed if

6    new and currently unavailable information becomes available

7    to you or on a claim that you received ineffective

8    assistance of counsel in trial or in connection with

9    sentencing.

10            If you are unable to afford the cost of an appeal,

11   you may request permission from the Court to file an appeal

12   without cost to you.

13            Pursuant to *United States versus Hunter*, 809 F.3d

14   677, from the D.C. Circuit in 2016, are there any objections

15   to the sentence imposed that are not already noted on the

16   record?

17            Ms. Wasserman?

18            MS. WASSERMAN:  No, your Honor.

19            THE COURT:  Mr. Stolarz?

20            MR. STOLARZ:  None other than what have already

21   been previously noted on the record.

22            THE COURT:  You may have a seat, sir.

23            Ms. Wasserman, what's the Government's position on

24   the Defendant's request for release pending appeal?

25            MS. WASSERMAN:  We object to release pending

1    appeal.  We do not object to the self-surrender date.  We'd

2    defer to the Court regarding the June self-surrender date.

3    But we do object to release pending appeal.

4         For that to apply under 3143, the Court would have

5    to find not only that by clear and convincing evidence that

6    he's not likely to flee or pose a danger to the safety of

7    any other person, but the Court would also have to find that

8    the appeal is not for the purpose of delay and that it

9    raises a substantial question of law or fact likely to

10    result in reversal, an order for a new trial, a sentence

11    that does not include a term of imprisonment or a reduced

12    sentence to a term of imprisonment less than the total of

13    the time already served plus the expected duration of the

14    appeal possess.

15         He bears the burden of proof of establishing those

16    factors.

17         Again, I would note that the law presumes that his

18    conviction is valid.  That's *United States versus Perholtz*,

19    P-E-R-H-O-L-T-Z.

20         You know, the Defendant appears to rest on his --

21    it's his burden.  And he rests his request on the motion --

22    the issues that he raised in his motion for a new trial.

23    The Court dealt with those already.  There was nothing in

24    those motions that suggests that the Court got this wrong

25    such that the Court should find that the factors that are

1    required under 3143 are met.

2            As I mentioned, the United States does not object

3    to a self-surrender date.  But we do not believe that he has

4    met his burden and that the statutory factors apply.

5            THE COURT:  Do you have a position as to whether

6    the Defendant poses a danger to the community?  And I don't

7    necessarily mean in terms of violence.  But is your

8    understanding that that is a broader term that could relate

9    to reoffending?  And, if so, do you think that is shown

10   here?

11           MS. WASSERMAN:  So I do think that the danger -- I

12   do think the danger-to-the-community prong is broader than

13   violent crime.

14           You know, it's interesting.  We sort of can trace

15   his professional career up to certain points.  I'm not

16   really sure what the Defendant is doing now.  We do,

17   obviously, given the prior conduct and his repeated

18   willingness to lie and skirt the law, have continuing

19   concerns.

20           But I don't have a specific concern to raise to

21   the Court because I honestly do not know what the

22   Defendant -- you know, he said he was working for DoorDash.

23   As of 2021, he was apparently the president of some

24   nonprofit.  And I don't really know what he's doing now.

25   So...

```
 1              THE COURT:  Mr. Stolarz, do you wish to be heard
 2    briefly in rebuttal?
 3              MR. STOLARZ:  Thank you, your Honor.
 4              As to that latter point, I do believe there's
 5    absolutely no question he's a danger to the community, even
 6    in the broadest sense, unless he's grabbing some food out of
 7    a DoorDash order.  He is down to his bottom.  As I said,
 8    with the sentence, he'll have to move his family in with
 9    family members.  He's not going to reoffend and he's
10    obviously no danger to flee or anything like that.
11              We do -- you, Judge, you don't have to admit on
12    the record that you were wrong.  You were well-reasoned, as
13    you always are.  But we believe that the Circuit should take
14    a look at this.  In particular, the exclusion of Doug Wead
15    as a deceased Co-Defendant, I think that's underdeveloped
16    and yet overdeveloped in the one case.  And I do believe
17    that I would -- that the Circuit should look at that to see
18    whether that was error.
19              And then I still -- there is an issue regarding
20    his testimony and the order from your Honor about the
21    Telegraph.  There is legitimate, real issues on appeal that
22    we would like to pursue.  And I do think we've met the
23    factors.
24              That being said, you do not have to admit that you
25    were wrong.  You just have to admit that they are reasonable
```

1    issues that are not purposeful of delay, which they're not,

2    and that they have a legitimate basis, which we believe they

3    do.

4              THE COURT:  As the parties state, release pending

5    appeal is governed by 18 USC 3143(b)(1), which instructs the

6    Court to order that a person found guilty and sentenced to

7    imprisonment be detained unless certain conditions are met.

8    And as Ms. Wasserman points out, this is the Defendant's

9    burden here.

10             First, the Court must find by clear and convincing

11   evidence that the person is not likely to flee or pose a

12   danger to the safety of another person in the community if

13   released.

14             Second, the Court must find that the appeal is not

15   for the purpose of delay and raises a substantial question

16   of law or fact likely to result in reversal, an order for a

17   new trial, a sentence not including imprisonment or a

18   reduced sentence.

19             Actually, I think that the first prong is closer

20   than Mr. Stolarz suggests.  As I say, I think my

21   understanding -- well, while I certainly don't think there's

22   any suggestion that the Defendant poses a danger of violence

23   in the community, at least in the context of the Bail Reform

24   Act, the D.C. Circuit has interpreted similar language about

25   endangering the community to extend beyond those who pose a

1    threat of committing violence.

2          In *United States versus Hale-Cusanelli*, 3 F.4th

3    44, from the D.C. Circuit in 2021, the Circuit explained

4    that defendants have been detained pretrial even when the

5    charged offense does not involve violence when, for example,

6    the person is a repeat offender.  And I'm looking to Page

7    456 for that.

8          Given that the Defendant committed this offense

9    while he was on probation for a prior campaign finance

10   conviction, the Court is not confident that he wouldn't

11   reoffend while on release pending appeal in this case.

12         He certainly does appear to have complied with

13   conditions of pre- and post-trial release here.  But I am

14   concerned about the posture of the crime here in relation to

15   his prior conviction.

16         But even if danger to the community in 3143(b) is

17   not interpreted as I think it is and comparable to the Bail

18   Reform Act, the Defendant's motion fails for an independent

19   reason.  The Court doubts the Defendant will be able to

20   raise a substantial question of law or fact likely to result

21   in reversal, an order for a new trial, a sentence not

22   including imprisonment or a reduced sentence.  The Defendant

23   indicates that he plans to challenge various evidentiary

24   rulings made by this Court, including the admissibility of

25   his prior conviction, the exclusion of his deceased

1        Co-Defendant's statements and a ruling that the Government

2        could cross-examine the Defendant about a news article.

3               Of course, the Court has rejected these arguments

4        twice, both at the pretrial stage and in the motion for

5        acquittal or for a new trial.

6               For the reasons stated in my memorandum opinion at

7        ECF 70, the Court does not think that any of these arguments

8        present a substantial question of law or fact likely to

9        result in reversal, an order for a new trial or a different

10       sentence.

11              And I certainly take Mr. Stolarz's point that it's

12       kind of an awkward situation for me to be in, considering

13       whether or not I was wrong before.  And I understand that it

14       is a different standard at this point, and I wouldn't

15       necessarily need to be saying that I'm wrong to say it's a

16       close question.  But having considered Mr. Stolarz's

17       thoughtful arguments in his motion and reconsidered my

18       rulings, I don't see a real likelihood of success here.

19              For all those reasons, I'll deny the Defendant's

20       motion for release pending appeal.

21              I will allow the Defendant to self-report and I'll

22       direct the Defendant to report to the Bureau of Prisons on

23       June 1st, 2023, assuming that's not a Sunday.  Let me just

24       check.

25              Ms. Baker?

 1                THE PROBATION OFFICER:  Your Honor, we would

 2     request that the Court specifically state "on or after,"

 3     because we don't know for sure whether BOP will be able to

 4     honor that specific date.

 5                THE COURT:  Thank you.

 6                So I'll amend that to take account of Ms. Baker's

 7     wise point.  So no earlier than June 1st, 2023, for

 8     self-reporting.

 9                Ms. Wasserman, anything further for the

10     Government?

11                MS. WASSERMAN:  No, your Honor.

12                THE COURT:  And Mr. Stolarz?

13                MR. STOLARZ:  No, your Honor.  Thank you.

14                THE COURT:  Good luck to you, Mr. Benton.

15                (Proceedings concluded.)

16

17

18

19

20

21

22

23

24

25

1                          **<u>CERTIFICATE</u>**

2

3              I, LISA EDWARDS, RDR, CRR, do hereby

4     certify that the foregoing constitutes a true and accurate

5     transcript of my stenographic notes, and is a full, true,

6     and complete transcript of the proceedings produced to the

7     best of my ability.

8

9

10             Dated this 15th day of June, 2023.

11

12             <u>/s/ Lisa Edwards, RDR, CRR</u>
               Official Court Reporter
13             United States District Court for the
                 District of Columbia
14             333 Constitution Avenue, Northwest
               Washington, D.C. 20001
15             (202) 354-3269

16

17

18

19

20

21

22

23

24

25

**$**

**$10,000** [1] - 49:25
**$100** [1] - 23:7
**$100,000** [1] - 45:13
**$15,000** [1] - 8:9
**$2,700** [2] - 15:24, 42:18
**$200** [2] - 23:9, 51:7
**$22,300** [1] - 42:12
**$24,000** [1] - 44:21
**$25,000** [12] - 3:22, 21:3, 29:17, 30:12, 30:13, 32:8, 35:22, 36:11, 42:16, 43:17, 44:5, 44:21
**$250,000** [1] - 23:4
**$40,000** [1] - 8:10
**$400** [1] - 23:11
**$5,000** [2] - 12:9, 25:6
**$50,000** [2] - 29:19, 44:16
**$600** [4] - 23:12, 25:7, 49:24, 50:1
**$676** [1] - 35:23
**$7,500** [1] - 23:21
**$75,000** [1] - 23:21

**/**

**/s** [1] - 60:12

**1**

**1** [6] - 8:1, 8:4, 30:17, 41:20, 49:18, 49:20
**100** [2] - 12:10, 36:1
**1000** [1] - 2:4
**102** [1] - 42:2
**10:10** [1] - 1:7
**10th** [1] - 5:17
**11** [1] - 41:10
**116** [1] - 41:16
**12-year-old** [1] - 34:14
**120** [1] - 41:16
**1301** [1] - 1:19
**1331** [1] - 1:22
**14** [6] - 8:16, 9:7, 22:19, 22:22, 41:10, 52:3
**15** [1] - 41:20
**1519** [11] - 4:3, 14:13, 30:7, 30:8, 30:9, 30:16, 35:18, 41:4, 41:13, 41:22, 42:10

**1519s** [1] - 35:16
**15th** [1] - 60:10
**164** [1] - 41:20
**17** [1] - 1:6
**177** [1] - 41:10
**18** [13] - 4:3, 5:12, 9:9, 22:16, 22:22, 23:8, 25:5, 25:12, 49:15, 49:18, 49:24, 51:23, 56:5
**1984** [1] - 49:14
**1998** [1] - 41:21
**1999** [1] - 41:11
**1st** [3] - 38:6, 58:23, 59:7

**2**

**2** [2] - 16:25, 30:11
**2,000** [1] - 12:11
**2,700** [2] - 10:17
**20** [4] - 8:3, 10:6, 27:4, 42:19
**20001** [3] - 2:4, 2:10, 60:14
**20005** [1] - 1:22
**2012** [1] - 42:2
**2013** [1] - 42:4
**2016** [7] - 10:9, 27:1, 27:2, 39:11, 40:24, 42:13, 52:14
**2017** [3] - 39:11, 42:16, 42:19
**2018** [1] - 39:12
**202** [2] - 2:11, 60:15
**2021** [3] - 41:16, 54:23, 57:3
**2023** [5] - 1:6, 5:17, 58:23, 59:7, 60:10
**20530** [2] - 1:16, 1:20
**21-00569** [1] - 1:3
**21-569** [1] - 3:2
**22,300** [1] - 10:16
**2255** [1] - 52:4
**24** [4] - 9:9, 22:16, 22:23, 25:6
**24-month** [2] - 28:24, 49:19
**245B** [1] - 50:7
**25** [3] - 10:16, 21:13, 42:16
**25,000** [5] - 10:12, 10:15, 10:19, 11:8, 29:20
**27** [1] - 40:24
**27th** [1] - 10:9
**28** [1] - 52:4
**2B1.1(b)(1)(C)** [1] - 8:11

**2C1.8** [1] - 8:5
**2C1.8(b)(1** [1] - 8:11
**2C1.8(b)(2)(A)** [1] - 8:15
**2d** [1] - 14:11

**3**

**3** [5] - 8:1, 8:4, 9:5, 30:11, 57:2
**30** [2] - 51:9, 51:13
**30109** [1] - 4:1
**30121** [1] - 3:23
**30122** [1] - 3:25
**3013** [2] - 23:8, 49:24
**3143** [2] - 53:4, 54:1
**3143(b** [1] - 57:16
**3143(b)(1** [1] - 56:5
**333** [2] - 2:9, 60:14
**34** [1] - 13:1
**354-3269** [2] - 2:11, 60:15
**3553** [2] - 24:21, 49:15
**3553(a** [3] - 25:4, 25:12, 26:5, 33:15, 43:11
**3553(a)** [1] - 5:12
**3742** [1] - 51:23

