UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JESSE R. BENTON<br><br>        Defendant. | Case No. 1:21-cr-0569-TNM |

**DEFENDANT'S MOTION FOR A REDUCED TERM OF IMPRISONMENT
UNDER 18 U.S.C. § 3582(c)(2)**

Pursuant to 18 U.S.C. § 3582(c)(2), Defendant Jesse Benton respectfully moves this Court to reduce Mr. Benton's term of imprisonment from 18 months to 15 months due to a retroactively applicable amendment to the U.S. Sentencing Guidelines. The Government has informed Mr. Benton that it will oppose the requested relief. In support of this motion, Mr. Benton states as follows:

## BACKGROUND

In September 2021, the Government charged Mr. Benton with campaign-finance-related offenses in a six-count indictment. Dkt. 1. In November 2022, a jury convicted Mr. Benton on all counts. Dkt. 61.

On February 17, 2023, this Court sentenced Mr. Benton. Dkt. 77. At sentencing, the Court adopted the Sentencing Guidelines calculations in the Presentence Investigation Report ("PSR") submitted by the U.S. Probation Office. 2/17/23 Tr. 9, 25. The PSR calculated a Guidelines range of 18 to 24 months' imprisonment based on a total offense level of 14 and a criminal-history category of II. *Id.* at 9; Dkt. 71 at 28. The PSR assigned Mr. Benton a criminal-history category of II based on a total of three criminal-history points. Dkt. 71 at 28. Mr. Benton received one criminal-history point due to a prior conviction in Iowa. *Id.* at 18. Mr. Benton also received two

1

additional criminal-history points—known as "status points"—under U.S.S.G. § 4A1.1(d). *Id.* at 20. At the time of Mr. Benton's sentencing, Section § 4A1.1(d) required the addition of two status points for "commit[ing] the instant offense while under any criminal justice sentence, including probation." Mr. Benton was on probation for the Iowa conviction when he engaged in the conduct underlying the offenses at issue in this case and thus received two status points. Dkt. 71.

Earlier this year, the U.S. Sentencing Commission submitted to Congress a notice of proposed amendments to the Sentencing Guidelines, which became effective on November 1, 2023. *See* Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254, 28254 (May 3, 2023). One of the amendments—Amendment 821—"limits the overall criminal history impact of 'status points.'" *Id.* at 28273. Part A of Amendment 821 does away with the Guidelines' approach of adding two status points whenever a defendant commits an offense while under a criminal-justice sentence. Instead, the amendment adds a single status point *only* for defendants who otherwise have seven or more criminal-history points. *Id.*; U.S.S.G. § 4A1.1(e). The Commission made this change based on its recent research showing that "status points add little to the overall predictive value associated with the criminal history score." 88 Fed. Reg. at 28,273.

The Sentencing Commission later issued a policy statement making Part A of Amendment 821 retroactive, also effective as of November 1, 2023. *See* Sentencing Guidelines for United States Courts, 88 Fed. Reg. 60534 (Sept. 1, 2023); U.S.S.G. § 1B1.10(d). The Commission determined that the "policy reasons underlying the prospective application of the amendment apply with equal force to individuals who are already sentenced," and anticipated that retroactive application of the amendment "would meaningfully impact the sentence of many currently incarcerated individuals." 88 Fed. Reg. at 60536.

An order reducing a defendant's term of imprisonment based on Part A of Amendment 821 cannot take effect until February 1, 2024, but a court may conduct a sentence-reduction proceeding and enter orders under 18 U.S.C. § 3582(c)(2) before February 1, 2024, so long as any order reducing the defendant's term of imprisonment has an effective date of no earlier than February 1, 2024.  88 Fed. Reg. at 60535.

## ARGUMENT

Under 18 U.S.C. § 3582(c)(2), a "court may reduce the term of imprisonment" "[i]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission … after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). Consistent with the statutory text, the Supreme Court has adopted a two-step framework for evaluating motions to reduce a defendant's sentence under Section 3582(c)(2).  At the first step, the sentencing court "determine[s] the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon v. United States*, 560 U.S. 817, 827 (2010).  At the second step, the court applies the sentencing factors under 18 U.S.C. § 3553(a) to "determine whether, in its discretion, the reduction authorized by reference to the policies relevant at step one is warranted in whole or in part under the particular circumstances of the case." *Id.* at 827.

