**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**,

v.

**JESSE BENTON**,

Defendant.

Case No. 1:21-cr-00569-1 (TNM)

**MEMORANDUM ORDER**

Jesse Benton was convicted of six campaign-finance violations in connection with his work on the 2016 presidential election. Verdict, ECF No. 61. For his crimes, he was sentenced to 18 months in prison. Judgment, ECF No. 77, at 3. Benton now moves for early release. Mot., ECF No. 99. He wishes to take advantage of a new amendment to the Sentencing Guidelines, which would diminish the weight given to his prior criminal conviction. *See generally id*. The Government opposes this motion, Opp'n, ECF No. 100, and the Court denies it.

**I.**

Jesse Benton is a former political operative, whom the Government charged with six felony campaign-finance offenses. Indictment, ECF No. 1. In particular, the Government charged him with conspiracy to file false campaign reports, *id*. ¶¶ 19–54, aiding and abetting campaign contributions by foreign nationals, *id*. ¶¶ 55–56, aiding and abetting contributions in the name of another, *id*. ¶¶ 57–58, and three counts of aiding and abetting the causing of false records, *id*. ¶¶ 59–64. Benton was tried by a jury and convicted on all charges. *See* Verdict.

Some months later, the Court sentenced Benton. It imposed a sentence of eighteen months' imprisonment on each of his six convictions. Judgment at 3. All terms of incarceration

were to be served concurrently.  *Id*.  The Court also imposed ancillary penalties, such as a post-incarceration term of supervised release and a fine.  *Id*. at 4, 7.

After Benton was sentenced, the U.S. Sentencing Commission amended the U.S. Sentencing Guidelines.  As relevant here, the Commission promulgated a new amendment: Amendment 821.  88 Fed. Reg. 28254 (May 3, 2023).  Amendment 821 reduced the number of criminal history points awarded to certain defendants who had committed their current offense while on supervised release for a prior conviction.  *Id*. at 28273.  Benton was one such person— he committed the campaign-finance violations at issue here while on supervised release for a prior campaign-finance conviction.  Final Presentence Investigation Report ¶ 77a, ECF No. 71. So he moved for this Court to reduce his sentence, arguing that he would have received a lower sentence, were he to be sentenced today.  Mot.  The Government opposes his motion, Opp'n, and it is now ripe for decision.

## II.

Under 18 U.S.C. § 3852(c)(2) a court may modify an imposed term of imprisonment if a post-sentencing amendment to the Sentencing Guidelines means that the defendant would have received a lower sentence, were he sentenced today.

When courts are asked to reduce sentences under § 3852(c)(2), they follow a two-step process.  First, they determine whether the Guidelines amendment actually affected the defendant.  In other words, they "determine the prisoner's eligibility for a sentence modification and the extent of the reduction authorized."  *Dillon v. United States*, 560 U.S. 817, 827 (2010). After that, the court looks back to the § 3553(a) factors to determine whether "the reduction authorized by reference to the [amendment] . . . is warranted in whole or in part under the particular circumstances of the case."  *Id*.  Both steps capture the essential purpose of

§ 3852(c)(2): to avoid perpetuation of a sentence that, under the new rules, is no longer warranted.

**III.**

The parties agree that Benton is eligible for a reduced term of imprisonment under the Guidelines amendment.  Mot. at 4–5; Opp'n at 3.  And their calculations appear correct on that score.  So the Court cuts directly to *Dillon* step two:  Whether the § 3553(a) factors favor a reduced sentence given the new Guidelines range.

Benton's argument in favor of a reduction is straightforward.  The Guidelines range at his sentencing was 18 to 24 months, based on a total offense level of 14 and a criminal history category of II.  Final Presentence Investigation Report ¶ 130.  Now, under Amendment 821, his criminal history category would be only I, Mot. at 4, so the Guidelines range would be 15 to 21 months instead.  U.S.S.G. § 5A.  And because the Court gave him a "low-end" sentence last time around, it should repeat that here, moving his sentence down from 18 to 15 months' imprisonment.  Mot. at 5.  The Court disagrees.

When the Court sentenced Benton originally, its reliance on the Guidelines was minimal.  The Court stressed that it was "fully cognizant that the sentencing guidelines are merely advisory."  Sentencing Tr. at 48:15–16, ECF No. 97.  And the only references the Court made to the Guidelines while discussing the 18 U.S.C. § 3553(a) factors were that the Guidelines worked to his benefit by incorporating the financial value of his offense, *id*. at 44:9–18, and a comment that the Court felt "a low-end sentence is appropriate."  *Id*. at 48:13–14.  Simply put:  The Guidelines did not drive Benton's sentence.

Other considerations did.  For one, the Court took issue with Benton's "completely unbelievable" claim that he "didn't realize what [he was] doing was wrong."  Sentencing Tr. at

3

44:22–45:2.  The Court viewed this as a failure to accept responsibility for his crimes.  More, the Court perceived Benton's mental state to be particularly culpable.  It found that Benton was "covering up the truth of the situation from the outset."  *Id*. at 45:10–14.  And that he had engaged in a "clear pattern of deception" that made it "difficult" to take seriously claims of his integrity.  *Id*. at 46:7–9.

Perhaps the most significant factor for the Court is the exact fact at issue here.  The Court placed great weight on the fact that Benton committed this crime while on release for another conviction.  Sentencing Tr. at 46:25–47:25.  But it did so for reasons largely unrelated to the old Guideline or the new amendment.  Instead, the Court saw this as going to Benton's mental state, his knowledge of the law, and his duplicity.  *Id*. at 47:23–15.  As the Court put it then:  "[Benton] knew the law.  [He] knew what [he was] doing was wrong.  And [he] squandered that opportunity given to [him] in that last case."  *Id*.  Indeed, Benton was "engaging in the misconduct here during the same time" that he was "being sentenced for another conspiracy to falsify campaign contributions."  *Id*. at 47:2–6.  The Court's heavy reliance on this fact outside the Sentencing Guidelines computation shows that its principal role in determining Benton's sentence was in the § 3553(a) factors, not in the Guidelines calculation.  His status on supervised release emphasized his culpability, not primarily his likelihood of recidivism, which is what drove the Commission's recent amendment.  *See,* Mot. at 6, ECF No. 99.

The Court's original sentence remains reasonable even with the Guidelines amendment.  While the 18-month sentence was originally "low-end," Sentencing Tr. at 48:13, it is now right in the middle of the Guidelines range.  The sentence thus remains fully justifiable today.  And, as the Court noted when sentencing Benton, it is "sufficient but not greater than necessary to carry out the purposes of sentencing."  Sentencing Tr. at 48:8–10.  In sum, then, the Court's original

sentence of 18 months' imprisonment remains appropriate, despite the intervening change in the Sentencing Guidelines' criminal history score computation.

*     *     *

For the reasons given above, the Court **ORDERS** that Benton's Motion to Reduce Sentence, ECF No. 99, is **DENIED**.

    **SO ORDERED**.


Dated: May 21, 2024                             _____

                                                TREVOR N. McFADDEN, U.S.D.J.