**4**

**4** [15] - 8:3, 10:3, 10:8, 10:17, 11:16, 11:24, 13:17, 22:15, 30:17, 40:19, 40:24, 41:15, 42:6, 42:11, 44:19
**40** [1] - 19:18
**44** [1] - 57:3
**456** [1] - 57:7

**5**

**5** [7] - 10:8, 11:14, 11:23, 13:17, 30:18, 42:6, 42:14
**52** [2] - 3:23, 3:25
**555** [1] - 1:15

**6**

**6** [16] - 8:3, 10:3, 10:9, 10:17, 11:14, 11:23, 13:17, 22:15, 30:18, 40:19, 40:25, 42:6, 42:17, 44:20,

49:19, 49:20
**60** [1] - 10:6
**6706** [1] - 2:10
**677** [1] - 52:14

**7**

**70** [1] - 58:7
**719** [4] - 14:11, 14:15, 14:16, 14:17
**728** [1] - 14:20
**729** [1] - 14:20
**75,000** [1] - 37:12
**79** [1] - 42:3
**799** [1] - 2:3

**8**

**8** [2] - 8:7, 42:13
**80,000** [1] - 36:1
**809** [1] - 52:13
**819** [1] - 14:15
**859** [1] - 42:2

**9**

**90** [1] - 36:1
**985** [3] - 14:11, 14:16, 42:3

**A**

**a.m** [1] - 1:7
**abide** [2] - 50:4, 50:16
**ability** [4] - 37:20, 48:20, 51:4, 60:7
**able** [5] - 31:21, 34:20, 43:1, 57:19, 59:3
**absolutely** [2] - 21:20, 55:5
**absurd** [1] - 37:12
**accept** [1] - 7:17
**accepted** [1] - 27:13
**access** [2] - 50:18, 50:22
**accompanied** [1] - 4:8
**accordance** [2] - 49:24, 51:1
**according** [1] - 41:19
**accordingly** [1] - 28:5
**account** [5] - 25:2, 31:16, 31:22, 44:14, 59:6

**accurate** [1] - 60:4
**accurately** [1] - 24:7
**accuse** [1] - 10:3
**acknowledge** [1] - 27:14
**acquittal** [1] - 58:5
**act** [2] - 30:3, 41:13
**Act** [4] - 44:1, 49:14, 56:24, 57:18
**acting** [1] - 43:16
**Action** [1] - 1:3
**actions** [5] - 26:24, 27:15, 28:14, 43:23, 49:3
**activity** [1] - 14:4
**actor** [3] - 15:19, 16:8, 19:25
**actual** [1] - 15:20
**add** [1] - 13:3
**added** [1] - 8:14
**addition** [2] - 25:21, 49:23
**additional** [2] - 10:19, 43:8
**address** [4] - 6:10, 33:22, 40:18, 51:13
**addressing** [1] - 14:22
**adequate** [1] - 25:18
**adjusted** [1] - 22:22
**administrative** [1] - 27:21
**admissibility** [1] - 57:24
**admit** [5] - 39:7, 39:8, 55:11, 55:24, 55:25
**ado** [1] - 35:20
**advisory** [4] - 7:23, 25:3, 48:16, 49:16
**affect** [1] - 51:4
**afford** [2] - 25:18, 52:10
**afloat** [1] - 47:14
**age** [1] - 34:15
**agencies** [2] - 51:17, 51:20
**Agent** [1] - 20:25
**agent** [1] - 21:6
**agents** [1] - 35:22
**aggravating** [5] - 5:5, 28:12, 29:25, 32:15, 33:8
**aggregate** [1] - 41:1
**ago** [2] - 39:6, 39:16
**agree** [6] - 13:22, 16:12, 17:4, 23:10, 42:1, 48:19
**agreeing** [1] - 33:6
**agreement** [1] - 30:2

**ahead** [3] - 9:16, 12:2, 13:6
**aid** [1] - 5:18
**alleged** [5] - 10:18, 12:15, 12:16, 34:10
**allegedly** [2] - 10:11
**alleges** [1] - 42:5
**allocution** [4] - 6:20, 7:2, 27:3, 33:21
**allow** [2] - 41:18, 58:21
**alone** [1] - 36:9
**amazing** [1] - 49:9
**amend** [1] - 59:6
**AMERICA** [1] - 1:3
**America** [1] - 3:2
**amount** [4] - 15:25, 30:10, 31:17, 41:1
**amounts** [4] - 21:11, 30:19, 40:25, 42:8
**analogy** [1] - 12:8
**analysis** [6] - 10:7, 13:8, 19:10, 22:12, 22:21
**answer** [1] - 21:6
**anticipate** [1] - 11:18
**anyway** [4] - 22:24, 27:8, 32:22, 33:10
**AO** [1] - 50:7
**apologies** [1] - 12:24
**apparent** [1] - 26:16
**appeal** [17] - 37:15, 37:18, 51:24, 52:2, 52:3, 52:10, 52:11, 52:24, 53:1, 53:3, 53:8, 53:14, 55:21, 56:5, 56:14, 57:11, 58:20
**appear** [1] - 57:12
**aPPEARANCES** [1] - 1:13
**APPEARANCES** [1] - 2:1
**applicable** [6] - 9:9, 22:3, 24:3, 24:13, 24:22, 52:1
**application** [2] - 26:5, 33:15
**applies** [2] - 5:3, 7:24
**apply** [2] - 53:4, 54:4
**appreciate** [2] - 9:23, 21:22
**appreciated** [1] - 44:23
**appreciation** [1] - 7:20
**approach** [2] - 7:6, 43:9
**appropriate** [8] -

10:2, 19:10, 34:7, 38:11, 38:13, 48:14, 48:21, 51:17
**appropriately** [4] - 9:20, 18:23, 19:5, 19:12
**approved** [1] - 51:18
**arc** [1] - 28:16
**arguably** [1] - 29:19
**argue** [1] - 36:16
**argued** [2] - 35:16, 40:19
**argument** [13] - 6:25, 7:3, 9:14, 11:13, 11:18, 11:23, 20:1, 21:22, 29:3, 29:5, 35:14, 35:18, 41:7
**arguments** [7] - 37:15, 37:16, 38:11, 48:17, 58:3, 58:7, 58:17
**article** [1] - 58:2
**assessed** [1] - 43:10
**assessment** [6] - 23:7, 23:11, 23:12, 25:7, 49:24, 50:1
**assistance** [1] - 52:8
**assuming** [1] - 58:23
**attached** [1] - 34:22
**attempt** [1] - 7:24
**attorney** [4] - 5:8, 7:9, 44:2, 45:8
**Attorney's** [2] - 50:21, 50:25
**ATTORNEY'S** [1] - 1:14
**authorize** [2] - 50:18, 50:23
**automatically** [1] - 10:23
**availability** [1] - 26:3
**available** [3] - 16:18, 25:3, 52:6
**Avenue** [3] - 1:19, 2:9, 60:14
**avoid** [1] - 25:25
**avoided** [1] - 45:18
**awards** [1] - 45:14
**aware** [3] - 16:8, 26:25, 27:5
**awkward** [1] - 58:12

## B

**background** [1] - 28:9
**bail** [2] - 37:14, 37:18
**Bail** [2] - 56:23, 57:17

**BAKER** [1] - 2:6
**Baker** [3] - 3:4, 7:20, 58:25
**Baker's** [2] - 22:25, 59:6
**balance** [1] - 51:6
**bank** [2] - 31:16, 31:22
**bargain** [1] - 36:13
**base** [3] - 8:7, 10:16, 36:22
**based** [10] - 5:3, 6:17, 9:7, 15:6, 18:10, 18:11, 18:13, 18:21, 19:6, 25:9
**basic** [1] - 50:8
**basis** [1] - 56:2
**bear** [1] - 24:25
**bears** [1] - 53:15
**become** [2] - 39:13, 39:25
**becomes** [1] - 52:6
**BEFORE** [1] - 1:10
**beforehand** [1] - 31:10
**begged** [1] - 36:12
**beginning** [3] - 20:8, 31:4, 32:12
**begins** [1] - 51:9
**behalf** [4] - 3:13, 26:23, 38:22, 46:12
**behavior** [1] - 4:21
**believes** [4] - 28:1, 28:10, 28:24, 30:17
**Benton** [28] - 3:3, 3:13, 3:17, 3:20, 4:15, 5:23, 7:6, 10:4, 13:25, 16:7, 27:1, 27:11, 28:7, 31:5, 31:12, 32:19, 33:3, 33:5, 35:8, 36:21, 38:12, 38:14, 40:23, 41:2, 41:9, 43:9, 49:17, 59:14
**BENTON** [1] - 1:6
**Benton's** [6] - 8:7, 9:3, 12:7, 13:10, 28:14, 28:20
**best** [2] - 31:9, 60:7
**better** [4] - 28:13, 39:13, 39:25
**between** [1] - 16:1
**beyond** [2] - 43:2, 56:25
**big** [5] - 27:18, 27:24, 28:17, 36:2, 45:5
**bit** [2] - 4:16, 40:9
**bond** [1] - 34:14
**book** [1] - 15:4

**BOP** [2] - 38:1, 59:3
**bottom** [3] - 11:13, 36:23, 55:7
**bracket** [1] - 44:14
**break** [6] - 28:4, 28:21, 34:12, 40:15, 47:17, 47:20
**breaks** [1] - 32:25
**BRIAN** [1] - 2:2
**Brian** [1] - 3:12
**bridge** [1] - 20:10
**brief** [4] - 12:9, 12:19, 12:20, 19:13
**briefing** [1] - 21:23
**briefly** [2] - 26:12, 55:2
**bringing** [1] - 36:20
**broader** [2] - 54:8, 54:12
**broadest** [1] - 55:6
**broken** [2] - 10:5, 10:15
**bucks** [1] - 35:14
**bug** [1] - 45:5
**build** [3] - 39:21, 40:9, 40:10
**bullied** [1] - 35:7
**burden** [4] - 53:15, 53:21, 54:4, 56:9
**Bureau** [1] - 58:22
**Burnett** [1] - 31:8
**business** [1] - 40:9
**businessman** [1] - 43:17
**BY** [1] - 2:7

## C

**calculate** [1] - 22:10
**calculated** [2] - 22:14, 22:20
**calculation** [5] - 7:23, 7:25, 8:17, 9:10, 22:2
**calculations** [1] - 8:25
**campaign** [18] - 15:24, 17:19, 27:22, 28:1, 28:21, 29:22, 35:23, 36:1, 43:18, 44:16, 45:3, 46:1, 46:4, 46:6, 47:5, 47:22, 57:9
**candidates** [1] - 44:4
**cannot** [1] - 47:3
**care** [2] - 34:5, 49:10
**career** [2] - 28:10, 54:15
**careful** [1] - 22:25

**Caribbean** [2] - 45:5, 45:8
**carry** [1] - 48:9
**Case** [2] - 3:2, 50:7
**case** [21] - 5:3, 5:9, 7:9, 7:21, 7:24, 10:8, 14:9, 17:10, 21:13, 24:9, 27:11, 33:11, 36:7, 43:6, 43:11, 46:16, 47:25, 48:3, 55:16, 57:11
**cases** [2] - 21:10, 26:17, 26:18, 26:22, 34:5
**categorization** [1] - 6:13
**Category** [1] - 9:6
**category** [1] - 9:8
**caught** [1] - 45:5
**caused** [7] - 17:1, 41:2, 42:11, 42:14, 42:17, 43:2, 43:20
**causes** [1] - 48:1
**causing** [4] - 3:21, 4:1, 14:1, 14:5
**certain** [3] - 15:25, 54:15, 56:7
**certainly** [11] - 18:6, 19:8, 19:24, 21:19, 39:5, 42:22, 44:14, 45:10, 56:21, 57:12, 58:11
**CERTIFICATE** [1] - 60:1
**certify** [1] - 60:4
**challenge** [3] - 34:23, 52:5, 57:23
**change** [2] - 51:13, 51:14
**changed** [1] - 39:17
**changes** [1] - 51:3
**chapter** [1] - 49:8
**character** [1] - 46:14
**characteristics** [2] - 25:23, 43:15
**charge** [2] - 10:14, 40:21
**charged** [9] - 16:25, 18:23, 18:25, 19:3, 19:6, 19:12, 20:9, 41:6, 57:5
**charges** [8] - 10:5, 10:15, 10:19, 12:8, 17:13, 20:14, 21:9, 40:23
**charity** [1] - 45:14
**cheaper** [1] - 35:14
**cheats** [1] - 32:8
**check** [2] - 46:1, 58:24

**choice** [2] - 32:21, 45:9
**choices** [3] - 26:24, 27:15, 48:5
**choose** [1] - 52:2
**chop** [2] - 11:9, 13:12
**chopped** [1] - 13:14
**chose** [1] - 27:7, 28:13
**chronology** [1] - 31:12
**circle** [1] - 21:18
**Circuit** [8] - 41:11, 41:16, 52:14, 55:13, 55:17, 56:24, 57:3
**circuit** [1] - 41:21
**circumstances** [6] - 23:18, 25:9, 25:22, 45:2, 48:7, 51:4
**cite** [1] - 14:16
**cited** [1] - 12:18
**claim** [2] - 14:13, 52:7
**claimed** [3] - 19:4, 46:1, 46:2
**claims** [4] - 21:16, 32:9, 40:22, 43:4
**Class** [1] - 23:16
**classes** [1] - 39:19
**clause** [2] - 14:13, 14:25
**clear** [10] - 16:15, 22:19, 27:11, 33:4, 36:22, 42:25, 46:9, 48:25, 53:5, 56:10
**clearly** [7] - 17:13, 28:7, 31:5, 32:19, 33:9, 36:24, 41:18
**Clerk** [3] - 50:2, 51:11, 51:14
**clerk** [1] - 8:22
**clerk's** [1] - 9:23
**client** [2] - 19:25, 20:18
**clients** [1] - 34:21
**Clinic** [1] - 34:23
**close** [2] - 34:14, 58:16
**closed** [2] - 45:14, 47:15
**closer** [1] - 56:19
**Co** [2] - 55:15, 58:1
**Co-Defendant** [1] - 55:15
**Co-Defendant's** [1] - 58:1
**cognizant** [1] - 48:15
**collar** [6] - 26:17, 26:18, 26:22, 34:1,