Here, the Sentencing Commission's retroactive application of Amendment 821, Part A makes Mr. Benton eligible for a proportional three-month reduction of his term of imprisonment, from 18 months (the low end of his prior range) to 15 months (the low end of his amended range). Moreover, the sentencing factors and Mr. Benton's commendable post-sentencing conduct reflect that a three-month reduction of Mr. Benton's sentence is warranted.

### I. Mr. Benton Is Eligible For A Reduced Term Of Imprisonment

Mr. Benton is eligible for a sentence reduction because his Guidelines range has been lowered by the retroactive application of Amendment 821, Part A. Section 3582(c)(2) "requires the court to follow the Commission's instructions in § 1B1.10 to determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized." *Dillon*, 560 U.S. at 827. Section 1B1.10 "requires the court to begin by 'determin[ing] the amended guideline range that would have been applicable to the defendant' had the relevant amendment been in effect at the time of the initial sentencing." *Id.* (quoting U.S.S.G. § 1B1.10(b)(1)). "In making such determination, the court shall substitute only the amendments listed in subsection (d) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected." U.S.S.G. § 1B1.10(b)(1).

Here, if Part A of Amendment 821 had been in force when Mr. Benton was sentenced, his Guidelines range would have been 15 to 21 months instead of 18 to 24 months. As discussed above, Mr. Benton received two "status points" for having committed an offense while under any criminal justice sentence. But under Part A of Amendment 821, which the Commission has made retroactive under Section 1B1.10(d), Mr. Benton would not have received any status points, because the amendment limits status points to defendants who otherwise have seven or more criminal-history points. U.S.S.G. § 4A1.1(e). Mr. Benton had only one criminal-history point (aside from the status points), as a result of his prior conviction. *See supra* 1–2. Thus, if Part A of Amendment 821 had applied at his sentencing, Mr. Benton would have received one criminal-history point instead of three and would have been placed in criminal-history category I instead of II. *See* U.S.S.G. Ch. 5, Pt. A. Combined with an offense level of 14, Mr. Benton's Guidelines range would have been 15 to 21 months instead of 18 to 24 months. *Id.*

4

Mr. Benton therefore is eligible for up to a three-month reduction of his term of imprisonment. *See* U.S.S.G. § 1B1.10(b)(2)(A) ("court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) and this policy statement to a term that is less than the minimum of the amended guideline range").

**II.     The Court Should Reduce Mr. Benton's Sentence By Three Months Effective February 1, 2024**

In determining whether to reduce an eligible defendant's sentence, the Court must consider "the factors set forth in section 3553(a) to the extent that they are applicable," 18 U.S.C. § 3582(c)(2), including: the applicable Guidelines range; the nature and circumstances of the offense and the history and characteristics of the defendant; and the need for the sentence to reflect the seriousness of the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed medical care or other correctional treatment in the most effective manner, *see* 18 U.S.C. § 3553(a). The applicable Guidelines policy statement further provides that the Court must consider "the nature and seriousness of the danger to any person or the community that may be posed by a [sentence] reduction," and may consider the defendant's "post-sentencing conduct." U.S.S.G. § 1B1.10 cmt. n.1(B)(ii), (iii).

At Mr. Benton's sentencing, this Court considered all of the Section 3553(a) factors and, consistent with Probation's recommendation, concluded that an 18-month sentence—the "low-end" of Mr. Benton's then-applicable Guidelines range—was appropriate "[i]n light of all of the record here." 2/17/23 Tr. 25, 48. That record, as the Court recognized, showed that Mr. Benton is a family man, with a wife and a young daughter and an "undeniable good reputation in the community." *Id.* at 48. It contained 15 "powerful letters" from family and friends, including Mr. Benton's wife, Senator Rand Paul, and former Congressman Ron Paul, who wrote "movingly of

5

[Mr. Benton's] character, [his] dedication to [his] loved ones." *Id.* at 46, 48; *see also* Dkt. 74-2. Mr. Benton's doctor also wrote a letter describing Mr. Benton's serious type-one diabetes and underlying renal disease. Dkt. 74-2 at 9; 2/17/23 Tr. 34–35, 48.