34:5, 34:6
**collect** [1] - 31:9
**collection** [2] - 46:11, 50:15
**COLUMBIA** [2] - 1:1, 1:15
**Columbia** [4] - 2:9, 50:3, 51:13, 60:13
**comments** [1] - 44:24
**Commission** [1] - 4:2
**commit** [2] - 35:15, 50:11
**commits** [1] - 31:18
**committed** [2] - 4:19, 57:8
**Committee** [3] - 42:12, 42:15, 42:18
**committee** [11] - 3:22, 3:25, 15:17, 16:7, 16:9, 16:10, 16:16, 16:19, 17:20, 18:7
**committees** [14] - 11:2, 11:8, 12:10, 14:2, 14:5, 15:12, 16:2, 17:2, 17:11, 17:18, 18:9, 41:3, 42:25
**committing** [1] - 57:1
**common** [1] - 10:20
**communities** [1] - 26:21
**community** [10] - 23:19, 48:11, 49:12, 54:6, 54:12, 55:5, 56:12, 56:23, 56:25, 57:16
**comparable** [1] - 57:17
**complete** [1] - 60:6
**completely** [2] - 17:19, 45:1
**completion** [1] - 51:21
**complicated** [1] - 22:12
**complied** [1] - 57:12
**comply** [1] - 33:1
**concern** [1] - 54:20
**concerned** [1] - 57:14
**concerns** [3] - 34:19, 34:25, 54:19
**concluded** [1] - 59:15
**conclusion** [1] - 45:21

**concurrently** [2] - 49:21, 49:22
**condition** [2] - 23:17, 34:18
**conditions** [7] - 37:11, 50:5, 50:6, 50:10, 50:17, 56:7, 57:13
**conduct** [9] - 25:19, 26:2, 27:1, 27:6, 27:8, 27:12, 33:12, 50:8, 54:17
**confident** [2] - 49:11, 57:10
**confinement** [1] - 37:9
**confirm** [1] - 29:6
**Congress** [5] - 5:11, 12:12, 25:12, 41:18, 43:25
**Congressman** [1] - 35:3
**Congressmen** [1] - 46:19
**connection** [2] - 7:13, 52:8
**consequences** [7] - 4:20, 5:14, 26:24, 26:25, 27:6, 28:15, 48:5
**consider** [4] - 24:15, 25:11, 25:22, 38:17
**consideration** [1] - 49:15
**considerations** [1] - 43:14
**considered** [4] - 46:18, 46:23, 48:17, 58:16
**considering** [2] - 5:4, 58:12
**conspiracy** [5] - 30:1, 30:6, 30:16, 35:15, 47:5
**constitutes** [1] - 60:4
**Constitution** [2] - 2:9, 60:14
**consulting** [2] - 45:13, 45:15
**CONT'D** [1] - 2:1
**contact** [1] - 33:1
**contain** [1] - 40:25
**contained** [2] - 25:9, 49:1
**context** [1] - 56:23
**continue** [3] - 39:25, 40:1, 47:14
**continuing** [1] - 54:18
**contribute** [2] -

46:22, 49:12
**contributed** [3] - 42:12, 42:15, 42:18
**contribution** [23] - 10:18, 11:10, 12:7, 15:15, 15:20, 16:4, 17:25, 18:16, 29:5, 30:11, 31:5, 31:21, 31:24, 32:1, 32:4, 32:13, 32:15, 32:24, 36:10, 43:19, 44:3, 44:6, 47:22
**contributions** [4] - 3:22, 3:24, 44:7, 47:6
**contributor** [3] - 15:23, 16:3, 18:5
**controlled** [2] - 50:12, 50:13
**convict** [1] - 41:9
**convicted** [4] - 3:20, 11:7, 42:7, 43:16
**conviction** [8] - 6:18, 11:22, 47:2, 52:5, 53:18, 57:10, 57:15, 57:25
**convictions** [1] - 30:18
**convinced** [1] - 9:19
**convincing** [2] - 53:5, 56:10
**cooperate** [1] - 50:14
**copywriter** [1] - 47:14
**corner** [1] - 29:14
**correct** [3] - 24:15, 30:22, 42:9
**correspondence** [2] - 36:24, 39:18
**cost** [2] - 52:10, 52:12
**Counsel** [1] - 3:5
**counsel** [2] - 3:9, 52:8
**count** [6] - 10:16, 18:25, 23:4, 23:6, 23:8, 23:21
**Count** [6] - 10:17, 13:17, 42:11, 42:14, 42:17
**country** [3] - 40:2, 43:24, 47:15
**Counts** [16] - 8:1, 8:2, 8:4, 10:3, 10:8, 11:14, 13:17, 22:15, 30:11, 30:17, 40:19, 40:24, 42:6, 44:19, 49:18, 49:20
**counts** [13] - 4:1, 13:15, 22:11, 29:7, 30:10, 30:11, 30:13,

30:14, 30:15, 41:8, 42:7, 43:7, 43:8
**course** [3] - 45:6, 45:15, 58:3
**courses** [1] - 36:24
**Court** [57] - 2:8, 2:8, 5:10, 5:13, 7:17, 14:14, 14:21, 14:22, 14:23, 17:17, 18:12, 22:10, 22:14, 22:20, 23:3, 23:5, 23:25, 24:14, 25:12, 26:13, 26:19, 27:3, 27:4, 28:7, 31:7, 31:22, 32:23, 49:17, 50:2, 50:3, 51:3, 51:12, 51:14, 51:19, 51:24, 52:3, 52:11, 53:2, 53:4, 53:7, 53:23, 53:24, 53:25, 54:21, 56:6, 56:10, 56:14, 57:10, 57:19, 57:24, 58:3, 58:7, 59:2, 60:12, 60:13
**court** [3] - 15:6, 36:25, 42:2
**COURT** [68] - 1:1, 3:11, 3:15, 3:19, 4:13, 4:15, 5:23, 6:1, 6:7, 6:11, 6:24, 7:5, 7:8, 7:11, 7:16, 8:20, 9:1, 9:13, 9:16, 10:22, 11:4, 11:12, 11:25, 12:2, 12:20, 12:25, 13:2, 13:6, 13:19, 14:15, 14:18, 15:10, 16:12, 17:3, 18:1, 18:20, 19:8, 19:22, 20:16, 21:17, 22:6, 22:8, 22:16, 22:24, 24:11, 24:13, 24:19, 24:24, 26:10, 29:2, 30:5, 30:20, 32:6, 33:13, 33:18, 33:23, 38:3, 38:14, 40:14, 40:18, 52:19, 52:22, 54:5, 55:1, 56:4, 59:5, 59:12, 59:14
**Court's** [1] - 24:25
**courtroom** [1] - 34:2
**COURTROOM** [1] - 3:1
**courts** [2] - 41:17, 41:25
**covering** [1] - 45:11
**create** [1] - 4:2
**creative** [1] - 35:18
**crime** [9] - 4:19, 16:22, 16:23, 17:7, 17:8, 30:2, 50:11,

54:13, 57:14
**crimes** [1] - 25:19
**criminal** [17] - 4:21,
5:4, 6:17, 6:19, 6:21,
6:22, 9:3, 9:4, 9:8,
25:19, 27:1, 27:3,
27:6, 27:12, 33:11,
37:7, 45:10
**Criminal** [4] - 1:3,
3:2, 9:5, 50:7
**criminalizes** [4] -
15:1, 15:9, 41:5,
41:22
**critical** [1] - 34:15
**cross** [1] - 58:2
**cross-examine** [1] -
58:2
**CRR** [3] - 2:7, 60:3,
60:12
**Cusanelli** [1] - 57:2
**custodial** [2] - 34:11,
37:19
**custody** [1] - 51:10
**cut** [1] - 30:25
**cycle** [1] - 44:8

# D

**D.C** [14] - 1:6, 1:16,
1:20, 1:22, 2:4, 2:10,
26:10, 41:11, 41:16,
41:20, 52:14, 56:24,
57:3, 60:14
**danger** [9] - 53:6,
54:6, 54:11, 54:12,
55:5, 55:10, 56:12,
56:22, 57:16
**danger-to-the-
community** [1] - 54:12
**date** [7] - 10:9,
12:16, 38:3, 53:1,
53:2, 54:3, 59:4
**Dated** [1] - 60:10
**dates** [3] - 14:6,
41:4, 42:8
**daughter** [8] - 34:13,
34:14, 35:5, 38:8,
40:2, 47:15, 48:2,
49:9
**daughter's** [1] -
37:21
**days** [8] - 18:4, 18:9,
32:25, 33:10, 47:11,
51:9, 51:13, 52:3
**de** [1] - 44:10
**deal** [7] - 7:1, 9:2,
9:17, 14:12, 27:18,
27:24, 28:17
**dealing** [2] - 12:6,

12:12
**dealt** [2] - 37:17,
53:23
**deceased** [2] -
55:15, 57:25
**deceive** [1] - 21:1
**December** [1] -
42:13
**decency** [1] - 46:21
**deception** [1] - 46:9
**decide** [2] - 28:3,
37:19
**decided** [1] - 12:10
**decision** [4] - 4:21,
24:25, 35:11, 48:15
**decline** [1] - 43:3
**dedication** [1] -
46:14
**Defendant** [31] - 1:7,
3:20, 4:7, 6:1, 21:13,
21:14, 23:10, 23:14,
24:2, 25:20, 25:24,
29:11, 42:6, 42:9,
42:11, 42:14, 42:15,
42:21, 42:24, 53:20,
54:6, 54:16, 54:22,
55:15, 56:22, 57:8,
57:19, 57:22, 58:2,
58:21, 58:22
**DEFENDANT** [6] -
2:2, 3:18, 7:7, 7:10,
7:15, 38:18
**Defendant's** [8] -
4:7, 42:25, 51:21,
52:24, 56:8, 57:18,
58:1, 58:19
**defendant's** [1] -
31:1
**defendants** [6] -
26:1, 26:18, 28:6,
34:1, 34:6, 57:4
**defender** [1] - 33:25
**defense** [3] - 40:19,
40:22, 40:24
**defense's** [1] - 41:7
**defer** [3] - 16:19,
37:15, 37:17, 38:11,
53:2
**deferred** [1] - 41:7
**defined** [2] - 49:8,
49:22
**definition** [1] - 15:17
**delay** [3] - 53:8, 56:1,
56:15
**delays** [1] - 32:2
**delivered** [2] - 44:15,
44:17
**deliveries** [1] - 37:13
**delivering** [2] -
34:10, 36:23

**deny** [1] - 58:19
**DEPARTMENT** [2] -
1:18, 1:21
**departs** [1] - 52:1
**departure** [2] - 5:5,
24:16
**departures** [1] -
24:15
**DEPUTY** [1] - 3:1
**described** [2] -
41:22, 46:16
**describes** [1] - 46:24
**designation** [1] -
37:9
**despite** [2] - 19:11,
49:2
**detained** [2] - 56:7,
57:4
**detected** [1] - 44:24
**deter** [1] - 33:12
**determinations** [1] -
5:20
**determine** [5] - 4:24,
5:2, 14:24, 19:11,
41:13
**determined** [1] -
24:13
**determining** [1] -
41:12
**deterrence** [3] -
25:18, 28:16, 28:18
**development** [1] -
34:15
**diabetes** [1] - 34:18
**Diana** [2] - 14:11,
42:3
**difference** [3] -
21:20, 23:9, 23:18
**different** [15] - 11:5,
15:12, 15:18, 16:2,
17:20, 17:24, 18:8,
18:9, 21:8, 41:4, 42:8,
42:22, 45:17, 58:9,
58:14
**difficult** [2] - 46:7,
48:23
**dinner** [2] - 45:14,
45:16
**direct** [2] - 37:9,
58:22
**directed** [1] - 50:15
**directly** [1] - 14:9
**disagree** [4] - 11:25,
13:23, 23:11, 27:25
**disbursed** [1] - 16:1
**discouraging** [1] -
48:25
**discuss** [2] - 22:3,
24:24
**discussed** [3] - 5:24,