The only factors that have changed since Mr. Benton was sentenced—his Guidelines range and his post-sentencing conduct—demonstrate that a low-end, 15-month sentence under Mr. Benton's amended Guideline range of 15 to 21 months is appropriate.

*First*, the Sentencing Commission, in its expert judgment, has decided to limit the sentencing impact of "status points" because of its recent research showing that status point "improve the predictive value of the criminal-history score less than the original Commission may have expected." 88 Fed. Reg. at 28273; *see Kimbrough v. United States*, 552 U.S. 85, 108–09 (2007) (Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise" (quotation marks omitted)). In particular, the Commission found that "the inclusion of status points in the criminal history score improved successful prediction of rearrest by less than 0.2 percent," a difference that was "not statistically significant." U.S. Sentencing Commission, *Revisiting Status Points* 17 (June 2022), https://tinyurl.com/rrbrnfwd. This Court relied on the Guidelines in sentencing Mr. Benton to a "low-end" sentence under Mr. Benton's prior range of 18 to 24 months. *See* 2/17/23 Tr. 48. Now that the Commission has concluded that Mr. Benton's sentencing range was unduly inflated by three months, the Court should account for the Commission's judgment by revising Mr. Benton's sentence proportionally downward to the low end of his amended Guidelines range.

*Second*, Mr. Benton's post-sentencing conduct confirms that a proportional, three-month reduction of his sentence is warranted. After his sentencing, Mr. Benton fully complied with terms of his bail and self-reported to prison in July 2023. And since he reported, Mr. Benton has been a

6

productive member of the prison community. He has had no disciplinary infractions, is teaching a creative-writing class to fellow inmates, and has worked a job as an HVAC technician.

*Finally*, reducing Mr. Benton's sentence by three months would not pose a "danger to any person or the community." U.S.S.G. § 1B1.10 cmt. n.1(B)(ii). Mr. Benton is a non-violent offender, a 45-year-old type 1 diabetic, and the sole income provider for his wife and young daughter. He is not a danger to anyone. This Court recognized that fact when it permitted Mr. Benton to remain out on bond for four months post-sentencing. 2/17/23 Tr. 58. And Mr. Benton's post-sentencing conduct confirms that he is committed to rehabilitation and reentering society as a responsible and law-abiding citizen. This Court, moreover, necessarily concluded that the low end of Mr. Benton's prior Guidelines range was adequate "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). The same should hold true of a sentence at the low end of Mr. Benton's amended Guidelines range.[1]

---

[1] Mr. Benton's appeal of his conviction and sentence remains pending. If the Court determines that the pending appeal deprives the Court of jurisdiction to grant this motion, Mr. Benton requests an indicative ruling on the motion under Federal Rule of Criminal Procedure 37. *See, e.g.*, *United States v. Jackson*, 468 F. Supp. 3d 59, 65 (D.D.C. 2020), *aff'd*, 26 F.4th 994 (D.C. Cir. 2022); *United States v. Hammond*, No. 02-cr-294, 2020 WL 1891980, at *10 (D.D.C. Apr. 16, 2020).

## CONCLUSION

For the foregoing reasons, Mr. Benton respectfully requests that the Court reduce his term of imprisonment by three months under 18 U.S.C. § 3582(c)(2), effective on February 2, 2024.

<table>
<tr><td>Dated: November 1, 2023</td><td>Respectfully submitted,<br><br>  /s/ Matthew D. McGill<br>Matthew D. McGill<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, D.C. 20036<br>(202) 887-3680<br>mmcgill@gibsondunn.com<br><br>*Counsel for Defendant Jesse R. Benton*</td></tr>
</table>

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed by ECF on November 1, 2023, and thereby served on opposing counsel.

                                                */s/ Matthew D. McGill*
                                                Matthew D. McGill