11:18, 24:21
**dismiss** [1] - 19:2
**dismissed** [1] -
11:14
**disparities** [1] -
25:25
**disputing** [1] - 23:1
**distinct** [2] - 15:2,
18:8
**District** [9] - 2:8, 2:9,
14:10, 18:12, 50:2,
50:3, 51:12, 60:13
**district** [5] - 26:8,
41:25, 47:7, 51:18,
60:13
**DISTRICT** [4] - 1:1,
1:1, 1:11, 1:15
**districts** [1] - 42:1
**DNA** [1] - 50:15
**doctor** [4] - 34:17,
34:19, 34:24, 46:23
**doctrine** [1] - 40:20
**document** [4] - 14:4,
15:5, 19:17, 20:21
**documents** [1] - 4:10
**dollar** [6] - 21:10,
29:5, 30:10, 36:13,
40:25, 44:11
**done** [7] - 20:4, 21:5,
22:21, 28:13, 37:3,
47:9, 47:12
**donor** [2] - 15:22,
43:17
**DoorDash** [5] -
34:11, 36:23, 37:12,
54:22, 55:7
**doubt** [2] - 18:25,
43:2
**doubts** [1] - 57:19
**Doug** [3] - 36:19,
55:14
**down** [2] - 40:5, 55:7
**drawn** [1] - 45:21
**dreams** [1] - 40:10
**driven** [1] - 43:7
**dropped** [1] - 46:1
**drug** [1] - 50:14
**duplicitous** [1] - 19:1
**duration** [1] - 53:13
**during** [1] - 47:4

# E

**Eastern** [2] - 14:10,
18:12
**easy** [1] - 35:8
**ECF** [2] - 12:23, 58:7
**economic** [1] - 51:4
**EDVA** [1] - 42:3

**Edwards** [1] - 60:12
**EDWARDS** [2] - 2:7,
60:3
**effect** [1] - 3:24
**eight** [2] - 38:25,
39:6
**either** [3] - 19:3,
29:12, 32:15
**elected** [1] - 36:3
**Election** [2] - 4:2,
44:1
**election** [3] - 43:18,
43:25, 44:8
**elections** [1] - 28:2
**Eleventh** [1] - 1:16
**elicited** [1] - 31:4
**eligible** [2] - 23:14,
24:5
**elsewhere** [1] - 18:7
**email** [2] - 8:22, 9:23
**emailed** [2] - 36:9,
45:3
**enable** [1] - 38:7
**end** [16] - 9:20, 9:22,
10:23, 11:21, 12:4,
16:15, 16:20, 19:10,
20:5, 20:6, 30:20,
32:14, 33:3, 48:13
**endangering** [1] -
56:25
**ended** [1] - 29:16
**ends** [2] - 16:16,
37:24
**engage** [2] - 4:21,
27:7
**engaging** [1] - 47:3
**ensure** [1] - 25:12
**entered** [1] - 52:5
**enters** [1] - 52:3
**entirely** [1] - 48:7
**entities** [1] - 11:5
**entries** [3] - 14:3,
17:14, 17:24
**entry** [24] - 10:4,
10:5, 10:10, 10:11,
10:15, 12:14, 12:15,
13:11, 13:12, 13:24,
14:1, 14:13, 14:25,
15:2, 15:3, 15:9, 18:3,
18:14, 18:16, 18:17,
30:9, 40:23, 41:23
**erroneous** [1] - 19:4
**error** [2] - 6:24,
55:18
**especially** [1] - 46:15
**ESQ** [5] - 1:14, 1:17,
1:21, 2:2, 2:2
**essence** [1] - 14:3
**establish** [1] - 50:8
**establishing** [1] -

65

53:15
**estimates** [1] - 9:4
**evaluation** [1] - 23:1
**event** [1] - 31:14
**eventually** [1] -
45:19
**evidence** [13] -
15:11, 17:4, 17:9,
19:24, 20:1, 20:18,
21:14, 31:3, 42:20,
42:23, 45:7, 53:5,
56:11
**evidentiary** [1] -
57:23
**exact** [2] - 34:2,
34:21
**exactly** [7] - 14:12,
15:22, 15:23, 16:4,
20:4, 27:4, 37:1
**examine** [1] - 58:2
**example** [1] - 57:5
**excellent** [1] - 37:3
**excluded** [1] - 36:19
**exclusion** [2] -
55:14, 57:25
**excuses** [1] - 45:25
**execute** [1] - 51:19
**exist** [1] - 23:18
**expectations** [1] -
50:8
**expected** [1] - 53:13
**explain** [1] - 21:18
**explained** [1] - 57:3
**explanation** [1] -
12:3
**expresses** [1] -
41:18
**extend** [1] - 56:25
**extra** [1] - 43:8
**extraordinary** [1] -
23:17

### F

**F.3d** [3] - 41:10,
41:20, 52:13
**F.4th** [2] - 41:15,
57:2
**F.Supp** [1] - 14:11
**F.Supp.2d** [3] -
14:16, 42:2, 42:3
**face** [1] - 4:20
**faces** [1] - 10:6
**facing** [2] - 44:15,
44:17
**fact** [10] - 6:17, 7:19,
28:10, 31:11, 47:3,
48:12, 53:9, 56:16,
57:20, 58:8

**factor** [3] - 28:9,
28:12, 33:8
**factors** [14] - 5:5,
5:11, 24:21, 24:25,
25:4, 25:11, 26:5,
33:15, 43:11, 46:25,
53:16, 53:25, 54:4,
55:23
**facts** [11] - 6:14,
6:15, 7:17, 25:9,
29:10, 32:16, 36:15,
36:16, 43:10, 49:1
**factual** [1] - 5:20,
6:2, 6:13
**fails** [1] - 57:18
**failure** [2] - 34:25,
45:25
**fair** [2] - 5:11, 19:23
**faith** [2] - 46:9, 49:4
**false** [37] - 4:2, 10:4,
10:5, 10:10, 10:12,
12:14, 12:15, 13:11,
13:24, 13:25, 14:3,
14:6, 14:13, 14:25,
15:1, 15:9, 17:1, 17:2,
17:14, 18:2, 18:5,
18:9, 18:14, 18:19,
19:21, 20:19, 21:15,
30:8, 30:9, 40:23,
41:3, 41:23, 43:3,
43:20, 45:25, 47:22
**falsely** [5] - 17:12,
42:12, 42:15, 42:18
**falsification** [2] -
41:5, 41:24
**falsify** [1] - 47:5
**families** [2] - 26:19,
34:1
**family** [21] - 26:14,
27:5, 27:7, 34:5, 34:9,
34:13, 35:2, 35:4,
38:8, 38:21, 39:22,
40:3, 46:13, 46:17,
46:20, 47:8, 47:14,
48:24, 49:9, 55:8,
55:9
**far** [2] - 39:17, 45:9
**fashion** [1] - 5:10
**fast** [1] - 39:9
**Fastenau** [1] - 3:10
**faults** [1] - 46:11
**favor** [1] - 11:20
**favorites** [1] - 37:4
**FBI** [1] - 36:20
**February** [2] - 1:6,
5:17
**FEC** [7] - 14:1, 14:7,
17:15, 17:22, 18:17,
41:4, 43:20
**federal** [5] - 3:20,

4:19, 4:22, 27:3,
50:11
**Federal** [1] - 4:1
**felonies** [3] - 23:16,
30:15, 44:20
**felony** [5] - 30:2,
30:3, 30:7, 30:12,
30:18
**few** [2] - 21:24, 32:25
**figure** [1] - 39:3
**file** [9] - 14:2, 14:6,
15:13, 18:9, 21:8,
41:3, 45:17, 52:2,
52:11
**filed** [10] - 5:15, 5:17,
7:13, 11:4, 11:5,
12:21, 14:4, 17:12,
20:20, 20:21
**files** [1] - 11:2
**filing** [2] - 16:20,
17:15
**filings** [1] - 42:22,
43:20
**final** [3] - 5:16, 6:6,
24:25
**finance** [4] - 27:22,
28:1, 28:22, 57:9
**financial** [12] - 34:8,
48:2, 50:18, 50:19,
50:20, 50:22, 50:23,
50:24, 51:1, 51:5,
51:11, 51:15
**findings** [1] - 7:19
**fine** [15] - 19:15,
19:17, 19:22, 21:3,
23:3, 23:18, 23:20,
25:7, 37:11, 37:13,
48:18, 48:20, 48:21,
49:25, 51:6
**fines** [1] - 22:6
**finishing** [1] - 37:22
**first** [12] - 4:23, 5:15,
15:16, 15:24, 22:10,
26:11, 30:1, 34:8,
40:18, 50:17, 56:10,
56:19
**five** [5] - 8:2, 23:15,
35:13, 36:17, 40:15
**five-minute** [1] -
40:15
**five-second** [1] -
36:17
**flawed** [2] - 39:23,
49:5
**flee** [3] - 53:6, 55:10,
56:11
**fleecing** [1] - 29:12
**flier** [1] - 16:14
**flip** [1] - 20:16
**Floor** [2] - 1:16, 1:19

**flying** [1] - 34:9
**focus** [1] - 42:22
**following** [5] - 23:16,
40:17, 41:9, 50:5,
50:16
**follows** [1] - 7:25
**food** [3] - 34:10,
36:23, 55:6
**FOR** [5] - 1:1, 1:14,
1:15, 2:2, 2:6
**foregoing** [1] - 60:4
**foreign** [3] - 3:21,
3:24, 8:13
**forfeiture** [1] - 22:6
**forget** [2] - 17:18,
31:8
**Form** [1] - 50:7
**form** [9] - 15:15,
15:20, 16:4, 17:18,
17:19, 18:6, 18:16,
21:3, 51:2
**former** [1] - 33:25
**forms** [1] - 14:6
**forth** [6] - 5:12, 5:20,
6:3, 6:14, 26:5, 33:15
**forward** [1] - 3:5
**four** [2] - 4:16, 8:10
**Fourth** [1] - 1:15
**framework** [1] - 24:8
**Franklin** [1] - 31:8
**frankly** [2] - 46:7,
46:25
**frequently** [1] - 34:4
**friend** [2] - 45:4, 45:6
**friends** [5] - 35:2,
38:21, 46:13, 46:20,
49:9
**front** [4] - 11:21,
12:23, 20:5, 31:20
**FULBRIGHT** [1] - 2:3
**full** [4] - 31:17,
45:16, 51:15, 60:5
**fully** [2] - 7:8, 48:15
**fundraising** [4] -
15:16, 16:7, 16:9,
18:7
**funds** [3] - 16:11,
42:9, 43:22
**funneling** [1] - 43:17
**future** [1] - 25:19

### G

**general** [2] - 28:16,
28:18
**generally** [4] - 26:19,
26:21, 26:22, 31:9
**generated** [1] - 10:24
**given** [6] - 20:13,

34:11, 44:3, 47:24,
54:17, 57:8
**gloss** [1] - 21:4
**goals** [1] - 28:25
**God's** [2] - 39:2, 49:5
**Google** [3] - 35:7,
35:8, 37:1
**governed** [1] - 56:5
**GOVERNMENT** [1] -
1:14
**Government** [18] -
3:6, 4:7, 5:7, 5:19,
6:14, 7:13, 9:19,
11:17, 13:1, 19:16,
26:4, 37:11, 41:2,
42:9, 47:18, 48:22,
58:1, 59:10
**Government's** [3] -
48:6, 48:18, 52:23
**grabbing** [1] - 55:6
**grace** [1] - 49:5
**grand** [1] - 21:13
**grateful** [2] - 38:20,
38:21
**gravity** [1] - 4:18
**great** [2] - 9:1, 33:23
**greater** [3] - 25:13,
28:25, 48:9
**greet** [1] - 36:18
**grouping** [3] - 22:11,
22:12, 22:21
**guess** [2] - 20:16,
23:9
**guidance** [1] - 41:9
**guideline** [18] - 7:23,
8:4, 8:7, 8:11, 8:14,
9:8, 22:1, 22:13,
22:18, 22:22, 23:21,
24:3, 24:23, 25:24,
43:7, 44:15, 52:2
**guidelines** [21] - 5:3,
5:6, 11:19, 22:10,
22:15, 22:20, 23:2,
23:20, 24:2, 24:5,
24:8, 24:14, 24:15,
25:3, 25:21, 30:21,
30:23, 43:12, 44:13,
48:16, 49:16
**guilty** [10] - 16:22,
16:23, 17:6, 17:7,
20:7, 21:5, 26:2,
32:18, 56:6
**guy** [1] - 36:20

### H

**hack** [1] - 47:13
**Hale** [1] - 57:2
**Hale-Cusanelli** [1] -

57:2
**half** [1] - 32:6
**halfway** [1] - 37:10
**hand** [2] - 31:21, 36:18
**handled** [1] - 9:20
**hands** [1] - 11:10
**hanging** [1] - 19:17
**happy** [2] - 6:25, 33:21
**hard** [2] - 39:19, 40:4
**hardship** [2] - 48:1, 48:2
**head** [2] - 31:1, 39:7
**health** [1] - 48:4
**healthcare** [1] - 46:24
**hear** [3] - 5:7, 6:25, 17:3
**heard** [7] - 5:8, 22:9, 22:11, 26:4, 33:14, 36:17, 55:1
**HEARING** [1] - 1:10
**hearing** [2] - 4:15, 4:23
**help** [4] - 38:7, 39:21, 40:8, 40:9
**helping** [1] - 29:22
**hereby** [2] - 49:17, 60:3
**high** [1] - 34:9
**high-flying** [1] - 34:9
**higher** [1] - 44:15
**highest** [1] - 44:7
**himself** [2] - 17:1, 32:10
**historical** [1] - 15:4
**History** [1] - 9:5
**history** [12] - 5:4, 6:17, 6:19, 6:21, 6:23, 9:3, 9:5, 9:8, 15:8, 25:23, 37:7, 43:15
**home** [2] - 37:9, 40:6
**honestly** [1] - 54:21
**honor** [1] - 59:4
**Honor** [31] - 3:1, 3:7, 3:12, 4:12, 4:14, 5:22, 6:12, 7:4, 8:19, 9:12, 9:15, 10:1, 12:14, 13:16, 13:21, 22:5, 22:7, 24:10, 24:12, 24:18, 26:12, 33:17, 34:7, 37:17, 37:19, 52:18, 55:3, 55:20, 59:1, 59:11, 59:13
**Honor's** [1] - 35:11
**HONORABLE** [1] - 1:10
**hospitalized** [1] - 34:18

**house** [1] - 37:10
**Hubbell** [1] - 41:10
**huge** [1] - 47:8
**humans** [1] - 49:5
**humble** [2] - 39:15, 47:13
**humbly** [1] - 40:13
**humiliating** [1] - 48:25
**Hunter** [1] - 52:13
**hypothetically** [1] - 17:11

**I**

**idea** [2] - 27:17, 28:17
**identify** [1] - 3:5
**ignore** [1] - 47:3
**II** [2] - 9:6, 9:8
**illegal** [5] - 8:9, 8:13, 32:20, 32:21, 33:6
**illustrative** [1] - 45:11
**imagine** [1] - 44:6
**immediately** [1] - 50:1
**impact** [4] - 35:4, 40:1, 43:6, 46:16
**implications** [1] - 48:4
**important** [1] - 28:19
**impose** [6] - 5:13, 21:21, 23:3, 23:5, 48:8, 49:13
**imposed** [8] - 23:17, 23:23, 25:15, 25:24, 50:8, 51:24, 52:5, 52:15
**imposes** [2] - 23:25, 25:13
**imposing** [1] - 38:17
**imprisonment** [11] - 8:1, 8:2, 19:18, 23:23, 23:25, 51:25, 53:11, 53:12, 56:7, 56:17, 57:22
**improper** [1] - 10:20
**improperly** [1] - 20:8
**incarceration** [4] - 25:6, 47:19, 49:18, 49:21
**include** [3] - 25:15, 50:10, 53:11
**includes** [1] - 22:4, 51:18
**including** [9] - 4:9, 34:1, 35:3, 35:6, 43:12, 48:10, 56:17,

57:22, 57:24
**inconveniences** [1] - 27:23
**increased** [1] - 8:10
**incredibly** [1] - 35:8
**independent** [2] - 21:15, 57:18
**indicates** [1] - 57:23
**indictment** [3] - 40:23, 42:5, 49:2
**individual** [6] - 26:14, 28:19, 43:7, 44:3, 44:5, 44:7
**individuals** [2] - 26:23, 28:2
**ineffective** [1] - 52:7
**ineligible** [1] - 24:3
**influence** [1] - 35:25
**information** [7] - 16:18, 38:15, 42:24, 46:11, 50:18, 50:19, 50:20, 50:22, 50:23, 50:24, 52:6
**infraction** [1] - 27:21
**inside** [2] - 31:1, 39:12
**instance** [1] - 16:14
**instructs** [1] - 56:5
**integrated** [1] - 26:20
**INTEGRITY** [1] - 1:18
**integrity** [3] - 28:2, 43:24, 46:8
**intended** [4] - 12:12, 31:5, 41:14, 41:17
**intention** [2] - 29:11, 41:18
**interested** [5] - 29:2, 29:21, 29:23, 29:24, 33:18
**interesting** [3] - 14:8, 30:24, 54:14
**interpreted** [2] - 56:24, 57:17
**interrupt** [1] - 38:8
**intuitive** [1] - 13:3
**investigation** [3] - 4:5, 5:16, 51:17
**invoice** [1] - 45:12
**involve** [1] - 57:5
**involved** [1] - 8:13
**Iowa** [1] - 6:18
**ironic** [1] - 20:3
**issue** [8] - 9:18, 10:2, 19:15, 31:2, 37:19, 40:18, 43:5, 55:19
**issues** [3] - 53:22, 55:21, 56:1
**it'll** [1] - 40:4
**itself** [1] - 14:24

**J**

**jail** [1] - 47:17
**Jesse** [4] - 3:3, 3:20, 27:1, 49:17
**JESSE** [1] - 1:6
**Johnson** [1] - 41:15
**joined** [1] - 3:9
**joint** [4] - 15:16, 16:6, 16:9, 18:6
**judge** [1] - 47:7, 47:12, 47:17, 47:20
**JUDGE** [1] - 1:11
**Judge** [1] - 55:11
**Judgment** [1] - 50:7
**judgment** [3] - 49:17, 51:2, 52:3
**July** [1] - 42:19
**June** [7] - 37:22, 37:25, 38:6, 53:2, 58:23, 59:7, 60:10
**juries** [1] - 30:25
**jury** [11] - 3:20, 11:21, 16:22, 17:5, 19:24, 21:4, 32:18, 41:9, 42:21, 43:1, 43:16
**jury's** [1] - 29:9
**JUSTICE** [2] - 1:18, 1:21
**justify** [1] - 47:1

**K**

**keep** [2] - 4:17, 47:14
**keeping** [2] - 16:10, 32:14
**keeps** [1] - 32:9
**key** [1] - 15:10
**kind** [9] - 15:10, 19:2, 22:12, 29:13, 29:16, 33:6, 34:24, 47:10, 58:12
**kinder** [1] - 39:15
**kindness** [1] - 46:21
**knowing** [1] - 15:11
**knowingly** [10] - 4:1, 15:1, 16:22, 16:24, 17:8, 17:12, 21:5, 28:3, 43:2
**knowledge** [5] - 19:20, 20:2, 21:15, 30:25, 31:2
**known** [1] - 47:9
**knows** [7] - 21:7, 21:8, 21:11, 28:20, 33:5, 3:9

**L**

**ladies** [1] - 3:11
**language** [9] - 14:24, 15:7, 15:8, 18:11, 18:13, 18:22, 19:7, 41:13, 56:24
**larger** [2] - 21:10
**last** [11] - 5:10, 5:12, 12:23, 18:24, 26:9, 27:11, 33:5, 33:11, 33:12, 45:20, 47:25
**latter** [1] - 55:4
**Lauren** [1] - 3:9
**law** [13] - 4:22, 11:10, 12:7, 12:18, 25:17, 43:24, 47:23, 53:9, 53:17, 54:18, 56:16, 57:20, 58:8
**laws** [5] - 27:22, 28:1, 28:3, 28:4, 28:22
**lays** [1] - 7:22
**leaflets** [1] - 42:24
**lean** [2] - 39:10, 39:12
**lease** [1] - 34:12
**least** [6] - 16:6, 23:2, 29:19, 31:4, 44:20, 56:23
**left** [1] - 36:8
**legal** [2] - 6:24, 13:3
**legislative** [1] - 15:8
**legislature** [1] - 41:13
**legitimate** [2] - 55:21, 56:2
**less** [8] - 8:9, 14:9, 23:14, 23:23, 31:13, 39:13, 51:7, 53:12
**letter** [9] - 27:9, 27:10, 27:19, 34:17, 38:19, 44:24, 46:8, 46:15, 46:23
**letterhead** [1] - 27:20
**letters** [13] - 4:8, 26:23, 28:8, 28:17, 34:3, 34:4, 34:13, 35:2, 35:6, 46:18, 46:20, 46:25, 48:12
**level** [9] - 8:7, 8:10, 8:15, 8:18, 8:21, 9:7, 22:13, 22:19, 22:22
**levels** [2] - 8:10, 8:14
**liability** [1] - 16:25
**lie** [1] - 54:18
**lies** [1] - 32:8
**life** [2] - 39:3, 49:8
**light** [3] - 5:11,

67

43:11, 48:10
**likelihood** [1] - 58:18
**likely** [7] - 47:1, 53:6, 53:9, 56:11, 56:16, 57:20, 58:8
**line** [1] - 11:13
**LISA** [2] - 2:7, 60:3
**Lisa** [1] - 60:12
**listed** [5] - 6:4, 25:4, 41:1, 43:21, 50:6
**literally** [1] - 46:1
**living** [1] - 47:13
**LLP** [1] - 2:3
**local** [1] - 50:11
**locking** [1] - 40:11
**look** [7] - 12:22, 39:2, 39:12, 39:15, 41:12, 55:14, 55:17
**looked** [1] - 29:18
**looking** [7] - 6:7, 16:17, 24:2, 29:10, 39:4, 42:1, 57:6
**Lord** [2] - 40:2, 47:15
**lost** [2] - 19:3, 39:20
**love** [5] - 39:23, 40:2, 47:15
**loved** [3] - 35:17, 35:19, 46:14
**low** [2] - 36:25, 48:13
**low-end** [1] - 48:13
**lower** [2] - 44:14, 48:20
**lowest** [1] - 36:24
**luck** [1] - 59:14
**lucky** [1] - 31:25

## M

**mail** [2] - 46:2, 47:21
**man** [2] - 46:16, 49:4
**manage** [1] - 34:20
**mandated** [1] - 44:1
**mandatory** [3] - 23:7, 50:5, 50:10
**manual** [1] - 5:6
**March** [1] - 42:16
**materials** [1] - 4:10
**matter** [6] - 4:20, 27:22, 28:1, 30:10, 36:7, 37:8
**matters** [3] - 20:22, 28:2, 43:1
**maximum** [4] - 8:1, 8:2, 23:3, 51:25
**Mayo** [1] - 34:23
**McFADDEN** [1] - 1:10
**McLaughlin** [1] - 41:20

**mean** [6] - 16:21, 19:25, 20:3, 30:5, 33:3, 54:7
**mechanical** [1] - 4:17
**medical** [2] - 34:16, 34:17
**medication** [1] - 34:20
**medications** [1] - 34:24
**meet** [3] - 28:25, 36:18, 45:9
**meet-and-greet** [1] - 36:18
**member** [2] - 34:13, 38:8
**members** [3] - 26:20, 34:6, 55:9
**memoranda** [2] - 4:6, 5:18
**memorandum** [2] - 4:7, 58:6
**memory** [1] - 21:23
**mens** [3] - 16:21, 16:24, 17:7
**mentioned** [1] - 54:2
**merciful** [1] - 39:24
**mercy** [2] - 40:13, 47:20
**merely** [1] - 48:16
**merge** [2] - 11:24, 43:3
**merged** [4] - 11:15, 11:16, 13:17, 40:20
**merger** [4] - 8:23, 9:17, 19:10, 40:18
**merges** [1] - 19:12
**met** [4] - 54:1, 54:4, 55:22, 56:7
**Metherall** [2] - 3:13, 3:16
**METHERALL** [1] - 2:2
**MICHELLE** [2] - 1:14, 1:21
**Michelle** [2] - 3:8
**middle** [1] - 37:24
**might** [5] - 27:5, 31:7, 31:22, 32:23, 51:4
**million** [1] - 35:23
**mind** [1] - 4:17
**mindful** [1] - 48:7
**mindset** [2] - 13:13, 36:21
**minimis** [1] - 44:10
**minimum** [1] - 15:1
**minute** [3] - 9:2, 40:15, 45:20

**minutes** [1] - 21:24
**misconduct** [1] - 47:4
**misdemeanor** [9] - 29:6, 30:6, 30:13, 35:12, 35:15, 35:17, 36:12, 44:12
**misrepresentation** [1] - 18:10
**mistakes** [1] - 49:6
**mitigate** [1] - 38:15
**mitigating** [5] - 5:4, 28:9, 29:25, 32:16, 46:25
**mitigation** [1] - 36:5
**modification** [1] - 37:21
**money** [23] - 11:1, 15:17, 15:22, 15:24, 15:25, 16:4, 18:7, 29:11, 29:15, 29:23, 31:10, 31:16, 31:18, 31:20, 31:21, 31:23, 32:10, 32:14, 36:7, 40:6, 45:25, 46:3, 46:5
**monies** [1] - 44:4
**month** [1] - 51:7
**months** [4] - 9:9, 22:17, 22:23, 25:6
**months'** [2] - 25:5, 49:18
**morning** [8] - 3:7, 3:11, 3:12, 3:14, 3:15, 3:16, 3:17, 3:18
**most** [2] - 45:4, 50:6
**mostly** [1] - 6:13
**motion** [7] - 12:19, 53:21, 53:22, 57:18, 58:4, 58:17, 58:20
**motions** [2] - 37:16, 53:24
**move** [5] - 34:12, 37:23, 38:7, 39:19, 55:8
**moving** [1] - 39:9
**movingly** [1] - 46:13
**MR** [30] - 3:12, 4:14, 5:25, 6:4, 6:9, 6:12, 7:3, 8:21, 9:14, 9:22, 10:25, 11:6, 11:15, 12:4, 12:22, 13:1, 13:5, 13:7, 19:15, 20:3, 20:23, 24:12, 24:20, 33:17, 33:20, 33:24, 38:4, 52:20, 55:3, 59:13
**MS** [30] - 3:7, 4:12, 5:22, 8:19, 9:12, 12:1, 13:21, 14:16, 14:19,

15:14, 16:21, 17:5, 18:2, 18:21, 22:5, 22:7, 22:9, 22:18, 24:10, 24:18, 26:8, 26:11, 30:1, 30:7, 30:22, 32:7, 52:18, 52:25, 54:11, 59:11
**multiple** [12] - 10:24, 10:25, 13:12, 13:14, 13:15, 21:1, 35:21, 35:22, 40:21, 41:19, 43:20
**multiplicitous** [2] - 18:23, 19:6
**multiplicity** [6] - 10:3, 10:8, 14:13, 40:20, 41:8, 41:12
**must** [19] - 20:7, 23:16, 25:11, 25:22, 28:4, 28:15, 48:8, 50:10, 50:11, 50:12, 50:14, 50:17, 50:21, 51:1, 51:3, 51:6, 52:2, 56:10, 56:14

## N

**name** [3] - 3:23, 17:18, 43:19
**national** [3] - 3:21, 3:24, 8:14
**nature** [2] - 25:22, 43:14
**near** [1] - 12:4
**necessarily** [2] - 54:7, 58:15
**necessary** [3] - 25:14, 28:25, 48:9
**need** [7] - 11:13, 21:23, 25:15, 25:24, 25:25, 49:7, 58:15
**needs** [2] - 34:24, 46:24
**never** [7] - 27:12, 27:13, 36:9, 46:3, 47:8, 48:13
**New** [1] - 1:19
**new** [8] - 49:10, 52:6, 53:10, 53:22, 56:17, 57:21, 58:5, 58:9
**news** [1] - 58:2
**next** [1] - 24:14
**night** [2] - 12:23, 18:24
**Ninth** [1] - 2:3
**nobody** [1] - 26:25
**noncustodial** [7] - 6:18, 6:21, 34:7, 37:4, 37:9, 38:10, 47:2

**none** [2] - 45:6, 52:20
**nonetheless** [1] - 27:7
**nonprofit** [1] - 54:24
**nonwhite** [2] - 34:1, 34:6
**nonwhite-collar** [2] - 34:1, 34:6
**normally** [1] - 26:8
**Northwest** [5] - 1:15, 1:22, 2:3, 2:9, 60:14
**NORTON** [1] - 2:3
**note** [3] - 29:18, 43:5, 53:17
**noted** [4] - 6:9, 6:12, 52:15, 52:21
**notes** [2] - 8:4, 40:24, 60:5
**nothing** [5] - 33:12, 35:21, 40:5, 40:7, 53:23
**notice** [2] - 16:13, 18:6
**notify** [2] - 51:3, 51:14
**notion** [1] - 44:22
**nowhere** [1] - 26:16
**number** [8] - 4:8, 6:4, 12:23, 16:1, 20:20, 34:8, 34:16, 36:2

## O

**object** [4] - 52:25, 53:1, 53:3, 54:2
**objection** [4] - 5:19, 8:17, 8:25, 9:10
**objections** [8] - 4:25, 5:1, 6:2, 6:6, 6:13, 21:25, 22:1, 52:14
**objects** [1] - 30:16
**obligation** [1] - 51:15
**obligations** [1] - 51:11
**obvious** [1] - 45:21
**obviously** [7] - 30:2, 32:2, 33:18, 44:12, 49:8, 54:17, 55:10
**occasion** [1] - 15:2
**occurred** [1] - 29:9
**October** [2] - 10:9, 40:24
**OF** [5] - 1:1, 1:3, 1:15, 1:18, 1:21
**offender** [1] - 57:6
**offense** [19] - 5:14, 8:7, 8:10, 8:13, 8:15, 8:18, 8:21, 9:7, 13:9,

22:22, 23:4, 25:16, 25:17, 25:23, 33:5, 33:25, 43:15, 57:5, 57:8

**offenses** [3] - 23:15, 40:21, 41:19

**Office** [2] - 50:21, 50:25

**office** [13] - 4:6, 6:5, 8:8, 8:12, 25:2, 25:5, 25:8, 50:15, 50:20, 50:24, 51:16, 51:18, 51:21

**OFFICE** [1] - 1:14

**office's** [3] - 7:12, 7:23, 8:3

**officer** [3] - 37:4, 50:17, 50:22

**OFFICER** [1] - 59:1

**Officer** [3] - 3:4, 7:20, 22:25

**official** [1] - 60:12

**Official** [1] - 2:8

**once** [1] - 40:4

**one** [50] - 6:10, 6:16, 6:18, 10:4, 10:14, 10:15, 10:16, 10:18, 11:4, 11:7, 11:22, 12:8, 12:12, 12:17, 13:11, 13:12, 14:4, 16:19, 17:19, 18:25, 20:12, 20:13, 20:14, 20:21, 23:14, 23:16, 23:22, 23:23, 24:1, 26:15, 27:16, 29:3, 29:4, 29:5, 29:7, 29:10, 30:12, 30:16, 34:22, 35:18, 37:3, 37:4, 40:23, 44:11, 48:21, 55:16

**One** [1] - 36:13

**ones** [1] - 46:14

**op** [1] - 45:24

**open** [1] - 31:1

**operating** [1] - 24:8

**operative** [1] - 34:10

**opinion** [2] - 36:25, 58:6

**opportunity** [2] - 19:14, 47:24

**opposed** [1] - 24:16

**optional** [1] - 23:24

**options** [3] - 11:21, 28:7, 28:11

**order** [8] - 51:19, 53:10, 55:7, 55:20, 56:6, 56:16, 57:21, 58:9

**ordered** [1] - 49:23

**organizations** [1] -

15:18

**otherwise** [2] - 26:6, 33:16

**outset** [2] - 19:12, 45:12

**outstanding** [2] - 4:25, 6:2

**overage** [1] - 16:1

**overdeveloped** [1] - 55:16

**overlapping** [1] - 40:25

**overrepresentation** [1] - 6:17

**overrepresenting** [1] - 37:7

**overrepresents** [1] - 6:22

**overt** [1] - 30:3

**overwhelming** [2] - 20:18, 28:16

**owed** [1] - 51:6

**own** [1] - 17:15

**P**

**P-E-R-H-O-L-T-Z** [1] - 53:19

**package** [1] - 35:13

**Page** [5] - 14:20, 41:10, 41:16, 41:20, 57:6

**page** [2] - 15:4, 15:21

**paid** [2] - 12:9, 51:15

**pain** [1] - 47:10

**pains** [1] - 45:8

**papering** [1] - 45:16

**papers** [5] - 7:13, 13:16, 27:17, 37:15, 38:12

**pardoned** [2] - 6:22, 37:5

**parents** [1] - 26:19

**pariah** [1] - 35:10

**Parikh** [1] - 3:8

**PARIKH** [1] - 1:21

**part** [2] - 5:12, 19:20

**particular** [3] - 25:1, 43:10, 55:14

**particularly** [4] - 26:17, 27:18, 28:15, 35:5

**parties** [5] - 5:17, 13:22, 21:1, 25:1, 56:4

**parties'** [2] - 21:22, 48:17

**party** [3] - 23:1,

24:16, 29:4

**passing** [1] - 15:17

**past** [1] - 38:25

**pattern** [1] - 46:9

**Paul** [4] - 35:3, 46:19

**pay** [8] - 31:20, 32:9, 48:20, 49:23, 49:24, 51:1, 51:4, 51:6

**payable** [2] - 50:2, 51:11

**paying** [1] - 47:8

**payment** [1] - 46:6

**payments** [1] - 51:2

**penalties** [1] - 22:3

**penalty** [2] - 51:1, 51:5

**pending** [8] - 37:14, 37:18, 52:24, 52:25, 53:3, 56:4, 57:11, 58:20

**people** [5] - 10:25, 37:1, 40:8, 40:9, 45:22

**per** [2] - 23:4, 23:6

**percentile** [1] - 44:7

**perhaps** [1] - 29:16

**Perholtz** [1] - 53:18

**period** [2] - 32:2, 51:24

**permission** [1] - 52:11

**permitting** [1] - 3:23

**person** [1] - 39:5, 39:6, 39:13, 39:21, 40:1, 53:7, 56:6, 56:11, 56:12, 57:6

**personal** [2] - 34:8, 34:16

**Phan** [1] - 20:25

**Philadelphia** [1] - 31:14

**photo** [1] - 45:24

**photos** [1] - 46:6

**picture** [2] - 29:15, 32:3

**pie** [1] - 11:1

**pieces** [1] - 13:14

**place** [1] - 14:4

**places** [1] - 9:5

**plain** [7] - 15:7, 15:8, 18:11, 18:13, 18:22, 19:6, 41:12

**Plaintiff** [1] - 1:4

**plan** [2] - 32:12, 39:2

**plans** [1] - 57:23

**play** [1] - 35:10

**plus** [2] - 30:2, 53:13

**podium** [2] - 7:6, 43:9

**point** [15] - 6:8, 6:25,

11:15, 11:23, 14:9, 16:10, 25:1, 27:14, 31:23, 35:24, 44:11, 55:4, 58:11, 58:14, 59:7

**points** [7] - 6:19, 6:21, 37:5, 44:2, 44:19, 54:15, 56:8

**policy** [1] - 25:21

**Political** [3] - 42:11, 42:14, 42:17

**political** [13] - 3:22, 3:25, 11:2, 11:8, 11:9, 12:7, 15:18, 16:8, 16:16, 19:25, 34:9, 41:3, 47:11

**politics** [1] - 39:19

**pose** [2] - 53:6, 56:11, 56:25

**posed** [1] - 8:24

**poses** [2] - 54:6, 56:22

**position** [5] - 20:20, 28:20, 48:18, 52:23, 54:5

**positive** [3] - 39:21, 40:1, 46:22

**possess** [2] - 50:12, 53:14

**possible** [1] - 37:25

**post** [3] - 33:4, 37:16, 57:13

**post-sentencing** [1] - 33:4

**post-trial** [2] - 37:16, 57:13

**posture** [1] - 57:14

**potential** [2] - 26:25, 27:6

**potentially** [2] - 19:17, 29:20

**powerful** [1] - 48:12

**practically** [2] - 11:19, 35:24

**practices** [1] - 31:9

**pre** [1] - 57:13

**present** [3] - 3:14, 38:15, 58:8

**presented** [1] - 19:24

**presentence** [15] - 4:4, 4:24, 5:16, 5:20, 5:24, 7:12, 7:18, 7:22, 8:3, 8:6, 9:4, 25:10, 51:16, 51:20

**president** [1] - 54:23

**presidential** [4] - 43:18, 43:25, 44:4, 44:6

**press** [1] - 35:9

**presume** [1] - 41:17

**presumes** [1] - 53:17

**pretrial** [6] - 9:19, 12:22, 14:23, 36:12, 57:4, 58:4

**pretty** [1] - 19:16

**prevailing** [1] - 12:18

**previously** [3] - 24:21, 48:13, 52:21

**price** [1] - 47:8

**prideful** [3] - 39:5, 39:6, 39:13

**primarily** [1] - 29:22

**print** [3] - 19:17, 19:22, 21:3

**prison** [6] - 10:6, 12:11, 14:20, 36:6, 47:13, 48:13

**Prisons** [1] - 58:22

**privileged** [1] - 28:8

**pro** [1] - 36:16

**PROBATION** [2] - 2:6, 59:1

**probation** [28] - 4:6, 6:5, 7:12, 7:22, 8:3, 8:8, 8:12, 22:4, 23:15, 23:17, 24:3, 24:6, 25:2, 25:5, 25:7, 25:8, 33:5, 37:3, 37:10, 50:15, 50:17, 50:19, 50:21, 50:24, 51:16, 51:18, 51:21, 57:9

**Probation** [3] - 3:4, 5:15, 48:19

**problematic** [1] - 45:22

**proceed** [1] - 4:16

**proceeding** [1] - 4:19

**proceedings** [2] - 40:17, 60:6

**Proceedings** [1] - 59:15

**produced** [1] - 60:6

**productive** [1] - 40:10

**professional** [1] - 54:15

**promised** [5] - 29:19, 32:3, 44:16, 45:25, 46:4

**promote** [2] - 25:16, 25:20

**prong** [2] - 54:12, 56:19

**proof** [1] - 53:15

**proper** [1] - 21:9

**properly** [1] - 19:5

**proposed** [1] - 8:6

**prosecution** [1] - 10:7, 10:20, 12:13,

13:8, 13:23, 14:25, 18:3, 18:14, 20:11, 41:14, 41:24

**prosecutors** [1] - 35:21

**protect** [1] - 25:19

**proud** [1] - 49:2

**provide** [4] - 25:17, 43:13, 50:17, 50:21

**provided** [3] - 29:20, 42:24, 45:19

**providing** [3] - 29:11, 29:16, 45:19

**provisions** [1] - 49:15

**PSR** [2] - 6:6, 37:3

**public** [5] - 17:23, 25:19, 33:25, 35:9, 36:25

**PUBLIC** [1] - 1:18

**publicly** [1] - 16:18

**punished** [2] - 28:4, 28:5

**punishment** [6] - 13:15, 25:17, 35:5, 39:11, 43:8

**purchase** [1] - 31:15

**purchased** [1] - 35:13

**pure** [1] - 18:21

**purpose** [6] - 13:10, 40:11, 45:17, 47:9, 53:8, 56:15

**purposeful** [1] - 56:1

**purposes** [8] - 7:19, 11:24, 13:17, 22:14, 23:2, 25:14, 25:15, 48:9

**pursuant** [3] - 49:14, 51:23, 52:13

**pursue** [1] - 55:22

**pushed** [2] - 29:13, 37:25

**put** [1] - 12:9

## Q

**questioning** [1] - 29:8

**questions** [1] - 33:19

**quickly** [2] - 9:25, 22:9

**quid** [1] - 36:16

**quite** [1] - 44:5

**quo** [1] - 36:16

**quote** [9] - 14:25, 41:14, 45:4, 45:13, 45:14, 45:18, 47:7, 47:13, 47:16

**quote-unquote** [1] - 45:18

## R

**raise** [6] - 6:16, 11:17, 40:2, 47:14, 54:20, 57:20

**raised** [6] - 8:25, 9:18, 14:22, 37:16, 44:4, 53:22

**raises** [2] - 53:9, 56:15

**range** [10] - 5:3, 7:23, 9:8, 22:22, 23:20, 23:21, 24:4, 43:7, 44:15, 52:2

**ranges** [1] - 25:25

**rate** [1] - 51:7

**rather** [5] - 10:6, 11:22, 20:5, 43:21, 44:3

**RDR** [3] - 2:7, 60:3, 60:12

**rea** [3] - 16:21, 16:24, 17:7

**reached** [1] - 48:15

**read** [4] - 5:24, 14:19, 38:19, 46:8

**real** [6] - 34:23, 35:1, 35:9, 47:17, 55:21, 58:18

**realize** [1] - 44:25

**realized** [1] - 45:23

**really** [7] - 29:22, 35:4, 39:10, 39:12, 40:10, 54:16, 54:24

**reason** [1] - 57:19

**reasonable** [3] - 43:2, 48:7, 55:25

**reasoned** [1] - 55:12

**reasons** [4] - 19:2, 34:8, 58:6, 58:19

**Rebecca** [1] - 3:8

**REBECCA** [1] - 1:17

**rebuild** [1] - 40:4

**rebuilt** [1] - 40:4

**rebuttal** [1] - 55:2

**receipts** [1] - 42:8

**received** [6] - 4:4, 4:24, 8:22, 39:11, 47:21, 52:7

**recent** [1] - 50:6

**recess** [1] - 40:16

**recognize** [1] - 48:2

**recommendation** [5] - 4:5, 5:17, 25:8, 26:6, 33:16

**recommended** [2] -

25:2, 25:5

**reconsidered** [1] - 58:17

**record** [32] - 3:6, 10:10, 10:12, 14:3, 14:7, 15:2, 15:4, 17:1, 17:14, 17:15, 17:23, 17:24, 18:4, 18:15, 18:17, 20:12, 20:13, 22:14, 22:19, 30:9, 41:5, 41:23, 41:24, 42:12, 42:15, 42:18, 43:13, 48:10, 52:16, 52:21, 55:12

**records** [9] - 4:2, 14:1, 15:13, 17:2, 20:12, 20:19, 26:1, 42:6, 43:3

**reduced** [1] - 40:5, 53:11, 56:18, 57:22

**reference** [2] - 10:9, 10:10

**referenced** [1] - 34:24, 37:2, 37:14

**reflect** [1] - 25:16

**Reform** [3] - 49:14, 56:23, 57:18

**refrain** [1] - 50:12

**refresh** [1] - 21:23

**regard** [2] - 24:8, 43:14

**regarding** [3] - 35:12, 53:2, 55:19

**regardless** [8] - 15:3, 30:3, 30:8, 30:15, 30:17, 30:18, 44:20, 49:7

**rehabilitation** [1] - 15:20

**rehash** [1] - 6:15

**reinforce** [1] - 28:18

**reject** [2] - 44:9, 44:22

**rejected** [1] - 58:3

**relate** [1] - 54:8

**related** [1] - 34:18

**relation** [1] - 57:14

**release** [20] - 22:4, 23:6, 23:22, 23:24, 25:6, 49:20, 49:22, 50:19, 50:23, 51:8, 51:10, 51:16, 52:24, 52:25, 53:3, 56:4, 57:11, 57:13, 58:20

**released** [1] - 56:13

**relevant** [2] - 25:11, 43:11

**relying** [1] - 22:25

**remain** [2] - 11:19, 44:20

**remaining** [3] - 22:3, 30:14, 30:15

**remarks** [1] - 43:13

**remember** [5] - 12:21, 12:25, 17:17, 31:7, 31:22

**remembered** [2] - 9:24, 29:2

**remind** [1] - 10:22

**reminding** [1] - 9:1

**renal** [1] - 34:25

**reoffend** [2] - 55:9, 57:11

**reoffending** [1] - 54:9

**repeat** [1] - 57:6

**repeated** [4] - 45:20, 46:4, 46:5, 54:17

**repeatedly** [3] - 29:14, 45:17, 45:24

**repentance** [1] - 27:10

**report** [22] - 4:5, 4:24, 5:16, 5:21, 5:24, 7:13, 7:18, 7:22, 8:4, 8:6, 9:4, 11:3, 17:13, 17:16, 25:10, 37:20, 37:23, 51:17, 51:20, 58:21, 58:22

**REPORTED** [1] - 2:7

**reporter** [1] - 33:2

**Reporter** [2] - 2:8, 60:12

**reporting** [1] - 59:8

**reports** [8] - 10:24, 11:5, 11:11, 14:2, 16:20, 18:10, 18:18, 41:3

**reputation** [1] - 48:11

**request** [8] - 26:5, 33:15, 37:11, 48:6, 52:11, 52:24, 53:21, 59:2

**requested** [2] - 50:18, 50:22

**requests** [3] - 45:20, 46:4, 46:5

**required** [5] - 5:14, 23:25, 54:1

**requirement** [2] - 50:14, 51:9

**requires** [2] - 5:10, 39:3

**requisite** [1] - 17:7

**reserving** [2] - 9:14, 24:20

**residence** [1] - 51:19

**resolve** [2] - 5:1, 6:7

**resources** [1] - 26:20

**respect** [1] - 25:16

**respond** [1] - 19:14

**responded** [1] - 6:6

**responds** [1] - 41:2

**responsibility** [2] - 27:12, 27:13

**rest** [3] - 15:25, 32:10, 53:20

**restitution** [1] - 23:18

**rests** [1] - 53:21

**result** [6] - 11:5, 20:19, 53:10, 56:16, 57:20, 58:9

**results** [1] - 8:15

**return** [1] - 51:20

**reversal** [2] - 53:10, 56:16, 57:21, 58:9

**reviewed** [4] - 4:4, 4:9, 4:11, 9:25

**RNC** [9] - 15:25, 16:16, 29:12, 29:13, 29:14, 31:13, 32:7, 36:17, 45:19

**Rochester** [1] - 34:22

**Room** [1] - 2:10

**ROSE** [1] - 2:3

**ROSS** [1] - 1:17

**Ross** [1] - 3:8

**rule** [4] - 10:2, 21:18, 21:24, 43:23

**ruling** [1] - 58:1

**rulings** [1] - 57:24, 58:18

**run** [2] - 49:21, 49:22

**Russian** [1] - 43:17

## S

**safety** [2] - 53:6, 56:12

**Sanford** [1] - 42:2

**satisfied** [1] - 7:8

**savings** [1] - 40:6

**saw** [4] - 9:24, 34:2, 34:17, 35:6

**scared** [2] - 39:7

**scenario** [1] - 34:21

**schedule** [1] - 51:2

**school** [3] - 37:22, 37:24, 38:9

**schoolyard** [1] - 35:7

**scope** [1] - 44:4

**score** [1] - 9:5

**seat** [2] - 7:16, 52:22

**second** [5] - 5:2, 15:21, 29:8, 36:17, 56:14

**SECTION** [1] - 1:18
**Section** [4] - 16:25,
25:4, 41:4, 41:22
**see** [9] - 11:4, 11:12,
31:1, 37:1, 40:11,
41:8, 46:9, 55:17,
58:18
**seeking** [2] - 24:16,
24:22
**seem** [2] - 4:16, 32:1
**self** [8] - 37:20,
37:23, 53:1, 53:2,
54:3, 58:21, 59:8
**self-report** [3] -
37:20, 37:23, 58:21
**self-reporting** [1] -
59:8
**self-surrender** [3] -
53:1, 53:2, 54:3
**Senate** [1] - 27:20
**Senator** [2] - 35:3,
46:19
**senator** [1] - 27:20
**send** [1] - 47:12
**sending** [1] - 16:16
**sense** [5] - 10:21,
13:3, 31:25, 55:6
**sent** [2] - 36:2, 46:6
**sentence** [43] - 5:11,
5:13, 6:22, 21:19,
21:20, 23:22, 24:14,
25:1, 25:3, 25:5,
25:13, 25:15, 25:18,
25:24, 25:25, 28:24,
34:7, 34:11, 37:5,
37:9, 37:20, 38:11,
38:16, 38:17, 43:6,
47:2, 48:1, 48:8,
48:14, 49:13, 51:19,
51:24, 52:1, 52:5,
52:15, 53:10, 53:12,
55:8, 56:17, 56:18,
57:21, 57:22, 58:10
**sentenced** [6] -
26:14, 33:11, 47:5,
49:18, 49:19, 56:6
**sentences** [2] - 25:3,
26:2
**sentencing** [35] -
3:19, 4:5, 4:6, 4:15,
5:2, 5:3, 5:6, 5:9,
5:16, 5:18, 7:14, 7:19,
11:24, 13:18, 24:4,
24:24, 25:14, 26:6,
26:13, 27:17, 29:1,
30:20, 30:22, 33:4,
33:16, 36:5, 41:8,
43:12, 44:13, 48:6,
48:10, 48:16, 49:16,
52:1, 52:9

**SENTENCING** [1] -
1:10
**Sentencing** [1] -
49:14
**separate** [20] - 11:3,
14:1, 14:2, 14:3, 14:5,
14:6, 15:1, 15:2, 15:4,
15:9, 17:13, 17:14,
17:16, 17:19, 18:4,
18:9, 41:6, 42:5,
42:10
**September** [3] -
27:1, 27:2, 27:4
**serious** [3] - 4:19,
34:17, 34:19
**seriousness** [1] -
25:16
**serve** [2] - 7:18,
49:19
**served** [2] - 48:13,
53:13
**serves** [1] - 28:18
**service** [1] - 23:19
**Services** [2] - 14:11,
42:3
**services** [1] - 45:13
**set** [7] - 5:11, 5:20,
6:2, 6:14, 25:12, 26:5,
33:15
**seven** [3] - 39:6,
39:14, 39:16
**several** [1] - 6:12
**shake** [1] - 36:18
**shall** [5] - 50:4,
50:16, 51:14, 51:16,
51:20
**shame** [1] - 35:9
**share** [3] - 25:1,
50:20, 50:24
**sheet** [1] - 51:2
**SHERRY** [1] - 2:6
**Sherry** [1] - 3:4
**Shipping** [2] - 14:11,
42:3
**shocking** [1] - 47:19
**short** [1] - 10:25
**shortage** [1] - 26:22
**show** [2] - 35:4, 45:8
**showed** [1] - 34:13
**shown** [2] - 48:19,
54:9
**shows** [3] - 33:11,
36:5, 46:12
**side** [1] - 20:16
**signed** [1] - 20:15
**significant** [1] - 47:1
**similar** [3] - 26:1,
26:2, 56:24
**single** [5] - 15:4,
17:24, 18:5, 26:15,

41:17
**single-page** [1] -
15:4
**sitting** [1] - 27:19
**situation** [5] - 4:18,
34:9, 34:16, 45:12,
58:12
**skirt** [1] - 54:18
**slice** [1] - 11:1
**small** [1] - 44:3
**smart** [1] - 28:11
**so..** [1] - 54:25
**society** [1] - 46:22
**solely** [1] - 25:9
**soliciting** [1] - 3:21
**someone** [6] - 12:9,
12:10, 13:11, 20:25,
21:11, 35:7
**sometimes** [1] - 39:8
**somewhat** [1] -
10:20
**sophisticated** [6] -
15:18, 16:7, 16:17,
19:25, 28:3, 28:20
**sophistication** [1] -
43:1
**sorry** [4] - 20:23,
38:24, 48:1, 48:3
**sort** [7] - 17:22,
27:16, 35:10, 36:12,
37:21, 44:10, 54:14
**sought** [1] - 47:20
**source** [1] - 43:21
**speaking** [3] - 11:19,
17:11, 31:9
**special** [7] - 23:7,
23:11, 23:12, 25:7,
49:23, 50:1, 50:16
**specific** [4] - 28:15,
38:3, 54:20, 59:4
**specifically** [3] -
20:25, 40:22, 59:2
**spends** [2] - 45:4,
45:7
**spin** [1] - 39:20
**splice** [1] - 20:23
**split** [2] - 11:1, 12:10
**spouses** [1] - 26:20
**squandered** [1] -
47:24
**stage** [1] - 58:4
**stand** [2] - 6:6, 39:14
**standard** [2] - 50:5,
58:14
**stark** [1] - 35:5
**started** [1] - 18:13
**starting** [1] - 3:6
**state** [9] - 16:2,
16:16, 21:12, 21:19,
33:24, 50:11, 56:4,

59:2
**statement** [7] -
10:14, 11:8, 12:8,
12:12, 12:17, 38:15,
45:10
**statements** [4] - 6:2,
20:19, 25:22, 58:1
**states** [4] - 8:8,
42:11, 42:14, 42:17
**STATES** [4] - 1:1,
1:3, 1:11, 1:14
**States** [25] - 2:8, 3:2,
3:9, 14:10, 27:17,
27:19, 27:25, 28:9,
28:24, 30:17, 31:3,
31:19, 32:11, 41:10,
41:15, 41:20, 42:1,
42:3, 50:21, 50:25,
52:13, 53:18, 54:2,
57:2, 60:13
**statute** [11] - 14:24,
15:7, 15:9, 18:12,
18:14, 18:22, 19:7,
24:5, 41:6, 41:15,
41:19
**statutory** [3] - 24:7,
51:25, 54:4
**staying** [1] - 16:8
**stems** [1] - 10:15
**stenographic** [1] -
60:5
**step** [7] - 4:23, 5:2,
5:7, 5:10, 5:12, 5:15,
24:14
**Stephanie** [1] - 3:13
**STEPHANIE** [1] - 2:2
**steps** [1] - 4:16
**stiffs** [1] - 32:7
**still** [5] - 35:12,
36:11, 38:10, 49:11,
55:19
**Stolarz** [16] - 3:13,
3:15, 4:13, 5:23, 8:20,
9:13, 18:25, 19:13,
23:10, 24:11, 24:19,
33:14, 52:19, 55:1,
56:20, 59:12
**STOLARZ** [31] - 2:2,
3:12, 4:14, 5:25, 6:4,
6:9, 6:12, 7:3, 8:21,
9:14, 9:22, 10:25,
11:6, 11:15, 12:4,
12:22, 13:1, 13:5,
13:7, 19:15, 20:3,
20:23, 24:12, 24:20,
33:17, 33:20, 33:24,
38:4, 52:20, 55:3,
59:13
**Stolarz's** [4] - 29:5,
44:11, 58:11, 58:16

**stood** [2] - 27:16,
38:22
**story** [1] - 32:24
**strategist** [1] - 47:12
**straw** [1] - 43:16
**Street** [3] - 1:15,
1:22, 2:3
**struggle** [2] - 39:1,
40:11
**stuff** [1] - 36:18
**subject** [6] - 12:11,
13:14, 19:18, 20:14,
35:16, 47:10
**submit** [1] - 11:11
**submits** [1] - 8:12
**submitted** [5] - 6:5,
10:12, 20:12, 20:13,
46:11
**substance** [2] -
50:12, 50:13
**substantial** [4] -
53:9, 56:15, 57:20,
58:8
**success** [1] - 58:18
**sufficient** [7] - 14:24,
20:1, 25:13, 28:25,
38:6, 42:20, 48:8
**suggest** [4] - 27:21,
28:8, 42:9, 48:21
**suggested** [2] - 29:4,
47:11
**suggesting** [1] - 19:8
**suggestion** [3] -
44:9, 44:24, 56:22
**suggests** [6] - 31:18,
32:19, 41:23, 48:22,
53:24, 56:20
**Suite** [1] - 2:4
**sum** [1] - 49:5
**summarize** [2] -
7:24, 13:7
**Sunday** [1] - 58:23
**supervised** [9] -
22:4, 23:5, 23:22,
23:24, 25:6, 49:20,
49:22, 51:7
**supervision** [3] -
50:4, 50:6, 50:9
**supplemental** [1] -
27:10
**support** [4] - 4:9,
29:20, 46:20, 48:12
**supported** [1] -
31:11
**suppose** [1] - 23:8
**surrender** [3] - 53:1,
53:2, 54:3
**sustain** [2] - 40:3,
40:7

## T

**table** [2] - 3:9, 24:4
**talented** [1] - 28:11
**talks** [2] - 27:9, 27:10
**taste** [1] - 39:20
**taunted** [1] - 35:6
**Telegraph** [3] - 32:25, 33:1, 55:21
**ten** [1] - 16:20
**Tenth** [1] - 1:19
**term** [11] - 8:1, 8:2, 23:5, 23:21, 23:23, 23:25, 49:18, 49:20, 53:11, 53:12, 54:8
**termination** [1] - 51:22
**terms** [4] - 21:20, 49:21, 54:7
**test** [1] - 10:8
**testament** [1] - 46:21
**testified** [1] - 31:8
**testimony** [5] - 19:19, 20:24, 21:2, 21:7, 55:20
**testing** [1] - 50:14
**thankful** [1] - 38:23
**THE** [79] - 1:1, 1:10, 1:14, 1:15, 2:2, 3:1, 3:11, 3:15, 3:18, 3:19, 4:13, 4:15, 5:23, 6:1, 6:7, 6:11, 6:24, 7:5, 7:7, 7:8, 7:10, 7:11, 7:15, 7:16, 8:20, 9:1, 9:13, 9:16, 10:22, 11:4, 11:12, 11:25, 12:2, 12:20, 12:25, 13:2, 13:6, 13:19, 14:15, 14:18, 15:10, 16:12, 17:3, 18:1, 18:20, 19:8, 19:22, 20:16, 21:17, 22:6, 22:8, 22:16, 22:24, 24:11, 24:13, 24:19, 24:24, 26:10, 29:2, 30:5, 30:20, 32:6, 33:13, 33:18, 33:23, 38:3, 38:14, 38:18, 40:14, 40:18, 52:19, 52:22, 54:5, 55:1, 56:4, 59:1, 59:5, 59:12, 59:14
**theory** [2] - 29:21, 29:25
**therefore** [5] - 13:14, 20:14, 20:21, 43:3, 44:9
**Thereupon** [1] - 40:16

**thinking** [1] - 18:24
**thinks** [2] - 28:21, 32:13
**third** [2] - 5:7, 15:21
**thoughtful** [2] - 46:18, 58:17
**thoughts** [3] - 29:3, 29:24, 33:19
**threat** [1] - 57:1
**three** [41] - 4:1, 6:19, 6:21, 10:5, 10:15, 11:5, 11:21, 12:8, 14:1, 14:2, 14:5, 14:6, 15:12, 17:13, 17:14, 17:23, 18:4, 18:8, 18:9, 18:18, 20:7, 20:12, 20:14, 20:19, 22:10, 23:6, 23:22, 37:5, 41:3, 41:4, 41:6, 42:5, 42:10, 43:3
**tickets** [1] - 31:13, 31:15, 31:18
**timing** [1] - 39:22
**today** [2] - 4:18, 39:25
**today's** [2] - 4:19, 4:23
**together** [1] - 39:22
**took** [3] - 14:4, 27:15, 39:18
**top** [1] - 45:9
**torn** [1] - 40:5
**total** [6] - 8:15, 9:4, 9:7, 23:11, 44:3, 53:12
**touch** [1] - 31:12
**touching** [1] - 46:15
**trace** [1] - 54:14
**tragedy** [1] - 26:13
**transaction** [2] - 8:13, 40:21
**transactions** [1] - 8:9
**transcript** [2] - 60:5, 60:6
**transparency** [1] - 43:25
**treatment** [2] - 51:20, 51:22
**TREVOR** [1] - 1:10
**trial** [14] - 17:9, 27:3, 31:4, 37:16, 42:23, 45:9, 52:8, 53:10, 53:22, 56:17, 57:13, 57:21, 58:5, 58:9
**tried** [3] - 32:20, 39:10, 39:12
**trouble** [1] - 34:22
**troubled** [1] - 27:19
**true** [6] - 26:21, 29:7,

44:16, 45:6, 60:4, 60:5
**truly** [2] - 17:20, 36:2
**Trump** [10] - 15:16, 15:24, 17:19, 29:22, 36:1, 36:3, 36:8, 45:3, 45:5, 45:9
**truth** [1] - 45:11
**truthful** [1] - 39:20
**try** [2] - 39:2
**trying** [6] - 12:20, 12:25, 19:11, 21:1, 22:24, 33:6
**turn** [1] - 47:21
**turned** [1] - 44:12
**turning** [2] - 5:15, 9:3
**turns** [3] - 6:18, 12:8, 18:19
**twice** [2] - 28:21, 58:4
**Twitter** [1] - 36:25
**two** [8] - 4:9, 8:14, 16:20, 17:17, 30:13, 34:16, 40:25, 47:18
**type** [1] - 17:20
**types** [2] - 26:2, 34:25

## U

**U.S** [6] - 1:18, 1:21, 2:3, 2:6, 50:2, 51:12
**ultimate** [2] - 22:21, 43:6
**ultimately** [9] - 22:12, 32:2, 32:18, 32:21, 32:24, 33:3, 33:7, 38:1, 44:13
**unable** [1] - 52:10
**unavailable** [1] - 52:6
**unbelievable** [1] - 45:1
**undeniable** [1] - 48:11
**under** [21] - 5:5, 8:10, 8:14, 10:8, 11:2, 12:17, 16:25, 20:9, 23:8, 23:20, 24:5, 24:8, 30:12, 40:20, 41:14, 41:19, 45:1, 48:7, 53:4, 54:1
**underdeveloped** [1] - 55:15
**underlying** [1] - 20:12
**undermine** [2] - 43:23, 43:24

**understood** [1] - 13:5
**unit** [15] - 10:7, 10:16, 10:19, 12:13, 12:14, 13:8, 13:9, 13:10, 13:23, 14:25, 18:3, 18:14, 20:11, 41:14, 41:23
**united** [1] - 2:8
**UNITED** [4] - 1:1, 1:3, 1:11, 1:14
**United** [24] - 3:2, 3:9, 14:10, 27:17, 27:19, 27:25, 28:9, 28:24, 30:17, 31:3, 31:19, 32:11, 41:10, 41:15, 41:19, 42:1, 42:2, 50:20, 50:25, 52:13, 53:18, 54:2, 57:2, 60:13
**unlawful** [1] - 50:13
**unlawfully** [1] - 50:12
**unless** [5] - 23:17, 34:22, 41:18, 55:6, 56:7
**unlike** [1] - 28:6
**unquote** [1] - 45:18
**unwarranted** [1] - 25:25
**unwillingly** [1] - 29:16
**unwittingly** [1] - 17:2
**up** [19] - 10:23, 11:1, 11:9, 13:12, 13:14, 14:5, 15:25, 16:15, 16:16, 16:20, 18:8, 18:25, 29:16, 30:12, 30:20, 31:20, 41:1, 45:11, 54:15
**upward** [1] - 52:1
**USC** [11] - 3:23, 3:25, 4:3, 5:12, 23:8, 25:12, 49:15, 49:24, 51:23, 52:4, 56:5

## V

**vagaries** [3] - 10:21, 11:9, 12:7
**Valerie** [1] - 38:23
**valid** [1] - 53:18
**value** [1] - 8:8
**variance** [10] - 7:1, 7:3, 9:14, 24:17, 24:20, 24:22, 26:6, 33:16, 37:2, 47:1
**various** [2] - 42:25, 57:23

**Vasilenko** [4] - 29:13, 29:15, 45:13, 46:5
**Vasilenko's** [2] - 29:23, 45:18
**vehemently** [1] - 27:25
**venireperson** [1] - 34:2
**verdict** [1] - 29:9
**version** [1] - 50:6
**versus** [9] - 3:2, 14:10, 41:10, 41:15, 41:20, 42:1, 52:13, 53:18, 57:2
**Victory** [1] - 15:16
**view** [2] - 12:14, 13:10
**vilified** [1] - 35:9
**violated** [1] - 42:10
**violation** [6] - 3:23, 3:25, 4:2, 4:22, 41:17, 44:10
**violations** [2] - 41:6, 42:6
**violence** [4] - 54:7, 56:22, 57:1, 57:5
**violent** [1] - 54:13
**Virginia** [2] - 14:10, 18:13
**vitals** [1] - 45:18
**vs** [1] - 1:5

## W

**waits** [1] - 31:17
**waiving** [1] - 50:14
**wants** [2] - 11:10, 31:20
**warmly** [1] - 46:19
**warrant** [1] - 5:5
**Washington** [7] - 1:6, 1:16, 1:20, 1:22, 2:4, 2:10, 60:14
**Wasserman** [18] - 3:8, 4:11, 8:18, 9:11, 11:25, 13:20, 19:23, 20:17, 24:9, 24:17, 26:7, 29:3, 33:13, 44:19, 52:17, 52:23, 56:8, 59:9
**WASSERMAN** [31] - 1:14, 3:7, 4:12, 5:22, 8:19, 9:12, 12:1, 13:21, 14:16, 14:19, 15:14, 16:21, 17:5, 18:2, 18:21, 22:5, 22:7, 22:9, 22:18, 24:10, 24:18, 26:8,

26:11, 30:1, 30:7,
30:22, 32:7, 52:18,
52:25, 54:11, 59:11
  **water's** [1] - 20:9
  **waterfalls** [1] - 21:8
  **ways** [1] - 46:22
  **Wead** [5] - 32:9,
36:19, 46:5, 55:14
  **website** [1] - 17:22
  **weeks** [1] - 47:21
  **welcome** [1] - 26:10
  **well-reasoned** [1] -
55:12
  **whereas** [1] - 20:7
  **white** [4] - 26:17,
26:18, 26:22, 34:5
  **white-collar** [4] -
26:17, 26:18, 26:22,
34:5
  **whole** [3] - 16:10,
46:17, 48:3
  **wife** [5] - 34:12, 38:7,
38:23, 48:2, 49:9
  **wife's** [1] - 46:15
  **willfully** [3] - 3:21,
3:23, 28:4
  **willing** [1] - 26:23
  **willingness** [1] -
54:18
  **winds** [1] - 14:5
  **wire** [2] - 45:25, 46:3
  **wise** [1] - 59:7
  **wish** [5] - 5:8, 26:4,
33:14, 35:12, 55:1
  **woman** [1] - 36:17
  **word** [1] - 15:10
  **words** [1] - 15:6
  **worried** [1] - 36:6
  **wound** [1] - 18:8
  **write** [1] - 26:23
  **written** [4] - 4:8,
38:22, 46:13, 46:18
  **wrongful** [1] - 10:18

## Y

  **year** [5] - 23:23, 24:1,
37:22, 37:24, 38:9
  **years** [10] - 8:2, 8:3,
10:6, 12:11, 23:6,
23:22, 38:25, 39:6,
39:14, 39:16
  **years'** [3] - 19:18,
23:15, 47:19
  **yesterday** [1] - 11:18
  **York** [1] - 1:19
  **yourself** [1] - 43:21
  **yourselves** [1] - 3:6

## Z

**Zone** [1] - 24:4